No. 19-1680

**IN THE UNITED STATES COURT OF APPEALS
FOR THE FIRST CIRCUIT**

————————————

**UNITED STATES OF AMERICA,
Appellee,**

**v.**

**JAY GACCIONE,
Defendant-Appellant.**

————————————

**ON APPEAL FROM A JUDGMENT OF
THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND**

————————————

**BRIEF FOR THE UNITED STATES**

————————————

**AARON L. WEISMAN**
**United States Attorney**

**LAUREN S. ZURIER**
**Assistant U.S. Attorney**
**50 Kennedy Plaza, 8th Floor**
**Providence, Rhode Island 02903**
**(401) 709-5030**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................iv

JURISDICTIONAL STATEMENT ...........................................................1

STATEMENT OF THE ISSUES..................................................................1

STATEMENT OF THE CASE ....................................................................2

    A.   Underlying facts ....................................................................2

        *1.   The interviews* ...........................................................3

        *2.   Sexual exploitation of a minor (Counts 1-6)* ...........5

        *3.   Distribution of child pornography (Count 7)* ...........7

        *4.   Possession of child pornography (Counts 8 and 9)* .................11

    B.   Change-of-plea hearing ................................................11

    C.   Sentencing ......................................................................14

SUMMARY OF ARGUMENT ...................................................................21

ARGUMENT ...............................................................................................23

I.   The district court's acceptance of defendant's guilty plea to the distribution charge did not constructively amend the indictment or result in a prejudicial variance .................................................23

    A.   Legal principles and standards of review ...............................23

B.      Constructive amendment vs. variance ................................... 26

II.  The district court did not plainly err in concluding that defendant's guilty plea to Count 7 rested on a sufficient factual basis, or in concluding that his plea was knowing, intelligent, and voluntary ...................................................................................... 35

A.      Adequate factual basis ............................................ 35

B.      Knowing, Intelligent, and Voluntary Plea ............................ 44

III.  Because the district court considered all requisite sentencing factors, adequately explained its reasoning, and correctly calculated the Guidelines sentencing range, defendant's sentence is procedurally reasonable ........................................... 47

A.    Legal standards ........................................................... 47

1.  *General sentencing principles* .............................. 47

2.  *Plain-error review* .................................................. 49

B.    Consideration of § 3553(a) factors............................ 50

C.    Capping sentence at life in prison............................ 54

D.    Stacking consecutive sentences ............................... 56

IV.  The district court imposed a substantively reasonable sentence that is well supported by the record ........................................... 57

A.    Arbitrariness.............................................................. 58

B.    Death sentence.......................................................... 60

C.   Unjustified sentencing disparities .............................................. 61

CONCLUSION ............................................................................ 64

CERTIFICATE OF COMPLIANCE ......................................... 64

CERTIFICATE OF SERVICE.................................................. 65

# TABLE OF AUTHORITIES

## Cases

*Gall v. United States,*
552 U.S. 38 (2007) ........................................................... 47, 48

*Holguin-Hernandez v. United States,*
140 S. Ct. 762 (2020) ........................................................ 57

*Paroline v. United States,*
572 U.S. 434 (2014) ......................................................... 53, 61

*Rita v. United States,*
551 U.S. 338 (2007) .......................................................... 47

*Stirone v. United States,*
361 U.S. 212 (1960) ....................................................... 23, 31, 32

*United States v. Arsenault,*
833 F.3d 24 (1st Cir. 2016) ........................................ 58, 61, 62, 63

*United States v. Baldwin,*
774 F.3d 711 (11th Cir. 2014) ............................................ 28

*United States v. Borrero-Acevedo,*
533 F.3d 11 (1st Cir. 2008) .............................................. 35

*United States v. Bour,*
804 F.3d 880 (7th Cir. 2015) .......................................... 61, 63

*United States v. Brandao,*
539 F.3d 44 (1st Cir. 2008) ....................................... 25, 32, 33, 34

*United States v. Breton,*
740 F.3d 1 (1st Cir. 2014) ........................................... passim

*United States v. Cates,*
897 F.3d 349 (1st Cir. 2018) .......................................... 55, 59

*United States v. Cheal,*
389 F.3d 35 (1st Cir. 2004) ....................................... 41, 42, 44

*United States v. Chiaradio,*
    684 F.3d 265 (1st Cir. 2012) ............................................................ 29

*United States v. Clark,*
    685 F.3d 72 (1st Cir. 2012) ............................................................. 59

*United States v. Contreras-Delgado,*
    913 F.3d 232 (1st Cir. 2019) ......................................................51, 53

*United States v. Cotal-Crespo,*
    47 F.3d 1 (1st Cir. 1995) ................................................................ 45

*United States v. Crespo-Rios,*
    645 F.3d 37 (1st Cir. 2011) ............................................................... 9

*United States v. Cubero,*
    754 F.3d 888 (11th Cir. 2014) ........................................................ 59

*United States v. Cunningham,*
    669 F.3d 723 (6th Cir. 2012) .......................................................... 59

*United States v. D'Amelio,*
    683 F.3d 412 (2d Cir. 2012) ..............................................30, 31, 33

*United States v. Danielson,*
    199 F.3d 666 (2d Cir. 1999) (per curiam) ...................................... 28

*United States v. Delano,*
    55 F.3d 720 (2d Cir. 1995) ............................................................. 33

*United States v. Delgado-Hernandez,*
    420 F.3d 16 (1st Cir. 2005) .............................................36, 40, 44, 45

*United States v. Demeyer,*
    665 F.3d 1374 (8th Cir. 2012) ........................................................ 62

*United States v. Dewitt,*
    943 F.3d 1092 (7th Cir. 2019) ........................................................ 38

*United States v. Díaz-Concepción,*
    860 F.3d 32 (1st Cir. 2017) ........................................................45, 46

*United States v. Dominguez Benitez,*
   542 U.S. 74 (2004) ............................................................... 35

*United States v. Dowdell,*
   595 F.3d 50 (1st Cir. 2010) ....................................... passim

*United States v. Dubón-Otero,*
   292 F.3d 1 (1st Cir. 2002) ................................................. 33

*United States v. Dupre,*
   462 F.3d 131 (2d Cir. 2006) .............................................. 28

*United States v. Fabiano,*
   169 F.3d 1299 (10th Cir. 1999) ........................................ 38

*United States v. Fisher,*
   3 F.3d 456 (1st Cir. 1993) ................................................. 33

*United States v. Flores-Machicote,*
   706 F.3d 16 (1st Cir. 2013) ......................................... 48, 49

*United States v. Gandia-Maysonet,*
   227 F.3d 1 (1st Cir. 2000) .......................................... 36, 42

*United States v. García-Mojica,*
   955 F.3d 187 (1st Cir. 2020) ............................................. 57

*United States v. Garcia-Paz,*
   282 F.3d 1212 (9th Cir. 2002) ......................................... 28

*United States v. Garner,*
   490 F.3d 739 (9th Cir. 2007) ........................................... 63

*United States v. Grigsby,*
   749 F.3d 908 (10th Cir. 2014) ......................................... 60

*United States v. Hamilton,*
   548 F. App'x 728 (2d Cir. 2013) (unpublished) ............ 60, 62

*United States v. Hernandez-Maldonado,*
   793 F.3d 223 (1st Cir. 2015) ............................................. 63

*United States v. Hoey,*
   508 F.3d 687 (1st Cir. 2007) ........................................................ 52, 62

*United States v. Iacaboni,*
   363 F.3d 1 (1st Cir. 2004) ............................................................... 25

*United States* v. *Innamorati,*
   996 F.2d 456 (1st Cir. 1993) ............................................................ 34

*United States v. Irey,*
   612 F.3d 1160 (11th Cir. 2010) ....................................................... 59

*United States v. Jenkins,*
   854 F.3d 181 (2d Cir. 2017) ............................................................ 59

*United States v. Joubert,*
   778 F.3d 247 (1st Cir. 2015) ........................................................... 58

*United States v. Kearney,*
   672 F.3d 81 (1st Cir. 2012) ............................................................. 53

*United States v. Kirby,*
   938 F.3d 1254 (11th Cir. 2019) ............................................. 55, 57, 60

*United States v. Lewis,*
   594 F.3d 1270 (10th Cir. 2010) ....................................................... 56

*United States v. Maher,*
   108 F.3d 1513 (2d Cir. 1997) ..................................................... 42, 43

*United States v. Martin,*
   520 F.3d 87 (1st Cir. 2008) ............................................................. 58

*United States v. Matos-Quiñones,*
   456 F.3d 14 (1st Cir. 2006) ........................................................ 36, 42

*United States v. McGarity,*
   669 F.3d 1218 (11th Cir. 2012), *overruled on other grounds, Paroline*
   *v. United States*, 572 U.S. 434 (2014) ............................................. 61

*United States v. Medina-Villegas,*
   700 F.3d 580 (1st Cir. 2012) ........................................................... 50

*United States v. Metzger,*
  411 F. App'x 1 (7th Cir. 2010) (unpublished) ................................57, 60

*United States v. Mubayyid,*
  658 F.3d 35 (1st Cir. 2011) ................................................24, 25, 27, 33

*United States v. Nance,*
  767 F.3d 1037 (1st Cir. 2014) ........................................................38

*United States v. Negron-Narvaez,*
  403 F.3d 33 (1st Cir. 2005) ......................................................43, 47

*United States v. Olano,*
  507 U.S. 725 (1993) ........................................................................25

*United States v. Ozuna-Cabrera,*
  663 F.3d 496 (1st Cir. 2011) ..................................................36, 41, 57

*United States v. Philpot,*
  773 F. App'x 583 (11th Cir. 2019) (unpublished) ...............................25

*United States v. Pierre,*
  484 F.3d 75 (1st Cir. 2007) ......................................................24, 62

*United States v. Portela,*
  167 F.3d 687 (1st Cir. 1999) ............................................................33

*United States v. Ramirez-Benitez,*
  292 F.3d 22 (1st Cir. 2002) ............................................................46

*United States v. Reingold,*
  731 F.3d 204 (2d Cir 2013) ............................................................59

*United States v. Rodriguez-Reyes,*
  714 F.3d 1 (1st Cir. 2013) ..............................................................54

*United States v. Romero,*
  906 F.3d 196 (1st Cir. 2018), *cert. denied,* 139 S. Ct. 1230 (2019)......51

*United States v. Rondón-García,*
  886 F.3d 14 (1st Cir. 2018) ......................................................49, 50

*United States v. Rosario-Perez,*
  957 F.3d 277 (1st Cir. 2020) .......................................... 24, 33

*United States v. Ruiz-Huertas,*
  792 F.3d 223 (1st Cir. 2015) ...................................... passim

*United States v. Saccoccia,*
  58 F.3d 754 (1st Cir. 1995) ..................................... 54, 55, 56

*United States v. Sarras,*
  575 F.3d 1191 (11th Cir. 2009) ......................................... 62

*United States v. Schumaker,*
  479 F. App'x 878 (11th Cir. 2012) (unpublished) ................................ 31

*United States v. Sims,*
  428 F.3d 945 (10th Cir. 2005) ......................................... 29

*United States v. Stepanets,*
  879 F.3d 367 (1st Cir. 2018) ............................................ 34

*United States v. Tavares,*
  705 F.3d 4 (1st Cir. 2013) ...................................... 25, 49, 53

*United States v. Taylor,*
  848 F.3d 476 (1st Cir. 2017) ................................... 24, 32, 33

*United States v. Tello,*
  687 F.3d 785 (7th Cir. 2012) .......................................... 28, 31

*United States v. Vonn,*
  535 U.S. 55 (2002) ................................................ 35, 43

*United States v. Wilder,*
  526 F.3d 1 (1st Cir. 2008) ............................................. 38

## **Statutes and Rules**

18 U.S.C. § 2251(a) ........................................................... 6, 11, 60

18 U.S.C. § 2252(a) ............................................................. passim

18 U.S.C. § 2252(b) ............................................... 11, 12, 26, 38

18 U.S.C. § 3231 ............................................................................ 1

18 U.S.C. § 3553(a) ............................................................. passim

18 U.S.C. § 3742(a) ...................................................................... 1

28 U.S.C. § 1291 ............................................................................ 1

Fed. R. Crim. P. 11 ............................................................. passim

## **Federal Sentencing Guidelines**

U.S.S.G. § 2G2.2 ........................................................................ 59

U.S.S.G. § 5G1.1(a) .................................................................... 55

U.S.S.G. § 5G1.2(d) .............................................................. 55, 56

## JURISDICTIONAL STATEMENT

The district court exercised jurisdiction over this criminal case under 18 U.S.C. § 3231. Judgment entered on July 1, 2019, and defendant noticed a timely appeal on July 3, 2019. (RA:9.) This Court has jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a).

## STATEMENT OF THE ISSUES

1.   Defendant entered a guilty plea to Count 7 of the indictment after disputing the accuracy of an ancillary fact in the government's proffer. Did the district court plainly err by accepting defendant's plea even assuming the existence of a nonprejudicial variance in proof?

2.   The district court concluded that defendant's guilty plea to Count 7 of the indictment rested on an adequate factual basis despite defendant's disagreement with one ancillary fact in the government's proffer. Did the court plainly err in reaching this conclusion, or in concluding that the plea was knowing, intelligent, and voluntary?

3.   The district court imposed a 2,160-month sentence after considering the parties' analyses of sentencing factors and the presentence investigation report. Did the court commit plain error rendering defendant's sentence procedurally unreasonable?

4.    The district court imposed a 2,160-month sentence after accepting, without defense objection, a Guidelines sentencing range calculation of 2,280 months.  Is an effective life sentence substantively reasonable on the record presented?

## STATEMENT OF THE CASE

### A.    Underlying facts

After an investigation into the trading of images containing child pornography, Homeland Security Investigations ("HSI") arrested a Rhode Island resident named Jay Gaccione ("Gaccione" or "defendant"). (PSR ¶¶ 9,17; RA:44).[1]  Gaccione, 39 years old at the time of his arrest (*see* PSR p.2), lived with his wife and six children in Westerly, Rhode Island.  (PSR p.2, ¶¶ 130-131,133.)  The results of HSI's investigation revealed that Gaccione was communicating online and by text message with a South African resident named K'an Burne about Burne's molestation of minor children, and that they had been trading sexually explicit images with each other.  (PSR ¶ 9.)

---

[1] The record appendix is cited as "RA:__."  The government's sealed supplemental record appendix is cited as "GA:__."   The presentence investigation report in defendant's sealed supplemental record appendix is cited as "PSR __."  Defendant's brief is cited as "Def. Br. __."

### 1.    The interviews

On November 4, 2016, law enforcement officials executed a search warrant at Gaccione's home.  (PSR ¶ 18.)  During a forensic preview of his computer media, they discovered sexually explicit images of a teenage girl later identified as Gaccione's daughter, Minor Victim #1 ("MV#1").  (PSR ¶ 18.)  That same day, after waiving his *Miranda* rights, Gaccione agreed to be interviewed.  (PSR ¶¶ 19-20,22.)

Gaccione explained that he had been communicating with members of an online bulletin board devoted to child pornographers who exchanged images.  (RA:43.)  Gaccione shared sexually explicit images with this online community and represented to its members that the images depicted his own children.  (RA:43-45.)  Other members of the online community challenged his representations, asserting that the images Gaccione had shared were of known minors already posted on the internet.  (RA:43-44.)  Gaccione told the investigators that it was at this point that he began taking photographs of MV#1 to share with the online community.  (RA:44.)

Gaccione admitted that he sent images of MV#1 to one of the people he was communicating with online after that person became unhappy

and angry when Gaccione tried sending him "stock" images of child pornography.  (PSR ¶¶ 20,22; RA:43-44.)  In order to placate his internet correspondent, Gaccione took over twenty nude photographs of his daughter that variously depicted her vagina, breasts, buttocks, and anus.  (PSR ¶¶ 20,22; RA:44.)  Gaccione sent some of these to the person online.  (PSR ¶ 20.)  He conceded to investigators that, with respect to one image of MV#1 performing oral sex, it was his penis in MV#1's mouth.  (PSR ¶¶ 20,22.)

To verify the accuracy of Gaccione's statements, an HSI investigator interviewed MV#1 on November 4 and 9, 2016.  (PSR ¶ 24.)  MV#1 informed the investigator that Gaccione had "'had sex with her'" at least once weekly for two or three years.  (PSR ¶¶ 10,25.)  The sexual acts in which she participated with him included vaginal intercourse, fellatio and cunnilingus; although MV#1 allowed Gaccione to touch her vagina and agreed to masturbate at his direction, she refused his request for anal sex.  (PSR ¶ 25.)

Gaccione participated in another interview in connection with a polygraph examination to which he had assented.  (PSR ¶¶ 19,23.)  He admitted during this interview that he had had sexual contact with

-4-

MV#1—oral sex, her touching his penis, and four instances of vaginal intercourse—but he contested her account of how early the sexual contact had begun.  (PSR ¶ 23.)  Gaccione also confirmed his daughter's assertion that he had photographed her masturbating, and informed investigators that he had sent images of MV#1 to "'the guy'" (*i.e.,* K'an Burne) with whom he was corresponding.  (PSR ¶ 23.)

### 2. *Sexual exploitation of a minor (Counts 1-6)*

When K'an Burne in South Africa was arrested, he contacted Gaccione to inform him about the arrest and advised him to delete all the images and correspondence on his computer-related devices in order to protect himself.  (PSR ¶ 21.)  Gaccione followed Burne's advice and also acquired a new cell phone.  (PSR ¶ 21.)  Thus, when HSI investigators engaged in a detailed forensic analysis of the computer media they had seized during the search of defendant's house, they determined that many of the images and texts shared between Gaccione and Burne had been deleted.  (PSR ¶ 28.)  Nevertheless, the forensic investigation revealed that Gaccione had created images of MV#1 with two separate cell phones and that he had stored the images on (but later deleted them from) two micro-SD cards, one associated with each phone.  (PSR ¶¶ 26-

30.)  Of the various images and videos recovered during the investigation, twelve images and one video of MV#1 met the statutory definition of child pornography, while the rest constituted child erotica.  (PSR ¶¶ 26,29-30.)

Investigators ultimately concluded that Gaccione created images of MV#1 on five different dates between April 16, 2014, when his daughter was twelve years old, and April 24, 2016, which she was fourteen years old.  (PSR ¶ 27.)  These dates served to distinguish the five violations of 18 U.S.C. § 2251(a) with which Gaccione was later charged.[2]  (PSR ¶ 28.) More specifically:

- Count 1 of the indictment charged that, on April 16, 2014, Gaccione created two close-up images of MV#1's vagina and one image of her anus and vagina.  (PSR ¶ 29; RA:13,38);

- Count 2 charged that, on May 10, 2014, Gaccione created one image depicting MV#1 displaying her vaginal area and two images showing her touching or inserting her fingers into her vagina.  (PSR ¶ 29; RA:14,38);

---

[2] Gaccione was charged with a sixth count predicated on § 2251(a)— Count 4 of the indictment.  (RA:15; PSR ¶ 36.)  The court later granted the government's motion to dismiss this count.  (RA:95.)

- Count 3 charged that, on July 21, 2014, Gaccione created an image of MV#1 pulling her underwear aside and exposing her vagina. (PSR ¶ 29; RA:14-15,38);

- Count 5 charged that, on October 13, 2015, Gaccione created an image of MV#1 standing up with her pants pulled down to display her vagina. (PSR ¶ 30; RA:16,38);

- Count 6 charged that, on April 24, 2016, Gaccione created three still images and shot one video of MV#1. (RA:17,38-39.) One still image showed MV#1 bending over to display her anus and vagina, while the other two still images depicted her mouth on Gaccione's penis. (PSR ¶ 30; RA:38-39.) Gaccione filmed the video of MV#1's anus and vagina while standing behind her as she bent over. (PSR ¶ 30.) While filming her, he directed her to masturbate and assured her that "I'm not going to fuck you, I promise." (PSR ¶ 30; RA:38-39.)

### 3. *Distribution of child pornography (Count 7)*

As previously indicated, on April 24, 2016, Gaccione created several pornographic images and one pornographic video of his daughter. (PSR ¶ 30.) Five days later, on April 29, 2016, Gaccione exchanged emails and

text messages with K'an Burne in South Africa seeking images of young girls: "Yea I've seen them all I'm bored with it.  don't you have any young girls around you you can get pics from."[3]  (PSR ¶¶ 12,31.)  Burne offered to exchange images: "I got home made ones of my 3 and 5yo [girls]..really hot..will trade the same or similar value."  (RA:40; PSR ¶¶ 12,31.) Gaccione mused about the possibility of creating images of local children: "I have been trying to get my neighbor's kids but it's hard to do because I'm not sure how to get them to let me do it."  (PSR ¶¶ 12,31.)

 Burne indicated he had sent Gaccione images ("On it's way let me know."). (PSR ¶¶ 13,32.)  After Gaccione expressed approval ("Damn hope you don't mind me saying so I would love 2 taste her") (PSR ¶ 14), Burne provided Gaccione with detailed instructions on how to gain a child's trust for purposes of making sexually explicit images of her:

> [Gaccione's Sprint account]:  They don't say anything to anyone.
>
> [Burne's Gmail account]:  They don't because they like it as much as anyone..my wife has let my daughter suck my cock [. . . .]

---

[3] The PSR recounts in detail the exchange of messages between Burne and Gaccione. (PSR ¶¶ 12-16.)  Except as noted, spelling and punctuation are original to the messaging quoted herein.

[Gaccione's Sprint account]:  I'm afraid they would say something.

[Burne's Gmail account]:  No tell them if they say anything that we would get into trouble and the fun would stop..tell them that you are thier best friend and love them and you'd do anything for them…but first you have to teach them how to keep a secret..so give them a candy and tell them not to tell thier parants..then see if they do or not. . . You need to gain there trust…

(PSR ¶ 14.)  Although the HSI's forensic review showed that three .jpg[4] images accompanied Burne's messages to Gaccione, the images themselves were no longer available and had apparently been deleted. (PSR ¶¶ 14,21.)

Desiring to reciprocate, Gaccione cautioned Burne that he had "some," but not "a lot," of images of his "fifteen-year-old daughter."[5] (RA:18; PSR ¶ 14.)  When Burne expressed approval ("That would be nice.") (PSR ¶ 32), Gaccione offered to provide Burne with photographs of his daughter in exchange for whatever Burne could send him.  (PSR ¶¶ 14-15,32.)  Burne replied, requesting additional images of not only

---

[4] In the digital media context, ".jpg" is a file extension associated with photographic images.  *See, e.g., United States v. Crespo-Rios*, 645 F.3d 37, 43-44 (1st Cir. 2011).

[5] MV#1 was actually fourteen at that time.  (RA:18.)

Gaccione's daughter but also of Gaccione's neighbor's children.  (PSR ¶ 16.)  In exchange, Burne promised he would send Gaccione videos of his own young daughters.  (PSR ¶ 16.)

Although Gaccione's message to Burne offering to provide photographs of MV#1 indicated that Gaccione was sending Burne six .jpg images, the file names of those images could not be located on Burne's cell phone.  (PSR ¶ 17.)  HSI eventually concluded that Burne had deleted the images on his phone before it was seized, which resulted in the names of the files being deleted as well.  While HSI could not identify the specific images Gaccione had sent to Burne, however, the investigators' forensic analysis established that six .jpg images were sent from Gaccione's Sprint messaging account to Burne during Gaccione's online chat with the South African.  (RA:40,43-44; PSR ¶¶ 14-17,31-34.)

During his interview, Gaccione admitted to investigators that he had sent photographs of MV#1 to Burne.  (PSR ¶ 34.)  Similarly, MV#1 told the investigators that Gaccione had informed her that he was taking photographs of her to send to someone on the internet.  (PSR ¶ 34.)

The evidence reflecting Gaccione's sending of six sexually explicit images to Burne formed the basis of the distribution charge in Count 7 of the indictment.  (RA:17-18.)  *See* 18 U.S.C. §§ 2252(a)(2), 2252(b).

### 4.    *Possession of child pornography (Counts 8 and 9)*

The various images recovered from the two micro-SD cards in Gaccione's cell phones served as the basis for two charges of possession of child pornography in violation of 18 U.S.C. § 2252(a)(4)(B).  (RA:40-41; PSR ¶ 35.)  The micro-SD card supporting Count 8 contained the images on which Counts 1, 2, and 3 were predicated, as well as two other pornographic images of children whose identities were unknown. (RA:41-42; PSR ¶ 35.)  Count 9 concerned the micro-SD card on which investigators had located the images forming the basis of counts 5 and 6. (RA:41-42; PSR ¶ 35.)  Both micro-SD cards were produced in China. (RA:39,42.)

### B.    Change-of-plea hearing

On November 13, 2018, Gaccione entered a straight guilty plea to five counts of sexually exploiting a minor in violation of 18 U.S.C. § 2251(a), one count of distributing child pornography in violation of 18 U.S.C. §§ 2252(a)(2) and 2252(b), and two counts of possessing child

pornography in violation of 18 U.S.C. §§ 2252(a)(4)(B) and 2252(b)(2). (RA:7,24-25,46-48.)

At the change-of-plea hearing, Gaccione asserted under oath that he had reviewed the indictment with his attorney and that he comprehended the options and consequences he faced. (RA:24-25,28.) Gaccione also said he understood the district court's explanation of the rights he was about to waive, the charges against him and their associated sentences, and the fact that he faced a minimum of fifteen and a maximum of 210 years' imprisonment. (RA:28-32,34-36.)

The government proceeded to lay out the elements of each crime charged and the evidence supporting them. (RA:36-42.) Gaccione initially admitted that the facts supporting each of the charges, as summarized by the government, were true. (RA:42.) Then, after consulting with counsel, he backpedaled concerning the facts supporting the distribution count: "I just wanted to say one thing. She [the prosecutor] said that I sent pictures of my daughter to someone in Africa or something like that. I never sent any pictures of her. It was pictures of, you know, other kids off the internet." (RA:42-43.)

-12-

The district court (McConnell, J.) questioned whether Gaccione's reluctance to commit to the government's version of the facts underlying the distribution count mattered for purposes of accepting his plea. (RA:43.) Defense counsel, noting that the identity of the minor in the image is not an element of a distribution charge under § 2252(a)(2), agreed that the court could accept Gaccione's plea "based on what he's admitted to today." (RA:46.) Concerned, however, that Gaccione's contradiction of his earlier admission to distributing images of MV#1 might influence the calculation of his Guidelines sentencing range (GSR), the prosecutor nevertheless outlined in greater detail the evidence supporting the government's position that Gaccione had distributed images of MV#1, as specified in Count 7 of the indictment. (RA:43-45.)

The court ultimately accepted Gaccione's plea as knowing, intelligent, and voluntary after concluding that he was willing to admit to facts sufficient to meet each element of every charge in the indictment. (RA:46-47.) The court likewise deemed Gaccione's plea to each charge, including the distribution charge, to be supported by an adequate factual basis. (RA:47-48.)

## C.  Sentencing

Based on a total offense level (TOL) of 43,[6] and a criminal history category (CHC) of I, Gaccione's GSR was life imprisonment.  (PSR ¶ 150.) But because the statutorily authorized maximum sentence on each count of the indictment was less than life, the Sentencing Guidelines required the sentences on each count to run consecutively to the extent necessary to produce the equivalent of a life sentence.  (PSR ¶¶ 149-150.)  In view of this directive, the probation office calculated a GSR of 2,280 months (190 years) by running the maximum sentences on each count consecutively to one another.  (PSR ¶ 150.)  Neither party objected to the PSR.  (PSR Addendum (ECF No. 51-1).)

Each party filed a sentencing memorandum that the court considered along with a letter from MV#1's mother before imposing sentence.  (RA:55.)  Characterizing a life sentence as "cartoonishly greater than necessary" and equating it to the death penalty, defense counsel argued in his memorandum that twenty-five years was sufficient

---

[6] Although the probation office calculated Gaccione's TOL to be 47, it then relied on a TOL of 43 because the actual TOL was greater than the Guidelines ceiling.  (PSR ¶¶ 101-104.)

to achieve the varied goals of sentencing, particularly given Gaccione's mediocre health and the efforts he made at personal improvement during pretrial detention. (GA:1-3,5-6.) The defense's memorandum argued that the Sentencing Guidelines were the product of an "office" or "conference room" rather than a "courtroom" and deserved little respect from the court. (GA:4.) It attacked the Guidelines as lacking credibility and for resulting in sentences that double counted "the normal pattern of behavior in these cases." (GA:3-4.)

For its part, the government's sentencing memorandum focused on the graphic details of Gaccione's abuse of MV#1 and on his online interactions with other child pornographers, including K'an Burne. (GA:9-13.) The government also pointed out the damage to MV#1 that Gaccione's abuse and exploitation had caused. (GA:1,15-16.) Finally, the government stressed the need to protect the public given indications in the record that defendant was interested in children as young as three years old and had sought direction on grooming them for future exploitation. (GA:16.) Based on the nature and circumstances of the case, including the impact on the victim as well as a concern for public safety, the government advocated for an incarcerative length effectively

equivalent to a life sentence. (GA:14-17.) To avoid unwarranted sentencing disparities, the government suggested a sixty-year term of imprisonment. (GA:16-17.)

The district court sentenced Gaccione on June 28, 2019. (RA:9.) During the sentencing hearing, the court reviewed the calculations involved in generating Gaccione's TOL of 43 and CHC of I. (RA:52-54.) The court accepted the PSR's calculation of a GSR of life, and it noted that the PSR's recommended equivalent sentence was 2,280 months, or 190 years.[7] (RA:54.) Neither party had any objection either to the GSR calculation or to the PSR. (RA:54-55.)

The court next entertained sentencing recommendations from both parties. (RA:55-69,72-86.) The prosecutor believed that Gaccione's crimes, especially his sexual abuse of MV#1, warranted a sentence of a length sufficient to prevent him from ever being released from prison. (RA:55,61-62.) The defendant's conduct "caused such a spiral of

---

[7] The district court initially treated 2,280 months as the "recommended period of incarceration." (RA:54.) The prosecutor clarified that the GSR was life and that 2,280 months, while the PSR's proposed equivalent to the GSR, was also the statutory maximum sentence. (RA:54.) The court accepted the modification. (RA:54.)

problems" for MV#1 that she might never recover.[8]  (RA:60.)  She was left emotionally damaged; she ceased counseling, missed a great deal of school, and ultimately dropped out.  (RA:56-59.)  The government's sixty-year recommendation therefore "just as easily could have been 75 years, a hundred years or 150 years."  (RA:55.)

According to the prosecutor, nothing in Gaccione's history or characteristics justified leniency.  (RA:60-64.)   He had repeatedly molested his daughter over the course of several years, and only stopped after law enforcement executed a search warrant at his home; moreover, his online communications revealed that he represented a danger to all of society's children, not just his own. (RA:60-61.)  Defendant's traumatic childhood did not mitigate the harm he had caused to his daughter, did not justify his violent assault on his wife earlier in their marriage, and did not excuse his disciplinary infractions during pretrial detention. (RA:62-64; PSR ¶¶ 111,138.)  His prospects for rehabilitation were vastly outweighed by the harm he had caused.  (RA:62-64.)

---

[8] MV#1's mother echoed the prosecutor's sentiments when she separately addressed the court.  (RA:69-72.)  MV#1 did not attend the sentencing because she did not want to see her father.  (RA:56.)

Finally, after engaging in a point-by-point refutation of the arguments in defendant's sentencing memorandum concerning the legality and credibility of the Guidelines (RA:64-68), the prosecutor emphasized the need for deterring Gaccione and those like him, and for sentencing such defendants with consistency. Each of those cases, including Gaccione's, warranted a life sentence. (RA:68-69.)

Defense counsel conceded that a life sentence would be constitutional, but disagreed as a matter of principle with the "consistent ratcheting up of sex-offender guidelines across the board . . . ." (RA:73-75,85.) Defense counsel urged the court to consider that, while MV#1 had been harmed, she could still make something of her life. (RA:73-75.) Gaccione could endanger neither her nor anyone else if he were well over sixty years old upon release, as defense counsel advocated. (RA:82-83.) On the other hand, without the hope of future release, it would be difficult for Gaccione to maintain the rehabilitative efforts he had begun during pretrial detention. (RA:75-79,85-86.) Defense counsel contended that the other sentences the prosecution cited were predicated on facts that, for one reason or another, justified their unusual length. (RA:79-82.) Due to Gaccione's health issues, however, twenty-five years was sufficiently

severe to achieve the primary goals of sentencing in his case. (RA:82,83-84.)

During allocution, Gaccione expressed regret for his conduct and its adverse impact on both the rest of his life and the lives of his family members. (RA:86-90.) Although he emphasized the steps he was taking to change and make a difference, however, he candidly admitted that recidivism was a possibility.[9] (RA:86-90.) Gaccione asserted that, even though he realized "I'm going to die in prison," he would still try to improve himself. (RA:88,88-89.)

In pronouncing sentence, the court agreed with the facts as summarized by the government, and characterized Gaccione's behavior as "despicable and reprehensible and unfathomable." (RA:90-91.) In the district judge's view, "no punishment" was "severe enough" for what Gaccione had done. (RA:91.) "[I]f one merely looked at the seriousness of the crime, the answer is easy, the answer is very easy; you'd never get

---

[9] (RA:88 ("I'm not going to sit here and say, well, you know, it's never going to happen again. I don't know. But I can tell you I don't want it to, and I'm going to do whatever it takes not to let it happen again, you know. . . ."),89 ("Like I said, I can sit here and say I'm sorry, it will never happen a billion times, but, your Honor, you know, you've heard it, you know, it happens. You have people say it and they come back.").)

out of prison." (RA:91.)  The court was cognizant, however, of the need to balance competing interests: "[T]he thing that I have to look at here is the human being that stands before me." (RA:91.)

The court made it clear that it had "certainly considered" the defendant's background. (RA:91.)  The judge recognized that defendant had grown up in "horrible conditions." (RA:91.)  The court also acknowledged the obvious connection between the abuse Gaccione had perpetrated on MV#1 and the sexual abuse he had suffered as a child. (RA:91-92.)  The court balanced the mitigating effect of Gaccione's personal background—"the question becomes" whether that "requires or mandates a cause for this Court to show some mercy" (RA:92)—with the severity of the crime and its impact on MV#1:

> And we know that this is a lifetime scar because the scar that you suffered has had a lifetime throughout yours.  I don't know how your child [MV#1] will deal with this.  I don't know whether she will go out and abuse when she's 41, how awful that would be, I just don't know, but anything short of a lifetime of imprisonment will not give her the safety and security that she deserves.

(RA:92.)  The court made it clear that that the sentence it imposed was selected "not out of malice" or "some political feeling," but "singularly"

because MV#1 and the other members of Gaccione's family "need to know that you're going to be locked up for the rest of your life." (RA:93.)

The court sentenced defendant to a series of consecutive sentences: 30 years' incarceration for each of Counts 1, 2, 3, 5, and 6, to be followed by ten years' incarceration for each of Counts 7, 8, and 9. (RA:93,96-97.)

## SUMMARY OF ARGUMENT

1.    The district court did not constructively amend Count 7 of the indictment concerning distribution of child pornography by accepting defendant's guilty plea to that count even though defendant disputed the identity of the minor child depicted in the images he distributed. The exact identity of the child depicted in the image is not an element of a distribution charge; therefore, the essence of the distribution charge remained unchanged regardless of defendant's disagreement with a single ancillary fact in the government's proffer. When scrutinized under plain-error review, it becomes clear that defendant's concerns about potential violations of double jeopardy and due process principles are not borne out by the record and that, at worst, he has established the existence of a nonprejudicial variance.

2.    The district court did not commit plain error by determining that defendant's guilty plea to the distribution charge in Count 7 had an adequate factual basis.  The government presented an ample evidentiary proffer despite defendant's deletion from computer media of the actual images distributed, and notwithstanding defendant's disagreement with the identity of the child those images depicted. The knowing, intelligent, and voluntary nature of defendant's plea is also patent in the record.  In any case, defendant has failed to establish a reasonable probability he would have opted for trial on the distribution charge.

3.    The 180-year sentence the district court imposed is procedurally sound.  Defendant has failed to demonstrate plain error in the district court's consideration of sentencing factors or calculation of the GSR.  Nothing in the Sentencing Guidelines required the court to cap a life sentence by employing some sort of statistical ceiling.  Finally, where individual offenses do not provide for a life sentence, the Guidelines require stacking consecutive terms of years in order to reach a GSR of the desired length, which is exactly what the court below did.

4.    The district court did not abuse its discretion in imposing a Guidelines-range sentence of 180 years given the horrific nature of

defendant's crimes and their probable lifelong impact on the victim, his minor daughter. After balancing defendant's personal circumstances against the nature and facts of the offenses he committed, the court justifiably concluded that defendant's background did not mitigate the harsh sentence his conduct required.

## ARGUMENT

### I. The district court's acceptance of defendant's guilty plea to the distribution charge did not constructively amend the indictment or result in a prejudicial variance

Gaccione contends that the district court constructively amended Count 7 of the indictment—the charge that Gaccione distributed child pornography in violation of 18 U.S.C. § 2252(a)(2)—when the court allowed him to plead guilty to that charge even though he asserted that the identity of the minor in the images he distributed was different from the minor referenced in Count 7. The claim lacks merit.

### A. Legal principles and standards of review

Under the Presentment Clause of the Fifth Amendment, once an indictment has been returned, "'its charges may not be broadened through amendment except by the grand jury itself.'" *United States v. Dowdell*, 595 F.3d 50, 67 (1st Cir. 2010) (quoting *Stirone v. United States*,

361 U.S. 212, 215-16 (1960)).  A constructive amendment occurs when the "'charging terms of an indictment are altered, either literally or in effect, by prosecution or court after the grand jury has last passed upon them.'"  *United States v. Taylor*, 848 F.3d 476, 495 (1st Cir. 2017) (citation omitted).  Courts prohibit constructive amendments for three reasons: (1) to preserve the defendant's right to have a grand jury vote on the indictment, (2) to prevent the defendant from being prosecuted again for the same offense, and (3) to ensure that the defendant receives notice of the charges.  *United States v. Pierre*, 484 F.3d 75, 81 (1st Cir. 2007); *see also, e.g., United States v. Mubayyid*, 658 F.3d 35, 49 (1st Cir. 2011).

A variance is closely akin to a constructive amendment, often differentiated by degree rather than kind.  "Save at either end of the spectrum, it is not always clear what distinguishes a permissible variance from an impermissible constructive amendment."  *Mubayyid*, 658 F.3d at 49-50 (internal quotation marks and citations omitted).  In contrast to a constructive amendment, a variance occurs when, although the charge itself remains unchanged, the facts supporting the conviction are different from those alleged in the charging document.  *United States v. Rosario-Perez*, 957 F.3d 277, 289 (1st Cir. 2020); *Mubayyid*, 658 F.3d

at 48. As Gaccione correctly observes (Def. Br. 19 n.3), constructive amendments and variances can arise from guilty pleas as well as trials. *See, e.g., United States v. Iacaboni*, 363 F.3d 1, 7 (1st Cir. 2004) (guilty plea involving amendment to forfeiture count); *United States v. Philpot*, 773 F. App'x 583, 589 (11th Cir. 2019) (unpublished) (collecting cases).

Because he failed to raise it below, Gaccione's constructive amendment claim is subject to review for plain error. *United States v. Brandao*, 539 F.3d 44, 57 (1st Cir. 2008).[10] Gaccione therefore has the burden of demonstrating prejudice, which, contrary to his assertion on appeal (Def. Br. 20), is not simply presumed. 539 F.3d at 60 ("We agree with those circuits that apply the standard prejudice evaluation to constructive amendment claims on plain-error review and do not presume prejudice."). Variances, too, submit to plain-error review. *See, e.g., United States v. Tavares*, 705 F.3d 4, 16 (1st Cir. 2013).

---

[10] As this Court observed in *Brandao*, the plain-error rule "has four prongs: there must be (1) an error (2) that is plain and (3) that has affected the defendant's substantial rights; and if the first three prongs are satisfied, then a court *may* exercise discretion to correct a forfeited error if (4) the error '"seriously affect[s] the fairness, integrity, or public reputation of judicial proceedings."'" 539 F.3d at 57 (quoting *United States v. Olano*, 507 U.S. 725, 732 (1993)) (emphasis in *Brandao*; alteration in *Olano*).

## B.    Constructive amendment vs. variance

Count 7 of the indictment charged that "[o]n or about April 29, 2016," Gaccione "knowingly distributed, one or more visual depictions, to wit digital images of Victim #1," in violation of 18 U.S.C. §§ 2252(a)(2) and 2252(b).  (RA:17-18.)  During the change-of-plea hearing in this case, the government summarized the copious evidence from which it was reasonable to infer that Gaccione had sent sexually explicit images of MV#1 to K'an Burne in South Africa on the date stated in the indictment.  (*Supra* 7-10,12.)   However, while Gaccione agreed to plead guilty to Count 7, he disputed one aspect of the factual basis for the count that the government had asserted:  "She [the prosecutor] said that I sent pictures of my daughter to someone in Africa or something like that.  I never sent any pictures of her.  It was pictures of, you know, other kids off the internet."[11]  (RA:43.)

---

[11] Gaccione's proposed factual revision at the change-of-plea hearing remained consistent with the prosecution's version of the facts.  As the government's proof established, Gaccione had informed HSI investigators that the person he was corresponding with online became unhappy and angry when Gaccione initially tried sending him the "stock" images of child pornography he had found on the internet.  (PSR ¶ 20; RA:43-45.)

Gaccione essentially complains on appeal that his admission at the change-of-plea hearing that he sent K'an Burne images of "other kids off the internet" rather than of MV#1 fundamentally alters the nature of Count 7.  (Def. Br. 20-22.)   Defendant asserts that the district court constructively amended the distribution charge by allowing him to enter a guilty plea despite his disagreement with the government's assertion that MV#1 was the child depicted in the images he distributed.  (Def. Br. 21-22.)   Gaccione is mistaken.   The difference in factual predicate between the facts alleged in Count 7 and those Gaccione stated during his plea colloquy at worst created a nonprejudicial variance, not a constructive amendment.

The prohibition against constructive amendments does not pertain to "facts that are ancillary to the charged offense."  *Dowdell*, 595 F.3d at 67-68.   Therefore, a deviation in proof from the manner or means of committing the crime outlined in the indictment does not necessarily result in a constructive amendment.  *See Mubayyid,* 658 F.3d at 53-54. For example, where the type of drug or firearm is not an element of the offense that the grand jury charged, no amendment occurs if the government's evidence establishes that the defendant distributed a drug

-27-

or possessed a firearm different from the type identified in the indictment. *Dowdell*, 595 F.3d at 68; *see also, e.g., United States v. Dupre*, 462 F.3d 131, 140-42 (2d Cir. 2006) (at trial government proved wire transfer different from the wire transfer alleged in the indictment); *United States v. Danielson*, 199 F.3d 666, 669-70 (2d Cir. 1999) (per curiam) (government proved that shells, rather than entire rounds of ammunition as alleged in indictment, had traveled in interstate commerce); *United States v. Baldwin*, 774 F.3d 711, 724-25 (11th Cir. 2014) (government proved defendant misused credit card different from the one described in the indictment); *United States v. Garcia-Paz*, 282 F.3d 1212, 1216-17 (9th Cir. 2002) (although indictment charged defendant with smuggling marijuana, government proved at trial he had smuggled illegal medicine).

"In short, when a change leaves the substance of the charge unaffected, the switch does not usurp the prerogative of the grand jury." *Dowdell*, 595 F.3d at 68 (quotation and alterations omitted). Nor does such a change typically create a danger of unfair surprise. *Id.* at 68-69; *see also, e.g., United States v. Tello*, 687 F.3d 785, 796 (7th Cir. 2012) ("Tello cannot claim to have been caught by surprise by the offense to

which he was pleading guilty . . . , as the contours of the offense were committed to writing in an agreement that both he and his counsel reviewed and signed.")

Here, Gaccione's desire to rest his guilty plea on the distribution of images of "other kids off the internet" rather than images of MV#1 "leaves the substance of the [distribution] charge unaffected." *Dowdell*, 595 F.3d at 68. Although a violation of 18 U.S.C. § 2252(a)(2) required the government to prove that Gaccione knowingly distributed a visual depiction of an actual minor engaging in sexually explicit conduct, defense counsel conceded below that the exact identity of the minor is not an element of the crime charged. (RA:46.) *See United States v. Chiaradio*, 684 F.3d 265, 272, 281 (1st Cir. 2012); *cf. United States v. Sims*, 428 F.3d 945, 955-57 (10th Cir. 2005) (rejecting defendant's argument that government had to prove identity of minor child depicted in visual image in order to establish violation of 18 U.S.C. § 2252(a)(1), concerning transportation of visual images involving use of a minor engaging in sexually explicit conduct). Thus, even though Gaccione disputed the identity of the child in the visual depiction being used as the basis for his conviction, he did not dispute the facts supporting the

elements of the distribution charge. The essence of Count 7's distribution charge therefore remained the same, and the indictment's use of a "to wit" clause in Count 7 does not alter the analysis. *See, e.g., United States v. D'Amelio*, 683 F.3d 412, 423 (2d Cir. 2012) ("[W]here the indictment charged a single course of conduct," and where deviation from the facts "alleged in the 'to wit' clause did not permit conviction for a functionally different crime," the evidentiary deviation did not broaden the basis for conviction beyond what the indictment originally charged.) (citation omitted).

Defendant's desire to rest his distribution conviction on a visual image other than the one named in the "to wit" clause of Count 7 did not violate any of the three reasons that constructive amendments are prohibited. (*Supra* 24.) First, because the identity of the child in the photograph was not an element of the crime charged, Gaccione's guilty plea did not "not usurp the prerogative of the grand jury" under the Presentment Clause. *Dowdell*, 595 F.3d at 68. Second, in light of the rich factual detail the government presented in support of Count 7 as originally charged, Gaccione could not be prosecuted again for distributing either MV#1's images or images of "other kids off the

-30-

internet" on April 29, 2016.  *See, e.g., D'Amelio*, 683 F.3d at 423; *Tello*, 687 F.3d at 796.

Third, Gaccione can hardly claim to be uninformed of the charge in Count 7 once he sought to amend it.  After all, it was Gaccione who told law enforcement investigators that he sent known pornographic images of minors to others via the internet (RA:43-44); Gaccione who admitted to creating sexually explicit images of MV#1 as alleged in  Counts 1, 2, 3, 5, and 6 of the indictment (RA:36-42,47); Gaccione who challenged the indictment's reliance on MV#1's image for purposes of Count 7 (RA:43); and Gaccione who instead sought to predicate his guilty plea on images of "other kids" he obtained from the internet (RA:43).  *See Tello*, 687 F.3d at 796; *cf. United States v. Schumaker*, 479 F. App'x 878, 883 (11th Cir. 2012) (unpublished) (Rejecting defendant's claim of prejudicial variance, court observed that defendant "clearly knew that Counts 1 and 2 related to crimes without a real child victim because he continuously litigated this issue before the district court[.]").

*Stirone v. United States*, 361 U.S. 212 (1960), does not rescue defendant's claim from rejection.  (*See* Def. Br. 22-23.)  In *Stirone*, the defendant was indicted for unlawfully interfering with interstate

-31-

commerce in violation of the Hobbs Act.  The indictment charged the defendant with obstructing shipments of sand that traveled into Pennsylvania, where the sand was being used to manufacture concrete for constructing a steel mill.  *Id.* at 213-14.  At trial, the government not only introduced evidence related to shipments of sand that had already occurred, but also presented evidence that the defendant's actions had interfered with prospective steel shipments from a steel mill that had not yet been built.  *Id.* at 214.

The district court in *Stirone* permitted the jury to convict the defendant based on interference with *either* past sand shipments *or* future steel shipments—two distinct courses of conduct that each satisfied the interstate commerce element of the crime.  The defendant's conviction thus amounted to a forbidden constructive amendment of the indictment, which alleged nothing about a course of conduct involving steel shipments.  *See id.* at 217-19; *Taylor*, 848 F.3d at 496 (citing *Brandao*, 539 F.3d at 62).  In contrast to *Stirone*, however, the essential conduct to which Gaccione pled guilty in this case *was* alleged in the indictment.  *See D'Amelio*, 683 F.3d at 419-22 (detailing limitations of

*Stirone*).[12]

While Gaccione's desired modification of a nonessential fact supporting his guilty plea did not constructively amend Count 7, it arguably represents a nonprejudicial variance in proof from what that count alleges.  As noted, a variance occurs when, although the charging terms remain unchanged, "the facts proved at trial are different from those alleged in the indictment."  *Rosario-Perez*, 957 F.3d at 289 (citing *United States v. Fisher*, 3 F.3d 456, 462 (1st Cir. 1993)).  Variances do not warrant reversing the conviction absent a demonstration of prejudice. *See, e.g., United States v. Portela*, 167 F.3d 687, 700 (1st Cir. 1999) ("To be sufficient grounds for reversal, a variance must be severe enough to affect the defendant's substantial rights."); *Mubayyid*, 658 F.3d at 48, 51, 53 & n.24, 54; *Dowdell*, 595 F.3d at 68-69; *United States v. Delano*, 55 F.3d 720, 729 (2d Cir. 1995) (court has "consistently permitted significant flexibility in proof, provided that the defendant was given notice...."), *quoted in United States v. Dubón-Otero*, 292 F.3d 1, 5-6 (1st Cir. 2002).

Gaccione's desire to base his plea on a fact that, although part of

---

[12] It's also worth noting that this Court has found *Stirone* less persuasive in cases like the one at bar where the claimed error is subject to plain-error review.  *Taylor*, 848 F.3d at 496 (citing *Brandao*, 539 F.3d at 61).

the evidence against him (*supra* 26 n.11), was not contained in Count 7, did not materially prejudice him.  Count 7 did not have to recite all of the government's evidence concerning distribution of child pornography. *United States v. Stepanets*, 879 F.3d 367, 372 (1st Cir. 2018) (citing *United States* v. *Innamorati,* 996 F.2d 456, 477 (1st Cir. 1993)).  Instead, it only needed to outline "'the elements of the crime and the nature of the charge'" so that Gaccione could prepare an effective defense and avoid future prosecution for the same offense. *Id.* (citations omitted).  As the government has already pointed out, Count 7 of the indictment in this case satisfied those requirements.  (*Supra* 27-31.)

In sum, the record reveals that the lower court committed no error, let alone plain error, in accepting Gaccione's guilty plea to Count 7 despite Gaccione's disputing the identity of the minor child in the images on which the distribution count rested.  At worst, Gaccione's plea simply resulted in a nonprejudicial variance to Count 7.  Gaccione has failed to establish the prejudice required by plain-error review, *see Brandao*, 539 F.3d at 60-62, and this Court should therefore reject his argument.

II.   **The district court did not plainly err in concluding that defendant's guilty plea to Count 7 rested on a sufficient factual basis, or in concluding that his plea was knowing, intelligent, and voluntary**

A.   **Adequate factual basis**

Gaccione contends that his conviction on Count 7 for distribution of child pornography lacked a sufficient factual basis to establish that the children in the images were real minors engaged in sexually explicit conduct.   (Def. Br. 29-30.)   He challenges the adequacy of the government's proof because the government submitted no images for the court's review, and because, he says, he never admitted enough facts to satisfy the elements of a distribution charge.  (Def. Br. 27-30,31-32.)

Gaccione concedes that his claim is subject to plain-error review and that he must therefore establish a reasonable probability that, but for the error, he would not have pled guilty to Count 7.  (Def. Br. 32-35); *see also United States v. Dominguez Benitez*, 542 U.S. 74, 83 (2004). Plain-error review entitles this Court to rely on "the whole record when considering the effect of the Rule 11 error on defendant's substantial rights, and not simply the record of the plea colloquy." *United States v. Borrero-Acevedo*, 533 F.3d 11, 16 (1st Cir. 2008); *United States v. Vonn*, 535 U.S. 55, 74 (2002).

-35-

Under the plain-error review standard as applied in this context, the requirement that "there [be] a factual basis for the plea," Fed. R. Crim. P. 11(b)(3), is satisfied if the record at the time of the change-of-plea hearing reflects a "reasoned basis" to conclude that the defendant committed the crime. *United States v. Matos-Quiñones*, 456 F.3d 14, 21 (1st Cir. 2006); *United States v. Ozuna-Cabrera*, 663 F.3d 496, 501 (1st Cir. 2011). For purposes of assessing adequacy of the factual basis, the question "'is not whether a jury would, or even would be likely, to convict: it is whether there is enough evidence so that the plea has a rational basis in facts that the defendant concedes or that the government proffers as supported by credible evidence.'" *United States v. Delgado-Hernandez*, 420 F.3d 16, 27 (1st Cir. 2005) (quoting *United States v. Gandia-Maysonet*, 227 F.3d 1, 6 (1st Cir. 2000)). "In other words, there must be 'an admission, colloquy, proffer, or some other basis for thinking that the defendant is at least arguably guilty.'" *Id.* (quoting *Gandia-Maysonet*, 227 F.3d at 6)).

Although Gaccione complains that the government never provided the court with the images supporting Count 7, the distribution of child

pornography in violation of 18 U.S.C. § 2252(a)(2)[13] does not require the government to produce the actual images distributed. Instead, as its text makes clear (*supra* 37 n.13), the statute requires the defendant to know that the images he distributed were created using a minor child engaged in sexually explicit conduct, and that the images themselves depict such conduct. The government can support a distribution conviction with non-visual evidence such as file names, the contents of chatroom visits, verbal descriptions of the images involved, and the defendant's stated sexual preferences. *See United States v. Breton*, 740 F.3d 1, 8, 13-15, 18 (1st Cir.

---

[13] In relevant part, § 2252(a)(2) provides:

(a) Any person who—
   . . .
   (2) knowingly . . . distributes, any visual depiction using any means or facility of interstate or foreign commerce or that has been mailed, or has been shipped or transported in or affecting interstate or foreign commerce, or which contains materials which have been mailed or so shipped or transported, by any means including by computer, . . . if—

   (A) the producing of such visual depiction involves the use of a minor engaging in sexually explicit conduct; and

   (B) such visual depiction is of such conduct . . . .

18 U.S.C. § 2252(a)(2).

2014); *United States v. Dewitt*, 943 F.3d 1092, 1096-97 (7th Cir. 2019) (use of non-visual evidence to prove age of victims); *cf. United States v. Nance*, 767 F.3d 1037, 1039, 1043-44 (1st Cir. 2014) (attempting to receive child pornography under § 2252(a)(2)); *United States v. Wilder*, 526 F.3d 1, 9 (1st Cir. 2008) (To support charge of receipt of child pornography under § 2252(a)(2), jury could consider evidence that defendant "responded to a posting seeking photos of young girls by sending four images of child pornography and writing, 'Now its your turn.'"); *United States v. Fabiano*, 169 F.3d 1299, 1304-05, 1306 (10th Cir. 1999) (receipt of child pornography under § 2252(a)(2)).

In view of the requirements of Fed. R. Crim. P. 11(b)(3) and the elements of § 2252(b)(2), the record in this case contains more than enough information to meet Rule 11(b)(3)'s evidentiary demands with respect to Count 7.  As summarized at much greater length (*supra* 5-10),[14] on April 24, 2016, Gaccione created several pornographic images and one pornographic video of his daughter.  There is no dispute that these images exist or that they constitute child pornography: They

---

[14] The summary in the government's brief does not exhaust the available evidence on point.  (*See, e.g.,* PSR ¶¶ 12-16,20,22-23,25,29-30.)

formed the basis of Count 6, to which Gaccione unequivocally pled guilty. (RA:25.)

Five days after creating the pornographic images of MV#1, on April 29, 2016, Gaccione exchanged emails and text messages with K'an Burne in South Africa seeking images of young girls. (*Supra* 7-8.) Burne indicated he had sent Gaccione images. (*Supra* 8.) Although the HSI's forensic review showed that three .jpg images accompanied Burne's messages to Gaccione, the images themselves were not available to investigators, having apparently been deleted. (PSR ¶¶ 14,21.)

Desiring to reciprocate, Gaccione advised Burne that he had "some," but not "a lot," of images of his "fifteen-year-old daughter." (PSR ¶ 32.) When Burne expressed approval, Gaccione offered to provide Burne with photographs of MV#1 in exchange for whatever Burne could send him. (PSR ¶¶ 14-15,32.) HSI's forensic analysis established that six .jpg images were sent from Gaccione's Sprint messaging account to Burne, but that Burne deleted the images on his phone before investigators seized it. (PSR ¶¶ 17,31-34; RA:17-18,22.)

During his interview, Gaccione admitted to investigators that he sent photographs of MV#1 to Burne. (PSR ¶ 34; RA:43-44.) MV#1

corroborated Gaccione's confession when she told investigators that Gaccione had informed her he was taking photographs of her to send to someone on the internet. (PSR ¶ 34.)

As limned above, Count 7 rests on an adequate factual basis because the government's proffer supported all of the elements of a § 2252(a)(2) distribution conviction: Gaccione knew that the images he distributed to K'an Burne were created using a minor child engaged in sexually explicit conduct, and the images themselves depicted such conduct. The government's proffer—particularly concerning Gaccione's messaged exchanges with Burne, his confession, and MV#1's corroborating statement—reasonably established that the minor child in question was Gaccione's teenage daughter. Based on Gaccione's guilty pleas to Counts 1, 2, 3, 5, and 6 as well as MV#1's statements, it is also beyond peradventure that the images of MV#1 depicted sexually explicit conduct. The forensic analysis of the parties' devices demonstrated that images were, in fact, distributed. Gaccione's deletion of the images establishes his guilty knowledge. *See Breton*, 740 F.3d at 13. All told, there is more than enough evidence to conclude that Gaccione "is at least arguably guilty." *Delgado-Hernandez*, 420 F.3d at 27; *see also Ozuna-*

*Cabrera*, 663 F.3d at 501 ("It is not error to accept the government's recitation of the facts as the basis for a plea.")

Gaccione argues that the district court erred in relying on the government's evidentiary proffer to the extent that, at the change-of-plea hearing, he disputed the facts the government had presented. (Def. Br. 31-32.) As this Court's decision in *United States v. Cheal*, 389 F.3d 35 (1st Cir. 2004), establishes, however, defendant's argument erroneously assumes that the district court was required to apply Rule 11(b)(3) to Gaccione's version of the facts.

*Cheal* involved this Court's review of a change-of-plea hearing in which the defendant, who was charged with wire and mail fraud, contested various aspects of the government's version of the facts against her. *Id.* at 41-42. The government responded by presenting additional evidence refuting the defendant's denial of particular facts. *Id.* at 42. In affirming the lower court's conclusion that the defendant's plea was supported by a rational basis in fact, this Court held that the district court was entitled to rely on a combination of both the government's evidentiary proffer *and* the defendant's own statements made during the plea colloquy. *Id.* at 42-43. The Court deemed the defendant's opposing

argument "fundamentally flawed" "because it assume[d] that the district court could rely only on her admissions in court to find a sufficient factual basis to accept her plea." *Id.* at 43; *see also, e.g., Gandia-Maysonet*, 227 F.3d at 6-7; *United States v. Maher*, 108 F.3d 1513, 1524-25 (2d Cir. 1997) ("Thus, so long as the facts relied on are placed on the record at the time of the plea, 'the district court, in determining whether there was a factual basis for the plea, [i]s free to rely on any facts at its disposal—not just the admissions of the defendant.'") (citation omitted).

Here, had Gaccione disputed the facts underlying a required element of conviction under § 2252(a)(2), the district court may have been obliged to reject his guilty plea on Count 7 as unsupported by an adequate set of facts. *See Matos-Quiñones*, 456 F.3d at 21 (facts relevant to inquiry into factual basis of plea "'may come . . . from credible evidence proffered by the government and not contradicted by the defendant.'") (citation omitted). But Gaccione never claimed that the images in question did not involve minors, or that they were not sexually explicit; he simply wanted to rely on the known images of child pornography—"other kids off the internet"—that he had *also* admitted sending to K'an Burne. (S*upra* 26 n.11.)

-42-

As the government's analysis of the change-of-plea record demonstrates, the district court did not plainly err by concluding, based on the prosecutor's summary of the evidence and Gaccione's agreement with facts relevant to the elements of § 2252(a)(2), that the distribution conviction on Count 7 rested on a factual foundation sufficient to satisfy Rule 11(b)(3). *See United States v. Negron-Narvaez*, 403 F.3d 33, 39 (1st Cir. 2005) ("The mere fact that the appellant at one point took a contradictory position as to his culpability on the firearms count neither alters our conclusion nor dispels the factual basis for the plea. That sort of temporary contradiction is inherent in virtually every change of plea."); *Maher*, 108 F.3d at 1524-28 (finding factual basis for plea despite defendant's denial during plea colloquy that he knew laundered money was going to drug dealers, because such knowledge was not element of crime charged).[15]

---

[15] Under Gaccione's interpretation of Rule 11(b)(3), a defendant could vitiate a guilty plea on appeal simply by objecting to any portion of the government's proffer during the change-of-plea hearing and then raising an objection to the plea on appeal if the sentence he received was not to his liking. *Cf. Vonn*, 535 U.S. at 73 ("[I]f Vonn's position were law[,] a defendant could simply relax and wait to see if the sentence later struck him as satisfactory; if not, his Rule 11 silence would have left him with clear but uncorrected Rule 11 error to place on the Government's shoulders.")

Even assuming the district court should have rejected Gaccione's plea under Rule 11(b)(3), Gaccione cannot convincingly surmount the hurdle of plain error. *See Cheal*, 389 F.3d at 40-41. As demonstrated by the record as a whole, the government's evidence supporting Count 7 was both graphic and overwhelming. Nothing in the record establishes a reasonable probability that, having pled guilty to five counts of sexually exploiting his daughter in order to produce child pornography and two counts of possessing child pornography, Gaccione would have opted for a trial solely on the distribution charge. *See Delgado-Hernandez*, 420 F.3d at 28.

## B.    Knowing, Intelligent, and Voluntary Plea

Based on his flawed argument concerning the application of Rule 11(b)(3), Gaccione next maintains that his plea was not knowing, intelligent, or voluntary because he misunderstood what Count 7 entailed. Def. Br. 35-38. He concedes the application of plain-error review. (Def. Br. 35-36,37-38); *see also, e.g., Delgado-Hernandez*, 420 F.3d at 19.

To the extent Gaccione's contention that his plea was flawed rests on his erroneous view of Rule 11(b)(3), this Court should reject his

position for the reasons already discussed.  (*Supra* 35-43.)  As the government details below, the record in this case belies any generalized claim that defendant's plea to Count 7 was not knowing, intelligent, or voluntary.

Under Rule 11, the district court needed to inform Gaccione of the nature of Count 7 and to determine that he understood the nature of that charge.  *Delgado-Hernandez*, 420 F.3d at 19.  But Rule 11 "does not require a court to employ a specific script [or] set of magic words." *United States v. Díaz-Concepción,* 860 F.3d 32, 36-37 (1st Cir. 2017) (internal citations and quotation marks omitted).  The district court in this case was therefore not *itself* required to explain Count 7 to Gaccione, as long as the record supports the conclusion that Gaccione "nevertheless understood the charges." *United States v. Cotal-Crespo*, 47 F.3d 1, 6 (1st Cir. 1995).

"[W]here the prosecutor's statement or the defendant's description of the facts sets forth all elements of the offense and the conduct of the defendant that constitutes the offense, 'the defendant's admission that the allegations are true is sufficient evidence that he understands the charge.'" *Id.* (citation omitted).  In the case at bar, although the district

court could have read Count 7 to Gaccione in order to ascertain his awareness and understanding of the distribution charge, *see Díaz-Concepción,* 860 F.3d at 37-38; *United States v. Ramirez-Benitez*, 292 F.3d 22, 27 (1st Cir. 2002), the court instead relied upon the prosecutor to explain the elements of the distribution charge as well as to describe the evidence in support thereof.  (RA:39-40.)  Gaccione clearly listened to the prosecutor's explanation quite carefully, as he brought to the court's attention his disagreement with the identity of the minor in the images the government alleged he had sent to K'an Burne.  (RA:42-43.)  The court noted that, except for that single disputed fact, Gaccione was "willing to admit to all of the facts sufficient to meet each and every one of the elements of the charge" in Count 7.  (RA:46.)  Furthermore, defense counsel agreed that the disputed fact was insignificant for purposes of the validity of Gaccione's plea.  (RA:46.)

Gaccione confirmed under oath that he had reviewed the indictment with his attorney and that he comprehended the options and consequences he faced.  (RA:24-25,28.)  An examination of the record underscores Gaccione's lack of confusion about the nature of, and facts underpinning, Count 7.  Moreover, the district court was entitled to rely

-46-

on defense counsel's concession that Gaccione's dispute about the identity of the child in the images he distributed was irrelevant to his plea. *See Negron-Narvaez*, 403 F.3d at 39.

Gaccione has therefore failed to demonstrate his plea to Count 7 was entered in violation of Rule 11. Furthermore, for reasons already discussed (*supra* 44), he has also failed to show a reasonable probability exists that, but for any alleged error, he would have opted for trial on the distribution count. His conviction on Count 7 should be affirmed.

## III. Because the district court considered all requisite sentencing factors, adequately explained its reasoning, and correctly calculated the Guidelines sentencing range, defendant's sentence is procedurally reasonable

### A. Legal standards

### 1. *General sentencing principles*

Any time a district court imposes sentence, it should use the Sentencing Guidelines as its point of departure. *Gall v. United States*, 552 U.S. 38, 49 (2007) (citing *Rita v. United States*, 551 U.S. 338, 347-48 (2007)). From there, the court should proceed to consider the factors listed in 18 U.S.C. § 3553(a), *id.* at 49-50 & n.6, in all events ensuring that the sentence it imposes is no greater than necessary to achieve the

purposes set forth in § 3553(a)(2). *Id.* at 50 n.6 (citation omitted).[16] The Court should first "inquire into the existence of procedural errors," *United States v. Flores-Machicote*, 706 F.3d 16, 20 (1st Cir. 2013), and then examine the substantive reasonableness of the sentence, taking the totality of the circumstances, including any GSR variance, into account. *Gall*, 552 U.S. at 51; *United States v. Ruiz-Huertas*, 792 F.3d 223, 226 (1st Cir. 2015).

Gaccione bifurcates his sentencing analysis into separately numbered arguments. Following suit, the government discusses Gaccione's procedural reasonableness claims next, and his substantive reasonableness claims *infra* in Argument IV.

---

[16] Section 3553(a)(2) requires the consideration of the general purposes of sentencing, including the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment for the offense, to adequately deter criminal conduct, to protect the public from defendant's recidivistic conduct, and to make appropriate rehabilitative options available to the defendant. *See Gall*, 552 U.S. at 50 n.6.

## 2.    Plain-error review

Other than questioning the court's misstatement of the number of months in his sentence, which is not an issue on appeal,[17] Gaccione never drew the district court's attention to specific claims of procedural error once the court had pronounced sentence, nor did he object to the PSR. (RA:54-55,96-97.)  This Court should accordingly review the procedural claims Gaccione presents on appeal for plain error rather than for abuse of discretion.  *See, e.g., United States v. Rondón-García*, 886 F.3d 14, 20 (1st Cir. 2018); *Flores-Machicote*, 706 F.3d at 24.

As the Court has observed, "[p]lain error review is not appellant-friendly." *Rondón-García*, 886 F.3d at 20 (internal citations omitted).  To prevail under that stringent standard, Gaccione needs to demonstrate

---

[17] As pronounced by the court, Gaccione's sentence totals 180 years. (RA:93,96-97.)  During the sentencing hearing, however, the district judge incorrectly stated that Gaccione's sentence amounted to 2,280 months, which is equivalent to 190 years.  (RA:93,96-97.)  Although the parties apparently sensed there was a mathematical discrepancy in the sentence as stated by the court, neither side brought the difference between 180 years and 2,280 months to the court's attention.  (RA:96-97.) The error was ultimately fixed in the judgment, which correctly indicates that the sentence is 2,160 months (180 years), long.  (RA:9; ECF No. 55.) At worst, the discrepancy amounts to harmless error.  *See, e.g., Tavares*, 705 F.3d at 26-27.

not only that an error occurred, but also that the error was clear or obvious, that it affected his substantial rights, and that it "'seriously impaired the fairness, integrity, or public reputation of judicial proceedings.'" *Id.* (internal citations omitted).

Gaccione advances three sets of procedural errors in this appeal: (1) the district court failed to consider the § 3553(a) factors and to justify the length of his sentence; (2) the court failed to correctly calculate the length of a "life" sentence; and (3) the court erred by stacking consecutive sentences. (Def. Br. 39-50.) None of these complaints establishes plain error.

## B.     Consideration of § 3553(a) factors

In the plain-error context, a defendant's claim of noncompliance with § 3553(a) requires him to establish a reasonable probability that, but for the error, the district court would have imposed a different sentence, one the defendant would have considered "'more favorable.'" *United States v. Medina-Villegas*, 700 F.3d 580, 583 (1st Cir. 2012) (citation omitted); *see also, e.g., Ruiz-Huertas*, 792 F.3d at 227. In this case, Gaccione asserts that the district court did not consider all of the § 3553(a) sentencing factors and therefore failed to justify the lengthy

sentence it imposed.  He argues that the severity of his crimes does not justify a sentence of 180 years, and that the court below never explained how it weighed the other sentencing factors or why it rejected the prosecutor's recommendation of sixty years' incarceration.  Gaccione believes that these shortcomings require resentencing.  (Def. Br. 40-46.)

Notwithstanding Gaccione's contentions, the district court was not required specifically to address every § 3553(a) factor on the record, nor was it required to afford each one "equal prominence."  *United States v. Contreras-Delgado*, 913 F.3d 232, 240-41 (1st Cir. 2019) (internal quotation marks and citations omitted).  If this Court can infer the lower court's sentencing rationale from the record (including the PSR, the district court's remarks, and the parties' arguments), the sentence passes plain-error muster.  *See, e.g., id.* at 242; *United States v. Romero*, 906 F.3d 196, 210 (1st Cir. 2018), *cert. denied*, 139 S. Ct. 1230 (2019).

Both parties in this case submitted detailed sentencing memoranda reviewing application of the § 3553(a) factors, which the court indicated it had considered.  (*Supra* 14-16.)  During the sentencing hearing, the court entertained additional presentations on the § 3553(a) factors from both sides.  (*Supra* 16-19.)  It also considered a victim impact statement

and Gaccione's own remarks, in the course of which Gaccione admitted that recidivism was a possibility. (*Supra* 17 n.8, 19 & n.9.)

In imposing sentence, the district court explicitly noted that the balance of sentencing considerations weighed heavily in favor of severe punishment: "[There is no doubt by everything that I've read and everything that I've heard today that you need to be severely punished because of the severity of this heinous crime." (RA:90.) The court also agreed with the government's "allocution of what the crime was." (RA:90-91.) The court explicitly considered Gaccione's background in mitigation of a severe sentence, but weighed much more heavily the harm defendant had caused and its lasting impact on MV#1. (*Supra* 19-21.)

By acknowledging it had considered the sentencing memoranda and the parties' oral presentations, which in turn covered all of the § 3553(a) factors and suggested opposing methods of balancing them, the court met its § 3553(a) obligations. Its statement on this score is entitled to some weight. *See Ruiz-Huertas*, 792 F.3d at 227; *United States v. Hoey*, 508 F.3d 687, 694 (1st Cir. 2007). It was the heinous nature of the crime and its psychological impact on MV#1 that, the court believed, justified sentencing Gaccione to a lifetime in prison despite his personal history.

(*Supra* 19-21.)  *See, e.g., Tavares*, 705 F.3d at 33-34 (affirming sentence that district court imposed after finding "that the gravity of the offense trumped any weight that might otherwise be given to [the defendant's] background").  The fact that Gaccione disagrees with the amount of weight the court assigned to the various § 3553(a) factors does not mean the court was wrong.  *See, e.g., Contreras-Delgado*, 913 F.3d at 242.

Gaccione's complaint that the court never explained why it rejected the government's recommendation of a sixty-year sentence is a red herring.  The prosecutor made it quite clear that her recommendation was simply a proxy for a life sentence; the government's "recommendation just as easily could have been 75 years, a hundred years or 150 years." (RA:55.)  The government intended by its recommendation to ensure that Gaccione was never released from prison, and the court's sentence achieves that goal.[18]  In any event, defendant

---

[18] Defendant argues that MV#1 will no longer be of sexual interest to him once she reaches adulthood, and that therefore lifelong incarceration is unjustified.  (Def. Br. 43-44.)  But MV#1's coming of age hardly neutralizes the additional psychological damage she would likely suffer if he were released.  *See Paroline v. United States*, 572 U.S. 434, 439-41 (2014) (detailing adverse impact of child pornography on its victims); *United States v. Kearney*, 672 F.3d 81, 94-95 (1st Cir. 2012).  The prosecutor believed that MV#1 might never recover from what Gaccione had done to her.  (RA:58-59,60.)

makes no showing that the lower court would have imposed a different, more favorable sentence. He therefore fails to satisfy the plain-error standard. *Ruiz-Huertas*, 792 F.3d at 227.

## C. Capping sentence at life in prison

Although the GSR in this case was life imprisonment, the probation office calculated a GSR of 2,280 months (190 years) in order to produce the equivalent of a life sentence given that each offense's maximum sentence was stated in terms of years. (PSR ¶¶ 149-150; *supra* 14.) Neither party objected to this calculation or to the district court's adoption of it. (A.54-55.)

Despite the concerns Gaccione voices on appeal (Def. Br. 46-48), there is nothing wrong with any of these calculations. With a TOL of 43, Goodman faced a GSR of life imprisonment. *See, e.g., United States v. Rodriguez-Reyes*, 714 F.3d 1, 9, 10, 11 & n.6 (1st Cir. 2013); *United States v. Saccoccia*, 58 F.3d 754, 786 (1st Cir. 1995). Because the statutorily authorized maximum sentence for each offense was less than life,[19]

---

[19] The maximum statutory sentence for each of Counts 1, 2, 3, 5, and 6 was thirty years; the maximum sentence for Count 7 was twenty years; and the maximum sentence for each of Counts 8 and 9 was ten years. (PSR p.1.)

however, the Sentencing Guidelines required the sentences on each count to run consecutively "to the extent necessary to produce a combined sentence equal to the total punishment." U.S.S.G. § 5G1.2(d); *see, e.g., Saccoccia*, 58 F.3d at 786 (where the total of "statutory maxima" was less than life, court applied U.S.S.G. § 5G1.2(d) to reach an incarcerative sentence of 660 years); *cf., e.g., Breton*, 740 F.3d at 20 (where life sentence associated with TOL of 43 was not available by statute, district court correctly set GSR at 720 months by adding maximum statutorily authorized penalties for each count of the conviction) (applying U.S.S.G. § 5G1.1(a)); *see also United States v. Cates*, 897 F.3d 349, 354 (1st Cir. 2018) (sentencing guidelines are treated as authoritative absent conflict with federal law).

The probation office was merely abiding by applicable sentencing guidelines when it calculated a GSR of 2,280 months' imprisonment—a sentencing range "neither more nor less than the functional equivalent of life without parole." *Saccoccia*, 58 F.3d at 786 n.28. The district court appropriately adopted the GSR, and was not required to "to estimate the length of [Gaccione]'s life and then fashion[] a sentence of corresponding duration. *Id.*; *see also, e.g., United States v. Kirby*, 938 F.3d 1254, 1257-

58 (11th Cir. 2019) (applying U.S.S.G. § 5G1.2(d) to set the GSR at 1440 months of imprisonment, the sentence most closely approximating imprisonment for life when the exact length of the defendant's life was unknowable); *United States v. Lewis*, 594 F.3d 1270, 1275-76 (10th Cir. 2010) (collecting authorities).

### D.   Stacking consecutive sentences

Gaccione believes that the district court should have equated a life sentence with an average life expectancy of between 39.2 and 43 years. (Def. Br. 49.)   Defendant overlooks this Court's rejection of a similar argument in *United States v. Breton*, a child pornography case in which the maximum sentences available under the charged statutes were individually less than the GSR of life imprisonment.   740 F.3d at 20. Breton complained that his sentence should have been calculated using the Sentencing Commission's 470-month statistical ceiling rather than by aggregating statutory maximum penalties for a total of 720 months. *Id.* at 20-21.   This Court disagreed, concluding that nothing in the Guidelines or other Sentencing Commission commentary caps a "life" sentence at 470 months.   *Id.* at 22.   Having concluded that the Commission had not imposed a ceiling on the length of a life sentence,

this Court affirmed as procedurally sound the district court's aggregation of the statutory maximum penalties to set Breton's GSR at 720 months.[20] *Id.* For the same reason, the district court's imposition of a 180-year sentence upon Gaccione is procedurally acceptable.

## IV. The district court imposed a substantively reasonable sentence that is well supported by the record

As Gaccione clearly "'advocate[d] for a sentence shorter than the one ultimately imposed,'" this Court "review[s] his objections to the sentence's substantive reasonableness for an abuse of discretion." *United States v. García-Mojica*, 955 F.3d 187, 194 (1st Cir. 2020) (quoting *Holguin-Hernandez v. United States*, 140 S. Ct. 762, 766 (2020)).

Based on arguments similar to those he marshaled as sources of procedural error (Def. Br. 50-69), Gaccione next shoulders the "heavy burden" of trying to overturn his sentence as substantively unreasonable. *Ozuna-Cabrera*, 663 F.3d at 504. Reversal is "particularly unlikely" when the sentence, like Gaccione's, "fits within the compass of a properly calculated" GSR. *Ruiz-Huertas*, 792 F.3d at 228-29 (internal quotation

---

[20] To the same effect, see also, for example, *Kirby*, 938 F.3d at 1257-58; *United States v. Metzger*, 411 F. App'x 1, 3 (7th Cir. 2010) (unpublished).

marks and citation omitted). The gist of Gaccione's argument seems to be that, because of various procedural errors, the district court imposed an unduly harsh, and therefore substantively unreasonable, sentence. *See United States v. Arsenault*, 833 F.3d 24, 34 (1st Cir. 2016).

"'[T]he linchpin of a reasonable sentence is a plausible sentencing rationale and a defensible result.'" *United States v. Joubert*, 778 F.3d 247, 256 (1st Cir. 2015) (quoting *United States v. Martin,* 520 F.3d 87, 96 (1st Cir. 2008)). Despite Gaccione's contrary contentions, Gaccione's sentence reflects both an appropriate rationale and a justifiable result.

### A. Arbitrariness

Citing the alleged absence of a § 3553(a) analysis in the record, Gaccione characterizes the imposition of his sentence as "arbitrary." (Def. Br. 51-52.) As described earlier, however, the district court considered the § 3553(a) factors and explained why the lengthy sentence it imposed was appropriate under the circumstances. (S*upra* 51-54.) Both deterrence and the need to protect the public (Def. Br. 54-55.) were part of the parties' presentations and, therefore, of the court's consideration. (*Supra* 51-53.) And while the district court may not have specifically referenced Gaccione's likelihood of re-offending (Def. Br. 53-

54), the defendant himself did not rule out that possibility.[21]  (*Supra* 19 n.9.)

Relying on *United States v. Jenkins*, 854 F.3d 181 (2d Cir. 2017), Gaccione attacks the district court's application of the pattern enhancement, U.S.S.G. § 2G2.2, as an "outdated" enhancement that results in unnecessary double counting.  Def. Br. 52-53.  *Jenkins*, however, explicitly acknowledges the need for lengthy sentences for those who, like Gaccione, sexually abuse children or distribute child pornography.  *See* 854 F.3d at 190-91.  Moreover, the pattern enhancement does not involve inappropriate double counting, *see, e.g., United States v. Reingold*, 731 F.3d 204, 222-23, 227-28, 230 (2d Cir 2013), and is still valid, *see United States v. Cubero*, 754 F.3d 888, 898-901 (11th Cir. 2014).  Indeed, this Court has repeatedly affirmed its use.  *See, e.g., Cates*, 897 F.3d at 356-57; *United States v. Clark*, 685 F.3d 72,

---

[21] Gaccione believes that the court should have paid more attention to what he alleges would be a statistically low risk of recidivism were he to be released after twenty-five years.  (Def. Br. 54.)  Defendant ignores evidence suggesting that the rate of recidivism for pedophiles like him does not decrease with age.  *See United States v. Cunningham*, 669 F.3d 723, 730-31 (6th Cir. 2012); *United States v. Irey*, 612 F.3d 1160, 1213-14, 1215, 1219-21 (11th Cir. 2010).

79 & n.5 (1st Cir. 2012). In sum, the district court's sentence, while severe, was not at all arbitrarily chosen.

## B. Death sentence

Likening 180 years in prison to a "death sentence," Gaccione decries the supposed inherent unfairness in requiring him to spend the rest of his life in prison when he sexually abused, but did not murder, MV#1. (Def. Br. 55-58.) But the length of Gaccione's sentence, while undoubtedly harsh, is a defensible result nevertheless. In the district court's view, Gaccione's crimes were "despicable and reprehensible and unfathomable." (RA:91.) Defendant's sentence is consistent with comparable penalties that this Court and other circuit courts have upheld as reasonable. *See, e.g., Ruiz-Huertas*, 792 F.3d at 229 (affirming what was essentially a life sentence for production of child pornography); *United States v. Grigsby*, 749 F.3d 908, 909 & n.2 (10th Cir. 2014) (affirming 260-year sentence under § 2251(a) for production of child pornography as well as other charges).[22]

---

[22] *See also, e.g., Kirby*, 938 F.3d at 1257-59 (affirming 120-year sentence for production of child pornography under § 2251(a) as well as possession of child pornography); *Metzger*, 411 F. App'x at 3-4 (235-year sentence for production of child pornography); *United States v. Hamilton*, 548 F. App'x 728, 731 (2d Cir. 2013) (unpublished) (a 150-year sentence for defendant's

## C.  Unjustified sentencing disparities

In yet another attempt to spin the straw of procedural deficiency into the gold of substantive unreasonableness, Gaccione criticizes the district court for failing to consider the sentences imposed on similarly situated defendants.  He suggests these sentences would have justified adoption of the government's recommendation for a sixty-year sentence in his case.  (Def. Br. 58-68.)  As the government has already pointed out, however, the prosecutor advocated for a sentence of *any* length that would keep Gaccione imprisoned for life—a sixty-year sentence was merely illustrative.  (*Supra* 16-17,53.)  In any event, having justified the 180-year sentence it imposed, the court had no "'corollary duty to explain why [it] eschewed other suggested sentences.'"  *Arsenault*, 833 F.3d at 32 (quoting *Ruiz-Huertas*, 792 F.3d at 228) (internal citation omitted).

---

production of graphic child pornography that he created by filming himself sexually abusing children as young as four years old was substantively reasonable); *United States v. Bour*, 804 F.3d 880, 887 (7th Cir. 2015) (affirming sentence of life plus eighty-five years for molesting, raping, and creating pornographic films of an infant girl); *United States v. McGarity*, 669 F.3d 1218, 1263-64 (11th Cir. 2012) (affirming life sentence for member of child pornography ring and rejecting defendant's argument that sentence violated the parsimony principle), *overruled on other grounds*, *Paroline v. United States*, 572 U.S. 434 (2014).

Moreover, defendant admits that both parties presented the circumstances of similar cases to the court. (Def. Br. 58-60.) By imposing a lengthy sentence on Gaccione in the wake of these arguments, the court plainly signaled its agreement with the government's position that a longer sentence was justified in this case. *See Hoey*, 508 F.3d at 694; *Pierre*, 484 F.3d at 90. The district court therefore implicitly considered "the need to avoid unwarranted sentence disparities." 18 U.S.C. § 3553(a)(6). While Gaccione obviously disagrees with the lower court's assessment, "a judge has no obligation to assign weight to certain factors or considerations as a defendant deems necessary." *Arsenault*, 833 F.3d at 32.

In the end, as exemplified by many of the sentences Gaccione discusses (*see* Def. Br. 62-68), a district court can draw from a myriad of options in fashioning a life sentence when the underlying offenses entail sentencing ranges that Congress has articulated in spans of years. Regardless of whether Gaccione believes his sentence of 180 years less substantively reasonable than one of 150 years (*Hamilton*, 548 F. App'x at 730-31), 120 years (*United States v. Demeyer*, 665 F.3d 1374, 1374-75 (8th Cir. 2012)), 100 years (*United States v. Sarras*, 575 F.3d 1191, 1220-

21 (11th Cir. 2009)), or 65 years (*Arsenault*, 833 F.3d at 34), he cannot establish it falls outside "the compass of a properly calculated [Guidelines sentencing range]." *Arsenault*, 833 F.3d at 34 (quoting *United States v. Hernandez-Maldonado*, 793 F.3d 223, 227 (1st Cir. 2015) (alterations in *Hernandez-Maldonado*)).

In this case, defendant's 180-year sentence was consonant with his 190-year GSR.  (PSR ¶ 150.)  "That a lesser sentence might also have been reasonable does not make this particular sentence unreasonable." *United States v. Garner*, 490 F.3d 739, 834 (9th Cir. 2007); *cf. Bour*, 804 F.3d at 886 (where record made it clear that district court intended defendant to remain in prison for remainder of his life, imposition of sentence amounting to more than life imprisonment was, at most, harmless error).

"'Reversals   in   substantive   reasonableness   challenges   are particularly unlikely'" when the sentence, like Gaccione's, falls within his GSR.  *Arsenault*, 833 F.3d at 34 (citation omitted).  Because Gaccione has "fail[ed] to adduce any mitigating reasons powerful enough to persuade" the Court that the district court "judge was unreasonable in his judgment call," *id.,* this Court should affirm the sentence the lower court imposed.

## CONCLUSION

For the reasons above, this Court should affirm defendant's conviction and sentence.

Respectfully submitted,

AARON L. WEISMAN
United States Attorney

/s/ Lauren S. Zurier
LAUREN S. ZURIER
Assistant U.S. Attorney

## CERTIFICATE OF COMPLIANCE

1.     This brief complies with the type-volume limitation in Fed. R. App. P. 32(a)(7)(B) because it contains 12,766 words excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

2.     This brief complies with the typeface rule in Fed. R. App. P. 32(a)(5) and the type style rule in Fed. R. App. P. 32(a)(6) because it uses a proportionally spaced, serif typeface (*i.e.*, Century Schoolbook) in 14-point font.

/s/ Lauren S. Zurier
LAUREN S. ZURIER
Assistant U.S. Attorney
Dated:  July 2, 2020

-64-

## **CERTIFICATE OF SERVICE**

I certify that on July 2, 2020, I electronically served a copy of the foregoing filing on the following registered participants of the CM/ECF system:

Lisa Aidlin, Esq.
P.O. Box 240
Sharon, MA 02067

/s/ Lauren S. Zurier