NO. 19-1680

_____

**IN THE UNITED STATES COURT OF APPEALS
FOR THE FIRST CIRCUIT**

UNITED STATES OF AMERICA,
Appellee

v.

JAY GACCIONE,
Defendant-Appellant

_____

**ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND**

_____

**REPLY BRIEF FOR THE APPELLANT**

_____

Respectfully submitted,


s/Lisa Aidlin
Lisa Aidlin
P.O. Box 240
Sharon, MA 02067
(781) 201-9115
Bar No. 88198

Attorney for Defendant-Appellant
JAY GACCIONE

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................ iii

ARGUMENT .......................................................................................1

I.     DESPITE THE GOVERNMENT'S ASSERTIONS TO THE CONTRARY, MR. GACCIONE'S GUILTY PLEA TO DISTRIBUTION OF CHILD PORNOGRAPHY LACKED A FACTUAL BASIS BECAUSE NO ACTUAL IMAGES AND NO FILE NAMES CONTAINING SEXUALLY EXPLICIT MATERIAL WERE EVER RECOVERED. ..........................................................................1

   A.     The Government Incorrectly Maintains That Although No Actual Pornographic Images or File Names Sent by Mr. Gaccione to Mr. Burne Exists, The Record Evidence Still Supports Mr. Gaccione's Distribution Conviction……………………………………………………………..2

   B.     The Government Wrongly Claimed That Actual Pornographic Images Are Not Required As a Matter of Law to Sustain Mr. Gaccione's Plea to Distribution of Child Pornography……………………………………3

   C.     Mr. Gaccione Did Not Plead Guilty to Distributing Images of His Own Daughter Because the District Court Amended the Indictment……………………………………………………………...8

   D.     The Government Erred When It Suggested Plain Error Was Not Satisfied…………………………………………………………10

   E.     Mr. Gaccione's Plea Was Not Knowing, Intelligent, or Voluntary…...12

II.    THE GOVERNMENT ERRONEOUSLY CLAIMED THAT THE DISTRICT COURT DID NOT CONSTRUCTIVELY AMEND THE INDICTMENT WHEN IT ALTERED THE LITERAL WORDS OF THE DISTRIBUTION OF CHILD PORNOGRAPHY CHARGE AND HAD MR. GACCIONE PLEAD TO A DIFFERENT SET OF FACTS AND A DIFFERENT THEORY OF THE CASE……………………………...13

A.    Contrary to the Government's Assertions, Altering the Literal Words of Mr. Gaccione's Indictment Constructively Amended It…………….....................................................................................14

B.    The Government Erred When It Contended That A Nonprejudicial Variance Occurred………………………………………………...17

C.    Mr. Gaccione Never Argued That the Identity of the Minor Was An Issue in This Appeal…………………………………………...19

D.    Contrary to the Government's Assertions, The Error Was Preserved and Constituted Prejudice…………………………………………20

E.    The Government Erred When It Claimed Mr. Gaccione Did Not Satisfy Plain Error Review………………………………………...24

III.    THE 180-YEAR SENTENCE WAS PROCEDURALLY UNSOUND, AND THE GOVERNMENT INCORRECTLY APPLIED PLAIN ERROR REVIEW TO THIS CLAIM……………………………..……………26

IV.    THE 180-YEAR SENTENCE WAS SUBSTANTIVELY UNREASONABLE DESPITE THE GOVERNMENT'S CONTENTIONS TO THE CONTRARY……………………………………………………..31

A.    The District Court's Rationale for Imposing 180 Years Was Flawed and Arbitrary…………………………………………………......30

B.    A Sentence of Death Was Not "Defensible"………………………32

C.    The 180-Year Sentence Failed to Avoid Unwarranted Sentencing Disparities…………………………………………………………...33

CONCLUSION………………………………………………………………36

CERTIFICATE OF COMPLIANCE……………………………………………37

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Gall v. United States,* 552 U.S. 38 (2007) ................................................................. 25

*Graham v. Florida,* 560 U.S. 48 (2010) ................................................................. 32

*Stirone v. United States,* 361 U.S. 217 (1960) ........................................................ 21, 24

*United States v. Behety,* 32 F.3d 508 (11th Cir. 1994) ............................................ 16

*United States v. Brandao*, 539 F.3d 44 (1st Cir. 2008) ......................................... 21, 24

*United States v. Breton,* 740 F.3d 1 (1st Cir. 2014), ................................................. 4

*United States v. Brown¸* 826 F.3d 51 (2d Cir. 2016) ................................................. 31

*United States v. Cheal,* 389 F.3d 35 (1st Cir. 2004) .................................................. 10

*United States v. D'Amelio*, 683 F.3d 423 (2d Cir. 2012) .......................................... 15

*United States v. Dorvee*, 616 F.3d 174 (2d Cir. 2010) ............................................. 30

*United States v. Dowdell,* 595 F.3d 50 (1st Cir. 2010) ............................................. 16

*United States v. Dupre,* 462 F.3d 140 (2d Cir. 2006) ............................................... 21

*United States v. Fabiano,* 169 F.3d 1299 (10th Cir. 1999) ....................................... 8

*United States v. Fisher,* 3 F.3d 456 (1st Cir. 1993) .................................................. 23

*United States v. Flores-Machicote,* 706 F.3d 16 (1st Cir. 2013) .............................. 25

*United States v. Hoey,* 508 F.3d 687 (1st Cir. 2007) ................................................ 33

*United States v. Iacaboni,* 363 F.3d 1 (1st Cir. 2004) .............................................. 21

iii

*United States v. Jenkins,* 854 F.3d 181 (2d Cir. 2017) .............................................31

*United States v. McIvery,* 806 F.3d 645 (1st Cir. 2015) ............................................14

*United States v. Mubayyid,* 658 F.3d 35 (1st Cir. 2011) ...........................................24

*United States v. Nance*, 767 F.3d 1037 (1st Cir. 2014), ..............................................7

*United States v. Penaloza*, 648 F.3d 539 (7th Cir. 2011) ..........................................16

*United States v. Philpot,* 773 F. App'x 583 (11th Cir. 2019) ...................................16

*United States v. Pierre,* 484 F.3d 75 (1st Cir. 2007) .................................................33

*United States v. Reasor*, 418 F.3d 466 (5th Cir. 2005)...............................................14

*United States v. Reyes-Santiago,* 804 F.3d 453 (1st Cir. 2015) ................................31

*United States v. Rodriguez-Rodriguez*, 663 F.3d 53 (1st Cir. 2011) .......................14

*United States v. Tello*, 687 F.3d 785 (7th Cir. 2012)...........................................22, 23

*United States v. Wilder,* 526 F.3d 1 (1st Cir. 2008)....................................................7

## FEDERAL RULES
Fed. R. Crim. P. 11(b)(3) ...............................................................................1, 2, 10

## FEDERAL STATUTES
18 U.S.C. § 2252(a)(2)...........................................................................3, 4, 17, 19
18 U.S.C. § 3553(a) .......................................................................3, 17, 19, 26, 27

## ARGUMENT

I. **DESPITE THE GOVERNMENT'S ASSERTIONS TO THE CONTRARY, MR. GACCIONE'S GUILTY PLEA TO DISTRIBUTION OF CHILD PORNOGRAPHY LACKED A FACTUAL BASIS BECAUSE NO ACTUAL IMAGES AND NO FILE NAMES CONTAINING SEXUALLY EXPLICIT MATERIAL WERE EVER RECOVERED.**

According to the prosecutor's theory of the case presented during Mr. Gaccione's plea colloquy, Count 7 of Mr. Gaccione's indictment charged him with distributing six .jpg images of his 14-year-old-daughter engaged in sexually explicit conduct to a South African named Mr. Burne on April 29, 2016, via Gmail and Sprint's messaging service. App. 40. In the government's Response Brief, it concedes that none of actual images or file names for the six .jpg images sent between Mr. Gaccione and Mr. Burne on April 29th were ever found.  *See* Gov't Response Brief 10, 39 [hereinafter "Resp. Br."] (confirming that forensic analysis "could not identify the specific images Gaccione had sent to Burne").

A. **The Government Incorrectly Maintains That Although No Actual Pornographic Images or File Names Sent by Mr. Gaccione to Mr. Burne Exists, The Record Evidence Still Supports Mr. Gaccione's Distribution Conviction.**

Even though none of the actual images or file names for the six .jpg files were ever recovered, the government erroneously claims that there was an adequate factual basis as required by Fed. R. Crim. P. 11(b)(3) to support Mr. Gaccione's guilty plea to Count 7 of the indictment for distribution of child pornography. Resp.

Brief 35-44. As argued in Mr. Gaccione's Opening Brief ("Open. Br."), the undisputed record in this case does not support the distribution conviction, and there is not a single case that has upheld a defendant's conviction for distribution of child pornography where no actual images or file names depicting sexually explicit conduct were recovered. *See* Open. Br. 25-38 (setting forth factual and legal arguments for the inadequate factual basis to Count 7).

The government concedes that although Mr. Gaccione texted Mr. Burne on April 29th that he was sending six .jpg images, investigators "could not identify the specific images Gaccione had sent to Burne" and "the file names of those images could not be located on Burne's cell phone." *See* Resp. Br. 10 (citing PSR ¶ 17). *Thus, investigators in this case never recovered any actual pornographic images or file names sent to Mr. Burne on April 29th to support Mr. Gaccione's guilty plea to Count 7. See* PSR ¶ 17. Notwithstanding this lack of evidence, the government inaccurately asserts that "the record in this case contains more than enough information to meet Rule 11(b)(3)'s evidentiary demands with respect to Count 7." Resp. Br. 38.

While investigators in this case did recover twelve images and one video of Mr. Gaccione's daughter that met the definition of child pornography, PSR ¶¶ 26, 29-30, none of these images corresponded to April 29, 2016, the date involved in Count 7 of the indictment. More importantly, Mr. Gaccione did not plead guilty to

distributing any images of his daughter; rather, he expressly denied doing so at his plea colloquy interjecting "I never sent any pictures of her." App. 43. After Mr. Gaccione admitted that he sent "pictures of, you know, other kids off the internet," the district court constructively amended the indictment (argued more fully below in Section II) and had Mr. Gaccione plead guilty to sending images involving "other kids off the internet." App. 43-47 (altering the distribution charge in Count 7 to reflect sending sexually explicit images of kids off the internet instead of images of Mr. Gaccione's daughter as originally set forth in the indictment).

As argued in Mr. Gaccione's Opening Brief, there is no evidence in the record to support Mr. Gaccione's guilty plea to Count 7 based on distributing sexually explicit images of other kids off the internet since these images were never recovered and it is impossible to ascertain whether they contained sexually explicit content or involved under-aged children as required to sustain a conviction under 18 U.S.C. § 2252(a)(2). *See* Open. Br. 29-34 (detailing insufficient factual basis for the amended distribution charge).

**B.    The Government Wrongly Claimed That Actual Pornographic Images Are Not Required As a Matter of Law to Sustain Mr. Gaccione's Plea to Distribution of Child Pornography.**

Despite the government's inability to provide support in the record for Mr. Gaccione's distribution conviction, the government further attempts to circumvent defeat on this claim by countering that "the distribution of child pornography in

3

violation of 18 U.S.C. § 2252(a)(2) does not require the government to produce the actual images distributed." Resp. Br. 37 (internal footnote defining § 2252(a) omitted). This unsubstantiated statement is patently false. While the government suggests that it can "*support* a distribution conviction with non-visual evidence such as file names, verbal descriptions of the images involved, and the defendant's stated sexual preferences," the government failed to provide any legal authority that it could *sustain* a distribution conviction without any actual pornographic images. Resp. Br. 37 (emphasis supplied). Simply put, the government failed to provide a single case where a defendant was convicted of child pornography charges without any actual pornographic images or recovered file names.

*Tellingly here, not a single case cited by government involved a child pornography conviction where no actual images were recovered by investigators.* Indeed, all the cases relied upon by government to support its position that actual pornographic images are not required to sustain a distribution conviction involved cases where the actual, sexually explicit images and file names had been recovered. *See* Resp. Br. 37-38 (citing cases).

For instance, the government tries to rely on *United States v. Breton,* 740 F.3d 1 (1st Cir. 2014), to suggest that actual, sexually explicit images are not required to sustain a distribution of pornography conviction. Resp. Br. 37-38. However, in *Breton,* the police did discover sexually explicit images involving children on the

4

defendant's laptop. *Id.,* 740 F.3d at 5-6. Unlike the inability to retrieve the file names in Mr. Gaccione's case, the government in the *Breton* trial introduced the file and chat room names found on the defendant's laptop to establish the requisite scienter by the defendant. *Id.* at 13-14. This Court upheld the introduction of file and chat room names as relevant evidence of the defendant's scienter on his pornography charges even though the images associated with this evidence were not uncovered, especially where other actual pornographic images involving children had been discovered on the defendant's computer and established the underlying crimes of possession and distribution of child pornography. *Id.* at 14. Moreover, this Court found that the admission of file and chat names without images attached were not unduly prejudicial because the actual images of child pornography had been introduced into evidence as well as testimony by the defendant's wife identifying her husband and her young daughter in the recovered images. *Id.* at 15. None of this kind of record evidence exists in Mr. Gaccione's case since there were no images, no file names, and no testimony corroborating that the images sent to Mr. Burne contained minor children engaged in sexually explicit acts. Notably, the officer who testified in *Breton* about the file and chat room names admitted they may not have contained child pornography. *Id.* The same logic applies to the six .jpg files sent to Mr. Burne, namely, they may not have contained child pornography, which is why courts require the actual images to review.

The government's reliance on *United States v. Dewitt*, 943 F.3d 1092, 1095 (7th Cir. 2019), is similarly misguided since the police in that case recovered actual child pornographic images, which were introduced at trial to support the conviction. *Id.* Specifically, in *Dewitt* the defendant held an online conversation with an undercover police officer, admitted to sexually abusing his four-year-old daughter, and sent one video and still image of fully nude girls, which formed the basis of the distribution charge. *Id.* Upon the defendant's arrest, the police also uncovered a photo of the defendant engaged in a sexually explicit act with his four-year-old daughter. *Id.* The defendant in *Dewitt* complained that the evidence was insufficient to support his conviction of child pornography offenses where the jury never heard expert testimony about the age of the children depicted in the images. *Id.* at 1094-96 (noting that in child pornography cases involving an unidentified minor expert testimony is not always required to establish the status as a minor but sometimes it is necessary). Apparently, the government in Mr. Gaccione's case overlooked the fact that in *Dewitt* "the district judge himself examined each image" recovered by the police to determine if they depicted minor children. *Id.* at 1097 (commenting that status of girls as minors was revealed in their appearances in the photograph and the video showed a girl with an "immature demeanor" and "child-like voice"). In Mr. Gaccione's case, there are no actual images to review to determine if they depict minor children engaged in sexually explicit acts.

6

Equally unavailing to the government as support for its contention that a distribution charge can be proven without any recovered images is the case of *United States v. Nance*, 767 F.3d 1037, 1039 (1st Cir. 2014). Resp. Br. 38. In *Nance* "the FBI was able to recover 1,000 previously-deleted images of child pornography" from the defendant's laptop and to "recover the names of a number of deleted files" to support the defendant's child pornography convictions. *Id.* at 1039. The defendant in *Nance* raised an unsuccessful defense at trial that he did not know his computer contained child pornography and tried to claim that hackers or a computer virus had placed the images on his computer. *Id.* Unlike Mr. Gaccione's case, in which investigators never recovered the six .jpg images sent to Mr. Burne on April 29th, police in *Nance* recovered over 1,000 images and the file names.

The case of *United States v. Wilder,* 526 F.3d 1, 9 (1st Cir. 2008), cited by the government in its Response Brief also fails to provide support for the government's untenable position that actual images are not required to sustain a distribution charge. Resp. Br. 38.  In stark contrast to Mr. Gaccione's case where no actual images or file names were uncovered, in *Wilder* "investigators had found fourteen computer disks containing child pornography" on the defendant's computer, including "14,000 images" and "a number of child pornography video files." *Id.,* 526 F.3d at 3-4.

Finally, the government mistakenly relies upon *United States v. Fabiano*, 169 F.3d 1299, 1304-05, 1306 (10th Cir. 1999), to suggest an adequate factual basis for Mr. Gaccione's distribution conviction existed despite any actual pornographic images. Resp. Br. 38. In *Fabiano,* the Tenth Circuit ruled that evidence that the defendant had received two emails containing children engaged in sexually explicit acts, which images were recovered on the defendant's computer, as well as "graphically descriptive names of files," constituted sufficient evidence to sustain the defendant's convictions for knowingly receiving child pornography. *Id.* at 1302, 1306.

### C. Mr. Gaccione Did Not Plead Guilty to Distributing Images of His Own Daughter Because the District Court Amended the Indictment.

Notwithstanding the complete lack of evidence and legal authority to support Mr. Gaccione's guilty plea to Count 7 for distributing images of other kids off the internet, the government incorrectly claims an adequate factual basis existed. Resp. Br. 40-41. The government appears to rest this claim on the misguided assumption that if the record "reasonably established that the minor child in question was Gaccione's teenage daughter," then this evidence somehow adequately supported a guilty plea to the amended Count 7 for distributing images of other kids off the internet. Resp. Br. 40. Mr. Gaccione, however, did not plead guilty to distributing images of his daughter so the government's arguments surrounding the record

8

evidence of images depicting Mr. Gaccione's own daughter are irrelevant. Indeed, the district court amended the indictment during the plea colloquy after Mr. Gaccione denied sending any images of his daughter and had Mr. Gaccione plead guilty to distributing images of other kids off the internet, not images of his daughter. App. 43-45.

Furthermore, in connection with this untenable argument, the government erroneously maintains that "Gaccione admitted to investigators that he had sent photographs of MV#1 (his daughter) to Burne." Resp. Br. 10, 39 (citing PSR ¶ 34; App. 43-44). Mr. Gaccione never made this admission, and the record cites provided by the government do not establish this contention. *See* PSR ¶ 34 (revealing that Mr. Gaccione "admitted that he sent pictures of Minor Victim #1 (his daughter) but never stating to whom these images were sent); *see also* App. 44 (prosecutor informed the district court during the plea colloquy that Mr. Gaccione had admitted "that he began taking pictures of daughter to share with members of the bulletin board…and he said he sent them to another individual"). While Mr. Gaccione admitted he sent pictures of his daughter to someone on the internet, App. 62, Mr. Gaccione never explicitly stated that he had sent any pornographic images to a "Mr. Burne," and he never revealed when or which images had been sent. *See* PSR ¶¶ 20-21, 23 (admitting he communicated with an on line person and was unable to recall which image of his daughter he may have sent). The prosecutor simply inferred that "the guy"

referenced in one of Mr. Gaccione's interview referred to Mr. Burne. *Id.* at ¶ 23.
Even if Mr. Gaccione had made this admission -- which he did not -- the admission
was irrelevant to support his conviction for distributing sexually explicit images of
other kids off the internet since Mr. Gaccione did not plead guilty to distributing
images of his own daughter.

## D. The Government Erred When It Suggested Plain Error Was Not Satisfied.

Contrary to the government's assertions in its Response Brief at pages 43-44,
the district court committed plain error when it permitted Mr. Gaccione to plead
guilty to Count 7 because there was an insufficient factual basis under Rule 11(b)(3)
to support the revised underpinnings for the plea. *See* Open. Br. 32-35 (setting forth
arguments that the guilty plea lacked a factual basis under plain error review). The
government's reliance on *United States v. Cheal,* 389 F.3d 35, 42-43 (1st Cir. 2004),
is misguided. Resp. Br. 41-42. That case involved a situation where a defendant's
guilty plea had a sufficient factual basis despite the defendant's denial of certain
facts because the government had made extensive proffers of evidence, including
faxes and telephone calls to support the charge. *Cheal,* 389 F.3d at 42-43. Unlike
the facts in *Cheal*, after Mr. Gaccione denied sending any images of his daughter to
Mr. Burne, the district court amended the indictment so Mr. Gaccione could plead
to distributing images of other kids off the internet; however, the government lacked
any evidence to support this new theory of the case.

The government's last ditch attempt was to suggest that Mr. Gaccione could not "surmount the hurdle of plain error" because "the government's evidence supporting Count 7 was both graphic and overwhelming." Resp. Br. 44. This contention was false. No evidence exists to support the distribution of images involving other kids off the internet because no actual pornographic images were uncovered. The government also erroneously claimed that "[n]othing in the record establishes" that Mr. Gaccione "would have opted for a trial solely on the distribution charge." Resp. Br. 44. Mr. Gaccione stated he wished to vitiate his guilty plea and provided significant case law finding plain error satisfied due to an insufficient factual basis. *See* Open. Br. 32-35. He certainly did not wish to plead guilty to a crime he did not commit.

In short, plain error was readily satisfied because the government had absolutely no evidence to support the distribution conviction as amended by the district court. Mr. Gaccione suffered prejudice from the court's error because he pled guilty to a crime he did not commit, and the district court imposed a death sentence by tripling the prosecutor's sentencing recommendation of 60 years based in part on the distribution conviction.

### E.  Mr. Gaccione's Plea Was Not Knowing, Intelligent, or Voluntary.

Mr. Gaccione argued in this Opening Brief that the deficiencies in the factual basis for his guilty plea to distribution rendered his guilty plea invalid. *See* Open.

11

Br. 35-38 (setting forth cases). Nevertheless, the government contended that "the record belies any generalized claim that defendant's plea to Count 7 was not knowing, intelligent, or voluntary." Resp. Br. 44-45. The record, however, is crystal clear that Mr. Gaccione did not understand that he was supposed to plead guilty to distributing images of his daughter since he denied doing so during his plea colloquy. App. 43 (exclaiming "I never sent any picture of her [his daughter]"). The record also plainly demonstrates that there is no factual basis for Mr. Gaccione's guilty plea to Count 7 so Mr. Gaccione could not have provided a valid plea under the circumstances present in this case. The government made no attempt to distinguish the cases presented by Mr. Gaccione, like *United States v. Szymanski*, 631 F.3d 794, 800-02 (6th Cir. 2011), which vacated the defendant's guilty plea to receipt of child pornography and found his substantial rights violated where the district court failed to inform the defendant of the nature of his charge, namely that he knew the images involved minors engaging in sexually explicit conduct. *Id.*; s*ee also* Open. Br. 35-38 (providing cases and arguments that plea was invalid).

Accordingly, the government's failure to provide any actual pornographic images sent to Mr. Burne on April 29th simply cannot support Mr. Gaccione's guilty plea to Count 7 and further rendered his plea invalid. The government failed to defeat these arguments.

## II.    THE GOVERNMENT ERRONEOUSLY CLAIMED THAT THE DISTRICT COURT DID NOT CONSTRUCTIVELY AMEND THE INDICTMENT WHEN IT ALTERED THE LITERAL WORDS OF THE DISTRIBUTION OF CHILD PORNOGRAPHY CHARGE AND HAD MR. GACCIONE PLEAD TO A DIFFERENT SET OF FACTS AND A DIFFERENT THEORY OF THE CASE.

A central claim raised by Mr. Gaccione in his Opening Brief is that the district court constructively amended his indictment when it altered the precise wording of the distribution charge and impermissibly allowed Mr. Gaccione to plead to a different set of facts and a different theory of the case in order to support the offense. *See* Open. Br. 19-24. Mr. Gaccione argued that after he explicitly denied distributing any images of his daughter during his plea colloquy, the court erroneously permitted Mr. Gaccione to plead guilty to distributing images of other known children off the internet to support the distribution charge even though the indictment charged him with only distributing images of his own daughter.  In response to this argument, the government incorrectly contended that the district court's alteration of the wording of the indictment and the change in supporting facts for this guilty plea merely constituted a "nonprejudicial variance." Resp. Br. 27.

As an initial matter, the government ignored Mr. Gaccione's case law, which explained that a constructive amendment constituting reversible error "occurs when it permits the defendant to be convicted upon a factual basis that effectively modifies an essential element of the offense charged or permits the government to convict the defendant on a materially different theory or set of facts than that with which she

13

was charged." *United States v. Reasor*, 418 F.3d 466, 475 (5th Cir. 2005); Open. Br. 19. The government also never addressed Mr. Gaccione's arguments that a constructive amendment occurs when a court permits a defendant to be convicted upon a different theory or set of facts than set forth in the indictment, even though this Court has acknowledged that a constructive amendment occurs when an "impermissible change in the theory of the case" transpires. *United States v. McIvery,* 806 F.3d 645, 652 (1st Cir. 2015) (citing cases).

### A. Contrary to the Government's Assertions, Altering the Literal Words of Mr. Gaccione's Indictment Constructively Amended It.

In this case, the charging terms of the indictment changed from distributing images of the victim (Mr. Gaccione's daughter) to distributing images of unknown children from off the internet. This alteration of the precise words of the indictment constituted a constructive amendment, not a "nonprejudicial variance" as contended by the government in its Response Brief at pages 27-30, because both the literal words of the indictment were altered as well as the theory of the government's case and the facts needed to support the guilty plea.[1]

The government ignored Mr. Gaccione's arguments and case law to support the fact that the court's alteration in this case constituted a constructive amendment

---

[1] Similar to a constructive amendment, "[a] variance occurs 'when the charging terms remain unchanged but when the facts proved at trial are different from those alleged in the indictment.'" *United States v. Rodriguez-Rodriguez*, 663 F.3d 53, 58 (1st Cir. 2011) (citations omitted).

because the government narrowly tailored the distribution charge in Mr. Gaccione's indictment to involve distribution of Mr. Gaccione's daughter's images instead of using broader terms such as distributing *any* material containing child pornography. Open. Br. 21.

The government also erroneously relies upon *United States v. D'Amelio*, 683 F.3d 412, 423 (2d Cir. 2012), to suggest that changing the "to wit" clause of Mr. Gaccione's indictment did not alter the "essence of Count 7's distribution charge." Resp. Br. 30. *D'Amelio* is distinguishable because in that case the Second Circuit explained that "the *specific means* used by a defendant to effect his or her crime does not constitute an 'essential element' of the offense and, therefore, proof of specific means apart from those charged in the indictment does not constructively amend the indictment." *Id.* at 422 (emphasis in original). This appeal did not involve a specific means used by Mr. Gaccione such as a fraudulent scheme; rather, the visual depictions sent to Mr. Burne were a key element of the offense.

Furthermore, the government mistakenly claimed that altering the "to wit" clause of Count 7 did not violate the prohibitions against constructive amendments. Resp. Br. 30-31. Not so. By changing and expanding the indictment to permit distribution of images other unknown children, the court violated Mr. Gaccione's rights against double jeopardy, exposed him to a subsequent distribution charge, and violated his right to presentment of his charges to a grand jury. The government

failed to overcome Mr. Gaccione's argument that "[a] constructive amendment to [Mr. Gaccione's] indictment, and thus a violation of the Fifth Amendment, occur[ed]…because]…the government…[and]…the court…broaden[ed] the possible bases for conviction beyond those presented by the grand jury." *United States v. Penaloza*, 648 F.3d 539, 546 (7th Cir. 2011) (citation omitted). *See also United States v. Philpot,* 773 F. App'x 583, (11th Cir. 2019) (unpublished) (quoting *United States v. Behety,* 32 F.3d 503, 508 (11th Cir. 1994) ("A constructive amendment occurs when the essential elements of the offense contained in the indictment are altered to broaden the possible bases for conviction beyond what is contained in the indictment") (internal quotation marks and citation omitted).

### B.    The Government Erred When It Contended That A Nonprejudicial Variance Occurred.

Compounding the literal alteration of the indictment's wording was the fact that the court and the government changed the facts and theory of the case to support Mr. Gaccione's guilty plea.  The government in its Response Brief fails to successfully counter this argument.  *See* Resp. Br. 26-34. Rather, the government incorrectly claims that there was "a nonprejudicial variance" -- not a constructive amendment -- between Count 7 of Mr. Gaccione's indictment and the facts stated during the plea colloquy in support of the guilty plea.  Resp. Br. 27.

Relying in part on *United States v. Dowdell,* 595 F.3d 50, 67-68 (1st Cir. 2010), the government incorrectly contends that switching the distribution charge to pertain

to images of "other kids off the internet" instead of Mr. Gaccione's own daughter involved only "facts that are ancillary to the charged offense." Resp. Br. 27. Not so. In *Dowdell*, this Court determined that the trial court's modification of the defendant's indictment to reflect distribution of "cocaine base" rather than "cocaine" did not constitute a constructive amendment violating the "substance of the charges" because "cocaine base was merely an isomer of cocaine." *Id.,* 595 F.3d at 66-69. In stark contrast here, images of Mr. Gaccione's daughter were not interchangeable with images of "other kids off the internet" because in order to constitute a violation under 18 U.S.C. § 2252(a) for distribution of child pornography, the visual images had to contain sexually explicit material and had to involve a real, underage child. *See* 18 U.S.C. § 2252(a)(2) (requiring the government to prove that Mr. Gaccione knowingly distributed a visual depiction of an actual minor engaging in sexually explicit conduct). The government failed to comprehend that the distribution offense involved two critical elements: 1) the visual depiction must contain an actual, real child who is under the age of 18-years-old, and 2) the visual depiction must contain sexually explicit material, i.e., pornographic content as opposed to erotica. *Id.*

Since the visual images in this case were never recovered, it is impossible to know, as a matter of proof, whether the images allegedly sent to Mr. Burne actually contained sexually explicit material of real (as opposed to simulated) children. Mr. Gaccione's case is further distinguishable from *Dowdell* because Mr. Gaccione

17

argues that the constructive amendment also constitutes double jeopardy -- an argument not raised in *Dowdell.*

The government further contends that this appeal involves a nonprejudicial variance because Mr. Gaccione's case resembles cases "where the type of drug or firearm is not an element of the offense that the grand jury charged…[and] the government's evidence establishes that the defendant distributed a drug or possessed a firearm different from the type identified in the indictment." Resp. Br. 27-28. This argument also fails. First, with the exception of *Dowdell,* none of the cases relied upon by the government involved the court altering the literal words of the indictment as it did in this case; instead, they involved changes in proof during a trial. *See* Resp. Br. at 27-28 (discussing cases). Second, a critical element of the distribution of child pornography is that the images themselves constitute child pornography involving actual minors. Therefore, the actual images are relevant to the charge because Mr. Gaccione could not be found guilty for distributing erotica, or images that did not contain an actual minor child.

Simply put, the images of Mr. Gaccione's daughter and the images of other children off the internet are not related and are not ancillary to the distribution charge because if the images do not constitute child pornography, Mr. Gaccione would not be guilty of the distribution charge. In other words, the images distributed in Count 7 are not irrelevant as the government tries to portray them. Contrary to the

18

government's contention on pages 28-29 of its Response Brief, changing the sexually explicit images from Mr. Gaccione's daughter to other unknown children off the internet most definitely changed the substance of the charge.

### C.    Mr. Gaccione Never Argued That the Identity of the Minor Was An Issue In This Appeal.

In addition, the government misses the mark when it suggests that the "exact identity of the minor is not an element of the crime charged." Resp. Br. 29. Mr. Gaccione never argued that the government needed to prove the *identity* of the minor child depicted in the images in order to establish a violation under 18 U.S.C. § 2252(a). Identity of the minor is irrelevant. The pivotal issue pertaining to the visual images is that they contain an actual child involved in a pornographic act. Consequently, there was an evidentiary danger to switching the images from Mr. Gaccione's daughter, who the government could prove was an actual, 14-year-old child to images of unknown kids off the internet. There was no proof that these images involving other children actually portrayed real, underage children engaged in sexually explicit activities since the images themselves were never recovered.

### D.    Contrary to the Government's Assertions, The Error Was Preserved and Constituted Prejudice.

The constructive amendment claim was preserved and not subject to plain error review as the government suggests. *See* Resp. Br. 25. The constructive amendment issue was preserved because the district court, the prosecutor, and

defense counsel had a discussion on the record at length concerning altering Mr. Gaccione's guilty plea to distribution of child pornography to cover six images of other children off the internet instead of any images of his own daughter as indicted in Count 7.  See App. 44-46 (flagging on the record the change in proof for the visual images).  This issue was further preserved because the district court discussed the constructive amendment on the record stating: "I don't think, Ms. Barton that that change in facts would affect the elements of Count VII…"  App. 43. The prosecutor during Mr. Gaccione's plea colloquy informed the district court that "I think it does matter" when the court altered the literal wording of the indictment and permitted Mr. Gaccione to plead to distributing six images of other children off the internet instead of his daughter.  App. 43; Open. Br. 21. The district court accepted the constructive amendment, took Mr. Gaccione's plea, and postponed the issue of whether the visual images were an element of the charge until sentencing but never did so.  App. 46.

The prosecutor at the plea colloquy clearly was concerned that the facts necessary to support the guilty plea under this new theory "matter[ed]" and impacted Count 7.  App. 43-45.  The prosecutor raised concerns to the court about altering Mr. Gaccione's guilty plea to Count 7 because Mr. Gaccione had never admitted he sent images off the internet to Mr. Burne, and in this case, no images were recovered. App. 44.  Instead, the government informed the court that it charged Mr. Gaccione

with sending six images of his daughter to Mr. Burne on April 29th based on communications between Mr. Burne and Mr. Gaccione.   *Id.* The government acknowledged there were other images that Mr. Gaccione had admitted he had sent to other members of the community and the government maintained "I believe those are the images that he's referring to." *Id.*  Mr. Gaccione was left exposed to another distribution charge for sending images of children off the internet to other community individuals or to Mr. Burne.

Moreover, despite the government's protests to the contrary in its Response Brief at page 25, this preserved error constitutes prejudice and mandates a reversal under *Stirone v. United States,* 361 U.S. 212, 217 (1960).  The government failed to distinguish the holding in *Stirone*, which found reversible error because a constructive amendment occurred where the indictment alleged that the defendant had used sand shipments to interfere with interstate commerce but at trial the government offered evidence that the interference also occurred with steel shipments.  *Id.* at 217 (holding impermissible broadening of the indictment); s*ee also United States v. Iacaboni,* 363 F.3d 1, 7(1st Cir. 2004) (finding "alteration is a per se prejudicial constructive amendment") (internal quotation marks and citation omitted); *United States v. Brandao*, 539 F.3d 44, 59-60 (1st Cir. 2008) (discussing prejudice standard); *United States v. Dupre,* 462 F.3d 131, 140 (2d Cir. 2006)

(explaining that "[a] constructive amendment of an indictment constitutes a *per se* violation of the Grand Jury Clause of the Fifth Amendment") (citation omitted).

The government also fails to explain why Mr. Gaccione would not suffer double jeopardy concerns from the constructive amendment, especially where Mr. Gaccione's guilty plea differed from the indictment and his plea agreement. Indeed, in its Response Brief the government went to great lengths to suggest that the record evidence supported the distribution of images involving Mr. Gaccione's daughter, which could have been the subject of another distribution charge. The government unsuccessfully claims that "in light of the rich factual detail the government presented in support of Count 7 as originally charged, Gaccione could not be prosecuted again for distributing either" images of his own daughter or images of other kids off the internet. Resp. Br. 30-31. The government merely cites to *D'Amelio* without any explanation to support this contention, but that case is unrelated to this one and did not involve a distribution charge. Instead, that court found that the indictment coupled with the charge to the jury ensured any risk of double jeopardy. *Id.,* 683 F.3d at 423. The government's reliance upon *United States v. Tello*, 687 F.3d 785, 796 (7th Cir. 2012), to suggest that Mr. Gaccione faced no jeopardy concerns also misses the mark because that case involved a guilty plea to a racketeering conspiracy charge and the defendant pled guilty to the same conspiracy alleged in the indictment and plea agreement. *Id.*

Finally, the government inaccurately contends that Mr. Gaccione was not "uninformed of the charge in Count 7 once he sought to amend it." Resp. Br. 31. It is clear from the record that Mr. Gaccione never knew his distribution charge centered on the government's theory that he distributed images of his daughter to Mr. Burne because during his plea colloquy he interjected that he had never sent Mr. Burne any photos of his daughter. App. 43. When the court constructively amended the indictment to involve images of other unknown "kids off the internet," Mr. Gaccione suffered prejudice because he was unprepared to challenge this new theory of the case and lacked adequate notice. *See United States v. Fisher,* 3 F.3d 456, 463 (1st Cir. 1993) (explaining that the prohibition against constructive amendments exists because it denies a defendant reasonable notice to prepare a defense) (citation omitted).

### E.     The Government Erred When It Claimed Mr. Gaccione Did Not Satisfy Plain Error Review.

Contrary to the government's assertions on page 25 of its Response Brief, the constructive amendment constituted error even under plain error review. Even without assuming prejudice in this case, Mr. Gaccione readily overcomes the prejudice requirement under plain error review. It is undisputed that Mr. Gaccione faced the possibility of being prosecuted again for a subsequent distribution of child pornography charge for distributing pornographic images of his daughter. Here, Mr. Gaccione faced a very real "risk of double jeopardy, which is one of the primary

evils of constructive amendment (because the alteration of the charged offense leaves the defendant exposed to a second prosecution for the crime as set forth in the indictment)." *United States v. Tello*, 687 F.3d 785, 796 (7th Cir. 2012) (citation omitted); *see also Brandao,* 539 F.3d at 57 (listing dangers of a constructive amendment).

Moreover, because the government's facts and theory of the case changed at the last minute during the plea colloquy, Mr. Gaccione was taken by surprise, suffered unfairness, and was unprepared to mount an effective defense to the constructive amendment of Count 7. Mr. Gaccione takes issue with the government's claims that his indictment alleged the "essential conduct" to which he pled guilty and differed from the facts present in *Stirone*. Resp. Br. 32. As in *Stirone,* Mr. Gaccione's indictment rested upon a set of facts distinctly different from those set forth in the indictment and the constructive amendment impermissibly broadened the indictment. *See* Opening Br. 22-23 (discussing *Stirone*). Indeed, the government ultimately conceded that "part of the evidence against him (*supra* 26 n.11) was not contained in Count 7." Resp. Br. 33-34.

Taken all together, the double jeopardy violation, unfair surprise, and inadequate notice to prepare an adequate defense resulted in extreme prejudice to Mr. Gaccione and a clear violation of his substantial rights. *See United States v. Mubayyid,* 658 F.3d 35, 54 (1st Cir. 2011) (explaining that a defendant's substantial

24

rights are violated if the defendant lacks sufficient notice to prepare an effective defense or is vulnerable to a second prosecution for the same offense).

### III.    MR. GACCIONE'S 180-YEAR SENTENCE WAS PROCEDURALLY UNSOUND, AND THE GOVERNMENT INCORRECTLY APPLIED PLAIN ERROR REVIEW TO THIS CLAIM.

The government erred when it analyzed Mr. Gaccione's procedural reasonableness claims under the plain error standard, Resp. Br. 49, because defense counsel's sentencing memorandum clearly preserved Mr. Gaccione's claims of procedural unreasonableness.  *See* Gov't Supplemental App's 1-7 (attacking cruelty of a life sentence, unnecessary enhancements, improper stacking of sentences; arguing sentencing guidelines lacked credibility; and declaring a severe sentence not to be compliant with § 3553).  Review of whether Mr. Gaccione's 180-year sentence was procedurally reasonable was subject to an abuse of discretion standard. *See United States v. Flores-Machicote,* 706 F.3d 16, 19 (1st Cir. 2013) ("We review criminal sentences imposed under the advisory guidelines regime for abuse of discretion") (citing *Gall v. United States,* 552 U.S. 38, 51 (2007) (citation omitted).  Moreover, despite the government's arguments to the contrary, Mr. Gaccione's 180-year sentence was procedurally unsound even under plain error review.  Resp. Br. 49-57.

Contrary to the government's assertions, this Court simply cannot infer the district court's rationale for rejecting the prosecutor's 60-year sentence and imposing

a 180-year sentence. *See* Resp. Br. 52-53. The government incorrectly maintains that "the district court explicitly noted that the balance of sentencing considerations weighed heavily in favor of severe punishment." Resp. Br. 52. The district court never used this language when it sentenced Mr. Gaccione. The district court merely said "you need to be severely punished because of the severity of this heinous crime" and never weighed any sentencing factors as required by § 3553(a). App. 90.

The government also erroneously contends that the district court "explicitly considered Gaccione's background in mitigation of a severe sentence." Resp. Br. 52. The court did no such thing; instead, the court expressed its repugnance with the offenses and stated "[t]he only question becomes whether the Court imposes a sentence that at some point might allow you to be released from prison. And if one merely looked at the seriousness of the crime, the answer is easy…you'd never get out of prison." App. 91. The government failed to counter Mr. Gaccione's arguments that imposing more than a life sentence was not justified exclusively on the severity of the offense absent significant weighing of sentencing factors set forth in Section 3553(a), which the district court failed to perform. *See* Open. Br. 40-46.

Moreover, unlike the government's assertions in its Response Brief at 52-53, the district court's reasoning for imposing a sentence 120 years longer than the one recommended by the prosecutor cannot be inferred from the parties' sentencing memoranda and oral presentations, especially when the prosecutor argued for 60-

years of incarceration and the defendant vigorously objected to a life sentence in his sentencing memorandum. The government mistakenly suggests that just because Mr. Gaccione "disagrees with the amount of weight the court assigned to the various Section 3553(a) factors does not mean the court was wrong." Resp. Br. 53. Mr. Gaccione maintains that the district court failed to properly assign *any* weight to the Section 3553(a) factors and this failure by the court was wrong.

Simply put, the district court did not provide a proper rationale for its 180-year sentence except for its obvious distaste with the nature of the offenses and to provide Mr. Gaccione's daughter with the "safety and security that she deserves." App. 92-93. The government made no attempt to explain how the district court could explicitly reject any "element of mercy" and impose its extreme sentence "singularly because the victim deserves that security." App. 92-93. Protecting Mr. Gaccione's daughter for a 180 years most certainly did not justify the court's sentence or satisfy the requirements of 18 U.S.C. § 3553(a) that the sentence be sufficient but not greater than necessary to promote the purpose of sentencing. *See § 3553(a).* As argued by defense counsel, Mr. Gaccione's extreme sentence violated the purposes of sentencing and placed "retribution and revenge ahead of proper the sentencing factors." *See* Gov't Supp. App'x 2.

In addition, the government maintains that Mr. Gaccione's daughter would suffer additional psychological damage" if Mr. Gaccione were released. Resp. Br.

53 n. 18. While this may be true, it certainly does not justify incarcerating Mr. Gaccione until his death. Otherwise, a death sentence would be necessary in every case of child pornography. The government's argument misses the mark because the court's sole justification for imposing a 180-year sentence was protecting the daughter. The government ignored Mr. Gaccione's arguments that his daughter would not need protection from her father if he were released after 25 years. *See* Open. Br. 44.

Moreover, the government incorrectly stated that "[n]either party objected" to the guidelines calculation of 2,280 months (190 years). Resp. Br. 54. The record belies this contention. Defense counsel lodged extensive objections in his sentencing memorandum that a sentence of "190 years in prison" "is not appropriate...because it represents base retribution instead of proper punishment." Gov't Supp. App'x 1-2. Counsel also argued that the 190 year sentence was a "death sentence" that was "inhumane," "cruel," and exceeded the "purposes" of Section 3553(a). Gov't Supp. App'x 2.

The government also wrongly contended that "[n]either party objected" to the 190-year sentence despite the guidelines range of life imprisonment. Resp. Br. 54. Again, in his sentencing memorandum defense counsel argued the "sentencing guidelines lack credibility," and imposed "unnecessary enhancements." Gov't Supp. App'x 3. Counsel also argued that a 25-year sentence "may very well be a life

sentence," and "[t]here was no reasonable argument, however, to support a sentence eight times longer as being compliant with Section 3553(a)." Gov't Supp. App'x 5-6.

The government never addressed Mr. Gaccione's argument that the district court erred when it stacked consecutive sentences and failed to comply with U.S.S.G. § 5G1.2(d) and impose concurrent sentences. *See* Open. Br. 48. The government failed to demonstrate that the district court properly considered the Section 3553(a) factors, adequately explained its rationale for imposing the 180-year sentence, failed to cap Mr. Gaccione's sentence to one life sentence, and imposed a death sentence of more than two-lifetime sentences for offenses where the victim was not killed.

Ultimately, the government failed to defeat Mr. Gaccione's claims that the cumulative sentencing errors in this case rendered his 180-sentence procedurally unsound and require the sentence to be vacated.

## IV.    THE 180-YEAR SENTENCE WAS SUBSTANTIVELY UNREASONABLE DESPITE THE GOVERNMENT'S CONTENTIONS TO THE CONTRARY.

Mr. Gaccione further argued in his Opening Brief that in addition to being procedurally unreasonable, Mr. Gaccione's s 180-year sentence was substantively unreasonable. *See* Open. Br. 50-69 (setting forth arguments and case law). While the government concedes this claim is subject to an abuse of discretion, Resp. Br.

57, the government incorrectly claims that Mr. "Gaccione's sentence reflects both an appropriate rationale and a justifiable result."  Resp. Br. 58.

### A.    The District Court's Rationale for Imposing 180 Years Was Flawed and Arbitrary.

As argued in Section III above, the district court did not provide a proper rationale for its 180-year sentence except for its obvious distaste with the nature of the offenses and to provide Mr. Gaccione's daughter with the "safety and security that she deserves." App. 92-93 (rejecting any "element of mercy" "singularly because the victim deserves that security").  The district court committed a clear error in judgment because it placed undue weight on protecting Mr. Gaccione's daughter as the sole reason for rejecting mercy in this case and imposing its 180-year sentence despite the prosecutor's recommendation of 60 years.

In its attempt to defeat Mr. Gaccione's claim that his 180-year sentence was arbitrarily chosen, the government claimed that the district court considered "deterrence and the need to protect the public" to justify its 180-year sentence.  Resp. Br. 58.  Deterrence certainly was not a consideration by the court because even the government concedes that the district court never mentioned Mr. Gaccione's "likelihood of re-offending."  Resp. Br. 58. While the need to protect the public is an appropriate sentencing factor, the district court explicitly stated that its extreme sentence was to protect Mr. Gaccione's daughter, not the public at large. App. 91-92.  As demonstrated above and in Mr. Gaccione's Opening Brief, the record in this

case belies the government's position that "the district court considered the Section 3553(a) factors and explained why the lengthy sentence it imposed was appropriate." Resp. Br. 58.

Indeed, the government made no attempt to distinguish the holding in *United States v. Dorvee*, 616 F.3d 174, 183-84 (2d Cir. 2010), which found the defendant's sentence to be substantive unreasonable where the district court failed to provide a rationale for its extreme sentence. *Id.* The government also failed to counter Mr. Gaccione's reliance upon *United States v. Jenkins,* 854 F.3d 181, 183, 196 (2d Cir. 2017), which found the defendant's 225-month sentence to be substantively unreasonable because the district court's reliance upon retribution, deterrence, and incapacitation "cannot bear the weight of the sentence the district court imposed." *Id.* at 188-89.

Equally ignored by the government is any discussion of the case of *United States v. Brown¸* 826 F.3d 51, 61 (2d Cir. 2016), which explained that a de facto life sentence is problematic where "[o]nly 1.1 percent of perpetrators of all forms of crime against children are between 70 and 75 years old and 1.3 percent between 60 and 69." (citations omitted).  The government also failed to counter the argument that Mr. Gaccione was unlikely to reoffend in his old age.

Finally, the government never mentioned Mr. Gaccione's reliance upon this Court's holding in *United States v. Reyes-Santiago,* 804 F.3d 453, 472-74 (1st Cir.

2015), which ruled that the defendant's 360-month sentence was substantively unreasonable because "no rationale articulated by the court, and supported by the record, [] justifie[d] the uniquely harsh approach...taken by the district court in sentencing [the defendant]." *Id.* Similarly here, imposing a death sentence of 180-years without explaining on the record how the court chose this extreme sentence was substantively unreasonable, especially where the court's sole reasoning of protecting the victim was unjustified because the court never suggested that the victim or the public faced any future danger of harm by Mr. Gaccione.

### B.    A Sentence of Death Was Not "Defensible."

The government erred when it suggested that Mr. Gaccione's sentence of death while admittedly "harsh" was "defensible." Resp. Br. 60.  Rather than address the arguments raised by Mr. Gaccione that his death sentence failed to fulfill the purposes of sentencing and exceeded the punishment reserved for homicides, the government merely provided cases upholding severe sentences.  *See* Resp. Br. 60-61; Open. Br. 55-58 (setting forth arguments against a death sentence).

The government, however, failed to respond to arguments raised by Mr. Gaccione as to why he received a sentence harsher than a murderer would receive, especially where the district court's only stated reason for imposing such a harsh sentence was to provide comfort and security to the victim.  Equally missing is any attempt by the government to distinguish the Supreme Court's holding in *Graham*

*v. Florida,* 560 U.S. 48, 69 (2010), which recognized that "defendants who do not kill, intend to kill, or foresee that life will be taken are categorically less deserving of the most serious forms of punishment than are murderers." *Id.* Nor did the government provide any reasoning why punishing Mr. Gaccione as an intentional murderer does not frustrate the goal of marginal deterrence, which is to reserve the harshest sentences for the most culpable behavior. *See* Open. Br. 57-58 (arguing de facto life sentence cannot be squared with the purposes of sentencing).

### C. The 180-Year Sentence Failed to Avoid Unwarranted Sentencing Disparities.

Mr. Gaccione also argued that his 180-year sentence was substantively unreasonable because the district court failed to consider "the need to avoid unwarranted sentencing disparities." *See* Open. Br. 58-69. The government's response to these arguments was woefully insufficient particularly where the government admitted that the prosecutor recommended a 60-year sentence "[t]o avoid unwarranted sentencing disparities." Resp. Br. 16.

Nevertheless, without proper legal authority, the government incorrectly claims because "both parties presented the circumstances of similar cases to the court" that the district court's "lengthy sentence" "plainly signaled its agreement with the government's position that a longer sentence was justified in this case." Resp. Br. 62. If the court had agreed with the prosecutor, then Mr. Gaccione's sentence should have been only 60 years, not the 180 years the court imposed.

33

Moreover, the government cites to *United States v. Hoey,* 508 F.3d 687, 694 (1st Cir. 2007) and *United States v. Pierre,* 484 F.3d 75, 90 (1st Cir. 2007) to justify its position. Resp. Br. 62. Neither of these cases support the government's position.

In *Hoey*, this Court explained that "a court's reasoning can often be inferred by comparing what was argued by the parties or contained in the pre-sentence report with what the judge did." *Id.*, 508 F.3d at 694 (citations omitted). This Court in *Pierre* made a similar inference. 484 F.3d at 90. Here, unlike the cases relied upon the government, the need to avoid unwarranted sentencing disparities was not "conceptually simple." *Hoey,* 508 F.3d at 694 (noting explanation by the court is not required where the "matter is conceptually simple").

Indeed, the government failed to distinguish or discuss any of the cases provided by Mr. Gaccione that his 180-year sentence far exceeded other similarly situated defendants with similar records. *See* Open. Br. 58-69 (citing cases). The government offered no explanation or case law to explain why the district court in this case said nothing about the numerous cases brought to its attention by both parties in their sentencing memoranda and at the sentencing hearing. For instance, the prosecutor provided the district court with other cases involving sexual contact with a minor from this jurisdiction and explicitly argued to the district court that "[a] sentence of 60 years would avoid unwarranted sentence disparities among defendants who have been found guilty of similar conduct." Gov't Supp. App'x 17.

Put simply, the government ignored the significant case law presented by Mr. Gaccione in his Opening Brief at pages 58-69 demonstrating that Mr. Gaccione's 180-year sentence is disproportionately high in comparison to other sentences from the same jurisdiction and higher than the national average for a defendant convicted of similar conduct.  The government never disputed that the national average for offenders convicted of both sexual exploitation of a minor and production of child pornography is 274 months, or almost 23 years, which is nearly eight times lower than Mr. Gaccione's sentence. *See* Open. Br. 61 (providing citations). Nor did the government deny that Mr. Gaccione's sentence of 2,160 months cannot be squared with offenders who received de facto life sentences since these defendants averaged a sentence of 832 months for child pornography convictions followed by 820 months for sex abuse cases. *Id.*[2]

Accordingly, the government failed to contradict that Mr. Gaccione's 180-year sentence was both procedurally unsound and substantively unreasonable and should be vacated.

---

[2] The government never disputed that resentencing should be conducted before a different judge.

## CONCLUSION

For the reasons provided in this Reply Brief and in Mr. Gaccione's Opening Brief, Mr. Gaccione respectfully submits that this Court should vacate his 180-year sentence and his conviction on Count 7 for distribution of child pornography and remand the proceedings to a different district court judge.

Respectfully submitted,

<u>s/Lisa Aidlin</u>
Lisa Aidlin
P.O. Box 240
Sharon, MA 02067
(781) 201-9115
Bar. No. 88198

Counsel for Defendant-Appellant
Jay Gaccione

## CERTIFICATE OF COMPLIANCE

I certify that on this brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B) because this brief contains approximately 8,472 words and 747 lines of text excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii).  I further certify that this brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6) because this brief has been prepared in Microsoft Office Word 2018 in CG Times 14 point font.

July 27, 2020                                                          s/Lisa Aidlin
Date                                                                   Lisa Aidlin

**CERTIFICATE OF SERVICE**

I certify that on July 27, 2020, I electronically filed the attached pleading with the United States Court of Appeals for the First Circuit by using the CM/ECF system, which will send notification of such filing to the following parties: Lauren S. Zurier.


 s/Lisa Aidlin
Lisa Aidlin