NO. 19-1680

_____

**IN THE UNITED STATES COURT OF APPEALS
FOR THE FIRST CIRCUIT**

UNITED STATES OF AMERICA,
Appellee

v.

JAY GACCIONE,
Defendant-Appellant.

_____

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

_____

**APPENDIX**

_____

LISA AIDLIN
P.O. Box 240
Sharon, Massachusetts 02067
(781) 201-9115
laidlin@gmail.com
Bar No. 88198

Attorney for Defendant-Appellant
JAY GACCIONE

## **TABLE OF CONTENTS**

Docket sheets ..................................................................................................1

Notice of Appeal.............................................................................................11

Indictment .....................................................................................................13

Change of Plea Hearing Held on November 13, 2018 .............................................23

Sentencing Hearing Held on June 28, 2019..............................................................50

APPEAL,CLOSED,FORFEITURE ALLEGATION

# U.S. District Court
# District of Rhode Island (Providence)
# CRIMINAL DOCKET FOR CASE #: <u>1:17–cr–00004–JJM–LDA</u>–1

Case title: USA v. Gaccione
Magistrate judge case number:  1:16–mj–00276–LDA

Date Filed: 01/17/2017
Date Terminated: 07/01/2019

Assigned to: District Judge John J.
McConnell, Jr.
Referred to: Magistrate Judge
Lincoln D. Almond

Appeals court case number:
<u>19–1680</u> U.S. Court of Appeals for
the First Circuit

**<u>Defendant (1)</u>**

| | | |
|---|---|---|
| **Jay Gaccione**<br>*TERMINATED: 07/01/2019* | represented by | **Kevin J. Fitzgerald**<br>Federal Defender's Office<br>10 Weybosset St.<br>Suite 300<br>Providence, RI 02903<br>401–528–4281 (ex. 15)<br>Fax: 528–4285<br>Email: <u>Kevin_Fitzgerald@fd.org</u><br>*LEAD ATTORNEY*<br>*ATTORNEY TO BE NOTICED*<br>*Designation: Public Defender or Community*<br>*Defender Appointment* |

| **<u>Pending Counts</u>** | **<u>Disposition</u>** |
|---|---|
| SEXUAL EXPLOITATION OF A MINOR in VIolation of 18 USC 2251(a)<br>(1) | Court imposes 2160 months: 360 months as to Counts 1,2,3,5 & 6, to be served consecutive to each other; 120 months as to Counts 7, consecutive; 120 months as to Counts 8 & 9, consecutive to each other, all counts to be served consecutively with each other. Special Assessment of $800.00. No fine imposed. |
| SEXUAL EXPLOITATION OF A MINOR in VIolation of 18 USC 2251(a)<br>(2) | Court imposes 2160 months: 360 months as to Counts 1,2,3,5 & 6, to be served consecutive to each other; 120 months as to Counts 7, consecutive; 120 months as to Counts 8 & 9, consecutive to each other, all counts to be served consecutively with each other. Special Assessment |

1

SEXUAL EXPLOITATION OF A MINOR in VIolation of 18 USC 2251(a)

(3)

of $800.00. No fine imposed.

Court imposes 2160 months: 360 months as to Counts 1,2,3,5 & 6, to be served consecutive to each other; 120 months as to Counts 7, consecutive; 120 months as to Counts 8 & 9, consecutive to each other, all counts to be served consecutively with each other. Special Assessment of $800.00. No fine imposed.

SEXUAL EXPLOITATION OF A MINOR in VIolation of 18 USC 2251(a)

(4)

Dismissed by Government.

SEXUAL EXPLOITATION OF A MINOR in VIolation of 18 USC 2251(a)

(5)

SEXUAL EXPLOITATION OF A MINOR in VIolation of 18 USC 2251(a)

(6)

DISTRIBUTION OF CHILD PORNOGRAPHY in Violation of 18 USC 2252(a)(2)&(b)

(7)

POSSESSION OF CHILD PORNOGRAPHY in Violation of 18 USC 2252(a)(4)(B)&(b)(2)

(8)

POSSESSION OF CHILD PORNOGRAPHY in Violation of 18 USC 2252(a)(4)(B)&(b)(2)

(9)

**Highest Offense Level (Opening)**

Felony

**Terminated Counts**

None

**Disposition**

**Highest Offense Level (Terminated)**

None

**Complaints**

**Disposition**

2

18:2251(b) and 18:2252(a)(4) –
PRODUCTION OF CHILD
PORNOGRAPHY AND
POSSESSING AND ACCESSING
WITH INTENT TO VIEW CHILD
PORNOGRAPHY

---

**Plaintiff**

**USA**                              represented by    **Denise M. Barton**
United States Attorney's Office
50 Kennedy Plaza
8th Floor
Providence, RI 02903
401−709−5063
Email: denise.barton@usdoj.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Page | Docket Text |
|---|---|---|---|
| 11/04/2016 | 1 | | MOTION to Seal Case by USA as to Jay Gaccione.(Noel, Jeannine) [1:16−mj−00276−LDA] (Entered: 11/07/2016) |
| 11/04/2016 | 2 | | ORDER granting 1 Motion to Seal Case as to Jay Gaccione (1). So Ordered by Magistrate Judge Lincoln D. Almond on 11/4/2016.(Noel, Jeannine) [1:16−mj−00276−LDA] (Entered: 11/07/2016) |
| 11/04/2016 | 3 | | COMPLAINT as to Jay Gaccione (1). (Attachments: # 1 Criminal Cover Sheet)(Noel, Jeannine) [1:16−mj−00276−LDA] (Entered: 11/07/2016) |
| 11/04/2016 | | | Arrest of Jay Gaccione (Noel, Jeannine) [1:16−mj−00276−LDA] (Entered: 11/07/2016) |
| 11/04/2016 | 5 | | NOTICE OF ATTORNEY APPEARANCE: Kevin J. Fitzgerald appearing for Jay Gaccione (Noel, Jeannine) [1:16−mj−00276−LDA] (Entered: 11/07/2016) |
| 11/04/2016 | 6 | | ORDER APPOINTING FEDERAL PUBLIC DEFENDER as to Jay Gaccione. So Ordered by Magistrate Judge Lincoln D. Almond on 11/4/2016.(Noel, Jeannine) [1:16−mj−00276−LDA] (Entered: 11/07/2016) |
| 11/04/2016 | | | Minute Entry for proceedings held before Magistrate Judge Lincoln D. Almond:Initial Appearance as to Jay Gaccione held on 11/4/2016, Detention Hearing as to Jay Gaccione held on 11/4/2016 (Barton, McAdams, Fitzgerald) PTS Miles; Court informs deft of rights & charges; Deft understands rights & charges; FPD appointed; Waiver of Preliminary Exam; Court informs deft of rights; Deft understands rights & waiver; Deft signs waiver; Court accepts waiver; Deft Counsel addresses the Court; No bail argument; Deft remanded; Govt moves to unseal the case and seal the affidavit and attachments; Court grants motion to unseal the case and seal the affidavit and attachments; Deft Counsel addresses the Court; Govt addresses the Court; Deft remanded(Court Reporter FTR in Courtroom A at 4:29 PM.)(Noel, Jeannine) [1:16−mj−00276−LDA] (Entered: 11/07/2016) |

| 11/04/2016 | 7 | | WAIVER of Preliminary Hearing by Jay Gaccione accepted by MJ Almond (Noel, Jeannine) [1:16–mj–00276–LDA] (Entered: 11/07/2016) |
|---|---|---|---|
| 11/17/2016 | 8 | | Arrest Warrant Returned Executed on 11/4/2016 at Providence, RI in case as to Jay Gaccione. (Noel, Jeannine) [1:16–mj–00276–LDA] (Entered: 11/17/2016) |
| 11/23/2016 | 9 | | Assented MOTION to Exclude *Time Under the Speedy Trial Act* by USA as to Jay Gaccione. Responses due by 12/12/2016(Barton, Denise) [1:16–mj–00276–LDA] (Entered: 11/23/2016) |
| 11/28/2016 | 10 | | ORDER granting 9 Motion to Exclude as to Jay Gaccione (1). The period from 12/4/2016 through 2/2/2017 is excluded. So Ordered by Magistrate Judge Lincoln D. Almond on 11/28/2016.(Noel, Jeannine) [1:16–mj–00276–LDA] (Entered: 11/28/2016) |
| 01/17/2017 | 11 | 13 | INDICTMENT as to Jay Gaccione (1) count(s) 1–6, 7, 8–9. (Attachments: # 1 Criminal Cover Sheet)(Saucier, Martha) (Entered: 01/17/2017) |
| 01/17/2017 | | | NOTICE OF FORFEITURE ALLEGATION by USA as to Jay Gaccione re 11 Indictment (Saucier, Martha) (Entered: 01/17/2017) |
| 01/17/2017 | | | **NOTICE OF HEARING DEFENDANT REQUEST** as to Jay Gaccione. Arraignment set for **1/19/2017 at 10:00 AM** in Courtroom A before Magistrate Judge Lincoln D. Almond.(Saucier, Martha) (Entered: 01/17/2017) |
| 01/19/2017 | | | Minute Entry for proceedings held before Magistrate Judge Lincoln D. Almond:Arraignment as to Jay Gaccione (1) Count 1–6,7,8–9 held on 1/19/2017 (Barton, Fitzgerald) Court informs deft of rights & charges; Deft understands rights & charges; Not guilty plea entered; Arraignment Order entered; No bail argument; Deft remanded(Court Reporter FTR in Courtroom A at 10:08 am.)(Noel, Jeannine) (Entered: 01/19/2017) |
| 01/19/2017 | 12 | | ARRAIGNMENT ORDER as to Jay Gaccione. Motions due by 4/10/2017. So Ordered by Magistrate Judge Lincoln D. Almond on 1/19/2017.(Noel, Jeannine) (Entered: 01/19/2017) |
| 01/19/2017 | 13 | | ORDER OF DETENTION as to Jay Gaccione. So Ordered by Magistrate Judge Lincoln D. Almond on 1/19/2017.(Noel, Jeannine) (Entered: 01/19/2017) |
| 05/03/2017 | 14 | | TRIAL NOTICE AND PRETRIAL ORDER as to Jay Gaccione – So Ordered by District Judge John J. McConnell, Jr. on 5/3/2017.(Barletta, Barbara) (Entered: 05/03/2017) |
| 05/08/2017 | 15 | | MOTION to Continue with supporting memo by Jay Gaccione. Responses due by 5/22/2017.(Fitzgerald, Kevin) (Entered: 05/08/2017) |
| 05/09/2017 | | | TEXT ORDER granting 15 Motion to Continue as to Jay Gaccione (1); the calendar call scheduled for 5/30/17 and the jury empanelment scheduled for 6/6/17 are cancelled and all deadlines previously issued are vacated. This case will be placed on the August, 2017 trial calendar. The time requested is deemed excludable pursuant to 18 U.S.C. Section 3161(h)(7) of the Speedy Trial Act– So Ordered by District Judge John J. McConnell, Jr. on 5/9/2017.(Barletta, Barbara) (Entered: 05/09/2017) |
| 07/10/2017 | 16 | | NOTICE OF HEARING as to Jay Gaccione: Calendar Call set for Wednesday, 7/26/2017 at 09:30 AM in Courtroom 1 before District Judge John J. |

4

| | | | |
|---|---|---|---|
| | | | McConnell, Jr. (Barletta, Barbara) (Entered: 07/10/2017) |
| 07/17/2017 | 17 | | TRIAL NOTICE AND PRETRIAL ORDER as to Jay Gaccione – So Ordered by District Judge John J. McConnell, Jr. on 7/17/2017.(Barletta, Barbara) (Entered: 07/17/2017) |
| 07/17/2017 | 18 | | MOTION to Continue with supporting memo by Jay Gaccione. Responses due by 7/31/2017.(Fitzgerald, Kevin) (Entered: 07/17/2017) |
| 07/18/2017 | | | TEXT ORDER granting 18 Motion to Continue as to Jay Gaccione (1); the calendar call scheduled for 7/26/17 and the jury empanelment scheduled for 8/1/17 are cancelled and all deadlines issued are vacated. This case will be placed on the November, 2017 trial calendar. The time requested is deemed excludable pursuant to 18 U.S.C. § 3161(h)(8) of the Speedy Trial Act. So Ordered by District Judge John J. McConnell, Jr. on 7/18/2017.(Barletta, Barbara) (Entered: 07/18/2017) |
| 07/18/2017 | | | HEARING CANCELLED as to Jay Gaccione: The calendar call scheduled for 7/26/27 is cancelled(Barletta, Barbara) (Entered: 07/18/2017) |
| 10/04/2017 | 19 | | NOTICE OF HEARING as to Jay Gaccione: Calendar Call set for Wednesday, 11/1/2017 at 09:00 AM in Courtroom 1 before District Judge John J. McConnell, Jr. (Barletta, Barbara) (Entered: 10/04/2017) |
| 10/16/2017 | 20 | | TRIAL NOTICE AND PRETRIAL ORDER as to Jay Gaccione – So Ordered by District Judge John J. McConnell, Jr. on 10/16/2017.(Barletta, Barbara) (Entered: 10/16/2017) |
| 10/27/2017 | 21 | | MOTION to Continue with supporting memo by Jay Gaccione. Responses due by 11/13/2017.(Fitzgerald, Kevin) (Entered: 10/27/2017) |
| 10/31/2017 | | | HEARING CANCELLED as to Jay Gaccione: The calendar call scheduled for 11/1/17 is cancelled(Barletta, Barbara) (Entered: 10/31/2017) |
| 12/12/2017 | 22 | | NOTICE OF HEARING as to Jay Gaccione: Calendar Call set for Tuesday, 1/2/2018 at 09:30 AM in Courtroom 1 before District Judge John J. McConnell, Jr.. (Barletta, Barbara) (Entered: 12/12/2017) |
| 12/20/2017 | 23 | | TRIAL NOTICE AND PRETRIAL ORDER as to Jay Gaccione – So Ordered by District Judge John J. McConnell, Jr. on 12/20/2017.(Barletta, Barbara) (Entered: 12/20/2017) |
| 12/21/2017 | 24 | | MOTION to Continue with supporting memo by Jay Gaccione. Responses due by 1/4/2018.(Fitzgerald, Kevin) (Entered: 12/21/2017) |
| 12/27/2017 | | | TEXT ORDER granting 24 Motion to Continue as to Jay Gaccione (1); the calendar call scheduled for 1/2/18 and the jury empanelment scheduled for 1/9/18 are cancelled and all deadlines previously ordered are vacated. This case will be placed on the March, 2018 trial calendar. The time requested is deemed excludable pursuant to 18 U.S.C. § 3161(h)(8) of the Speedy Trial Act– So Ordered by District Judge John J. McConnell, Jr. on 12/27/2017.(Barletta, Barbara) (Entered: 12/27/2017) |
| 02/06/2018 | 25 | | NOTICE OF HEARING as to Jay Gaccione: Calendar Call set for Wednesday, 2/28/2018 at 09:30 AM in Courtroom 1 before District Judge John J. McConnell, Jr.. (Barletta, Barbara) (Entered: 02/06/2018) |

| 02/09/2018 | 26 | | TRIAL NOTICE AND PRETRIAL ORDER as to Jay Gaccione – So Ordered by District Judge John J. McConnell, Jr. on 2/9/2018.(Barletta, Barbara) (Entered: 02/09/2018) |
|---|---|---|---|
| 02/27/2018 | 27 | | MOTION to Continue by Jay Gaccione. Responses due by 3/13/2018.(Fitzgerald, Kevin) (Entered: 02/27/2018) |
| 02/27/2018 | | | TEXT ORDER granting 27 Motion to Continue as to Jay Gaccione (1); the calendar call scheduled for 2/28/18 and the jury empanelment scheduled for 3/6/18 are cancelled and all deadlines previously ordered are vacated. This case will be placed on the May, 2018 trial calendar. The time requested shall be deemed excludable pursuant to 18 U.S.C. § 3161(h)(8) of the Speedy Trial Act – – So Ordered by District Judge John J. McConnell, Jr. on 2/27/2018.(Barletta, Barbara) (Entered: 02/27/2018) |
| 04/09/2018 | 28 | | NOTICE OF HEARING as to Jay Gaccione: Calendar Call set for Wednesday, 5/2/2018 at 09:00 AM in Courtroom 1 before District Judge John J. McConnell, Jr. (Barletta, Barbara) (Entered: 04/09/2018) |
| 04/16/2018 | 29 | | TRIAL NOTICE AND PRETRIAL ORDER as to Jay Gaccione – So Ordered by District Judge John J. McConnell, Jr. on 4/16/2018(Barletta, Barbara) (Entered: 04/16/2018) |
| 04/18/2018 | 30 | | MOTION to Continue by Jay Gaccione. Responses due by 5/2/2018.(Fitzgerald, Kevin) (Entered: 04/18/2018) |
| 04/19/2018 | | | TEXT ORDER granting 30 Motion to Continue as to Jay Gaccione (1); the calendar call scheduled for 5/2/18 and the jury empanelment scheduled for 5/8/18 are cancelled and all deadlines previously ordered are vacated. This case will be placed on the July, 2018 trial calendar. The time requested shall be deemed excludable pursuant to 18 U.S.C. § 3161(h)(8) of the Speedy Trial Act – So Ordered by District Judge John J. McConnell, Jr. on 4/19/2018.(Barletta, Barbara) (Entered: 04/19/2018) |
| 06/08/2018 | 31 | | TRIAL NOTICE AND PRETRIAL ORDER as to Jay Gaccione – So Ordered by District Judge John J. McConnell, Jr. on 6/8/2018.(Barletta, Barbara) (Entered: 06/08/2018) |
| 07/03/2018 | 32 | | MOTION to Continue by Jay Gaccione. **Responses due by 7/17/2018.**(Fitzgerald, Kevin) (Entered: 07/03/2018) |
| 07/06/2018 | | | TEXT ORDER granting 32 Motion to Continue as to Jay Gaccione (1); The jury empanelment scheduled to begin on 7/10/18 is cancelled and all deadlines previously ordered are vacated. This case will be on the September, 2018 trial calendar. The time requested shall be deemed excludable pursuant to 18 U.S.C. § 3161(h)(8) of the Speedy Trial Act – So Ordered by District Judge John J. McConnell, Jr. on 7/6/2018. (Urizandi, Nisshy) (Entered: 07/06/2018) |
| 08/08/2018 | 33 | | NOTICE OF HEARING as to Jay Gaccione: Calendar Call set for Wednesday, 8/29/2018 at 09:30 AM in Courtroom 2 before District Judge John J. McConnell, Jr. (Barletta, Barbara) (Entered: 08/08/2018) |
| 08/17/2018 | 34 | | MOTION to Continue by Jay Gaccione. **Responses due by 8/31/2018.**(Fitzgerald, Kevin) (Entered: 08/17/2018) |
| 08/17/2018 | 35 | | |

| | | |
|---|---|---|
| | | TRIAL NOTICE AND PRETRIAL ORDER as to Jay Gaccione – So Ordered by District Judge John J. McConnell, Jr. on 8/17/2018(Barletta, Barbara) (Entered: 08/17/2018) |
| 08/17/2018 | | TEXT ORDER granting <u>34</u> Motion to Continue as to Jay Gaccione (1; the calendar call scheduled for 8/29/18 and the jury empanelment scheduled for 9/5/18 are cancelled and all deadlines previously ordered are vacated. This case will be placed on the November, 2018 trial calendar. The time requested shall be deemed excludable pursuant to 18 U.S.C. § 3161(h)(7)(A) of the Speedy Trial Act – So Ordered by District Judge John J. McConnell, Jr. on 8/17/2018(Barletta, Barbara) (Entered: 08/17/2018) |
| 10/09/2018 | <u>36</u> | NOTICE OF HEARING as to Jay Gaccione: Calendar Call set for Tuesday, 10/30/2018 at 09:30 AM in Courtroom 1 before District Judge John J. McConnell, Jr. (Barletta, Barbara) (Entered: 10/09/2018) |
| 10/15/2018 | <u>37</u> | TRIAL NOTICE AND PRETRIAL ORDER as to Jay Gaccione – So Ordered by District Judge John J. McConnell, Jr. on 10/15/2018.(Barletta, Barbara) (Entered: 10/15/2018) |
| 11/02/2018 | <u>38</u> | NOTICE OF INTENT TO PLEAD GUILTY by Jay Gaccione.(Fitzgerald, Kevin) (Entered: 11/02/2018) |
| 11/02/2018 | | **NOTICE OF HEARING DEFENDANT REQUEST** as to Jay Gaccione: Change of Plea Hearing set for Wednesday, 11/14/2018 at 11:00 AM in Courtroom 1 before District Judge John J. McConnell, Jr.(Barletta, Barbara) (Entered: 11/02/2018) |
| 11/05/2018 | | **REVISED NOTICE OF HEARING DEFENDANT REQUEST** as to Jay Gaccione. Change of Plea Hearing is **RESCHEDULED** to Tuesday, 11/13/2018 at 03:00 PM in Courtroom 1 before District Judge John J. McConnell, Jr.(Barletta, Barbara) (Entered: 11/05/2018) |
| 11/13/2018 | | Minute Entry for proceedings held before District Judge John J. McConnell, Jr.:Change of Plea Hearing as to Jay Gaccione held on 11/13/2018, Plea entered by Jay Gaccione (1) Guilty Count 1–3,5–6,7,8–9. Denise Barton for Government. Kevin Fitzgerald for Defendant. Defendant sworn. Court verifies that the Defendant has reviewed the charges with his attorney. Court questions Defendant and reviews maximum penalties, sentencing guidelines, and constitutional rights. Government outlines the legal elements and facts of the cases. Defendant agrees with Governments factual outlines. Defendant pleads guilty to Counts 1–3,5,6,7,8 & 9. Court accepts plea and adjudges the Defendant guilty. Sentencing Hearing is scheduled for 2/20/2019 at 11:00 am. Defendant remanded. Court adjourned. VM(Court Reporter Karen Wischnowsky in Courtroom 1 at 3:10 pm.)(McGuire, Vickie) (Entered: 11/13/2018) |
| 11/13/2018 | | **NOTICE OF HEARING DEFENDANT REQUEST** as to Jay Gaccione. Sentencing set for 2/20/2018 at 11:00 AM in Courtroom 1 before District Judge John J. McConnell, Jr.(McGuire, Vickie) (Entered: 11/13/2018) |
| 12/04/2018 | <u>39</u> | TRANSCRIPT ORDER for proceedings held on 11/13/2018 before Judge John J. McConnell, Jr.. Ordinary Transcript delivery selected. Transcript to be delivered in 30 days. (Barton, Denise) (Entered: 12/04/2018) |
| 12/04/2018 | <u>40</u> | |

| | | | |
|---|---|---|---|
| | | | TRANSCRIPT ORDER ACKNOWLEDGMENT Entered re: 39 Transcript Order. Court Reporter/Transcriber: Karen Wischnowsky (Dias, Jennifer) (Entered: 12/04/2018) |
| 12/17/2018 | 41 | | TRANSCRIPT EXCERPT of Change of Plea Hearing as to Jay Gaccione held on November 13, 2018, before Judge John J. McConnell, Jr. Court Reporter Karen Wischnowsky, Telephone number (401) 752–7045. Transcript may be viewed at the court public terminal or purchased through the Court Reporter before the deadline for Release of Transcript Restriction. After that date it may be obtained through the Court Reporter or PACER **NOTICE TO COUNSEL: Redaction Requests must be filed for personal identifiers only. All other redactions must be requested by motion. For local policy and sample redaction request visit our website at www.rid.uscourts.gov and select Transcripts under the Case Information menu option** Redaction Request due 1/7/2019. Redacted Transcript Deadline set for 1/17/2019. Release of Transcript Restriction set for 3/18/2019. (Wischnowsky, Karen) (Entered: 12/17/2018) |
| 01/25/2019 | 42 | | MOTION for Forfeiture of Property *Preliminary Order of Forfeiture* by USA as to Jay Gaccione. **Responses due by 2/8/2019.** (Attachments: # 1 Exhibit Proposed Order)(Barton, Denise) (Entered: 01/25/2019) |
| 01/25/2019 | 43 | | MOTION to Continue by Jay Gaccione. **Responses due by 2/8/2019.**(Fitzgerald, Kevin) (Entered: 01/25/2019) |
| 01/28/2019 | | | TEXT ORDER granting 42 Motion for Forfeiture of Property as to Jay Gaccione (1) – So Ordered by District Judge John J. McConnell, Jr. on 1/28/2019(Barletta, Barbara) (Entered: 01/28/2019) |
| 01/28/2019 | 44 | | PRELIMINARY ORDER OF FORFEITURE as to Jay Gaccione – So Ordered by District Judge John J. McConnell, Jr. on 1/28/2019(Barletta, Barbara) (Entered: 01/28/2019) |
| 01/28/2019 | | | TEXT ORDER granting 43 Motion to Continue Sentencing as to Jay Gaccione (1)– So Ordered by District Judge John J. McConnell, Jr. on 1/28/2019(Barletta, Barbara) (Entered: 01/28/2019) |
| 01/28/2019 | | | **REVISED NOTICE OF HEARING DEFENDANT REQUEST** as to Jay Gaccione: Sentencing hearing is **RESCHEDULED** to Friday, 4/19/2019 at 10:00 AM in Courtroom 1 before District Judge John J. McConnell, Jr.(Barletta, Barbara) (Entered: 01/28/2019) |
| 03/19/2019 | 46 | | MOTION to Continue by Jay Gaccione. **Responses due by 4/2/2019.**(Fitzgerald, Kevin) (Entered: 03/19/2019) |
| 03/20/2019 | | | TEXT ORDER granting 46 Motion to Continue Sentencing as to Jay Gaccione (1) – So Ordered by District Judge John J. McConnell, Jr. on 3/20/2019.(Barletta, Barbara) (Entered: 03/20/2019) |
| 03/20/2019 | | | **REVISED NOTICE OF HEARING DEFENDANT REQUEST** as to Jay Gaccione: Sentencing Hearing is **RESCHEDULED** to Wednesday, set for 5/22/2019 at 10:00 AM in Courtroom 1 before District Judge John J. McConnell, Jr.(Barletta, Barbara) (Entered: 03/20/2019) |
| 04/01/2019 | 47 | | NOTICE *Declaration of Publication* by USA as to Jay Gaccione (Barton, Denise) (Entered: 04/01/2019) |

| 04/01/2019 | 48 | | MOTION for Forfeiture of Property *Final Order of Forfeiture* by USA as to Jay Gaccione. **Responses due by 4/15/2019.** (Attachments: # 1 Exhibit Proposed Order)(Barton, Denise) (Entered: 04/01/2019) |
|---|---|---|---|
| 04/02/2019 | | | TEXT ORDER granting 48 Motion for Forfeiture of Property as to Jay Gaccione (1) – So Ordered by District Judge John J. McConnell, Jr. on 4/2/2019.(Barletta, Barbara) (Entered: 04/02/2019) |
| 04/02/2019 | 49 | | FINAL ORDER OF FORFEITURE as to Jay Gaccione – So Ordered by District Judge John J. McConnell, Jr. on 4/2/2019.(Barletta, Barbara) (Entered: 04/02/2019) |
| 05/14/2019 | | | **REVISED NOTICE OF HEARING DEFENDANT REQUEST** as to Jay Gaccione: Sentencing hearing is **RESCHEDULED** to Friday, 6/7/2019 at 11:00 AM in Courtroom 1 before District Judge John J. McConnell, Jr.(Barletta, Barbara) (Entered: 05/14/2019) |
| 05/14/2019 | 50 | | SENTENCING MEMORANDUM by Jay Gaccione (Fitzgerald, Kevin) (Entered: 05/14/2019) |
| 05/29/2019 | | | **REVISED NOTICE OF HEARING DEFENDANT REQUEST** as to Jay Gaccione. Sentencing set for 6/19/2019 at 10:00 AM in Courtroom 1 before District Judge John J. McConnell, Jr.(McGuire, Vickie) (Entered: 05/29/2019) |
| 05/31/2019 | | | **REVISED NOTICE OF HEARING DEFENDANT REQUEST** as to Jay Gaccione. Sentencing set for 6/28/2019 at 10:00 AM in Courtroom 1 before District Judge John J. McConnell, Jr.(McGuire, Vickie) (Entered: 05/31/2019) |
| 06/28/2019 | | | Minute Entry for proceedings held before District Judge John J. McConnell, Jr.:Sentencing held on 6/28/2019 for Jay Gaccione (1), Count(s) 1–3,5,6,7,8 & 9. Count(s) 4, Dismissed by Government. Denise Barton for Government. Kevin Fitzgerald for Defendant. Molly Picozzi for Probation. Defendant present. Court verifies that defense counsel has reviewed the PSR with the Defendant. Court sets forth the advisory sentencing guideline calculations in this case. No objections. Government and Defense counsel each present sentencing recommendations. Victim Impact statement. Defendant allocutes. Court imposes 2160 months: 360 months as to Counts 1,2,3,5,6 each and consecutive to each other; 120 months as to Count 7 consecutive; 120 months as to Counts 8 & 9 consecutive. All Counts to be served consecutively with each other. Supervised release life. A $800 special assessment. Restitution is deferred. No fine imposed. Defendant remanded. Court adjourned. (Court Reporter Lisa Schwam in Courtroom 1 at 10:15 am.)(McGuire, Vickie) Modified on 6/28/2019 (McGuire, Vickie). (Entered: 06/28/2019) |
| 07/01/2019 | 55 | | JUDGMENT as to Jay Gaccione (1)Court imposes 2160 months: 360 months as to Counts 1,2,3,5 & 6, to be served consecutive to each other; 120 months as to Counts 7, consecutive; 120 months as to Counts 8 & 9, consecutive to each other, all counts to be served consecutively with each other. Special Assessment of $800.00. No fine imposed; Count 4, Dismissed by Government. So Ordered by District Judge John J. McConnell, Jr. on 6/28/2019.(Jackson, Kerrie) (Entered: 07/01/2019) |
| 07/03/2019 | 57 | 11 | NOTICE OF APPEAL by Jay Gaccione |

9

| | | |
|---|---|---|
| | | **NOTICE TO COUNSEL: Counsel should register for a First Circuit CM/ECF Appellate Filer Account at http://pacer.psc.uscourts.gov/cmecf/. Counsel should also review the First Circuit requirements for electronic filing by visiting the CM/ECF Information section at http://www.ca1.uscourts.gov/cmecf** Appeal Record due by 8/2/2019. (Attachments: # 1 Envelope)(Potter, Carrie) (Entered: 07/03/2019) |
| 07/03/2019 | 58 | CLERK'S CERTIFICATE AND APPELLATE COVER SHEET: Abbreviated record on appeal consisting of notice of appeal, order(s) being appealed, and certified copy of the district court docket report transmitted to the U.S. Court of Appeals for the First Circuit in accordance with 1st Cir. R. 11.0(b). as to Jay Gaccione 57 Notice of Appeal – Other. (Attachments: # 1 ROA)(Potter, Carrie) (Entered: 07/03/2019) |
| 07/03/2019 | | USCA Case Number as to Jay Gaccione 19–1680 for 57 Notice of Appeal – Other filed by Jay Gaccione. (Potter, Carrie) (Entered: 07/03/2019) |
| 10/22/2019 | 59 | TRANSCRIPT of Change of Plea Hearing filed as to Jay Gaccione for the date of November 13, 2018, before Judge John J. McConnell, Jr, re 57 Notice of Appeal – Other, COA Number: 19–1680. Court Reporter Karen Wischnowsky, Telephone number (401) 752–7045. Transcript may be viewed at the court public terminal or purchased through the Court Reporter before the deadline for Release of Transcript Restriction. After that date it may be obtained through the Court Reporter or PACER Redaction Request due 11/12/2019. Redacted Transcript Deadline set for 11/22/2019. Release of Transcript Restriction set for 1/21/2020. (Wischnowsky, Karen) (Entered: 10/22/2019) |
| 12/10/2019 | 60 | Judgment Returned Executed as to Jay Gaccione on 10/25/19. (Hicks, Alyson) (Entered: 12/10/2019) |
| 12/10/2019 | 61 | TRANSCRIPT of Initial Appearance filed as to Jay Gaccione for date of November 4, 2016, before Magistrate Judge Lincoln D. Almond, re 57 Notice of Appeal – Other,, COA Number: 19–1680. Court Reporter/Transcriber Anne M. Clayton, Telephone number 401–255–2310. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER Redaction Request due 12/31/2019. Redacted Transcript Deadline set for 1/10/2020. Release of Transcript Restriction set for 3/9/2020. (Clayton, Anne) (Entered: 12/10/2019) |
| 01/02/2020 | 62 | TRANSCRIPT of Sentencing filed as to Jay Gaccione for dates of 06–28–2019 before Judge McConnell, re 57 Notice of Appeal – Other,, Court Reporter/Transcriber Lisa Schwam, Telephone number 401–752–7128. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER Redaction Request due 1/23/2020. Redacted Transcript Deadline set for 2/3/2020. Release of Transcript Restriction set for 4/1/2020. (Schwam, Lisa) (Entered: 01/02/2020) |

UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

UNITED STATES OF AMERICA,　　　　　　　)
　　　　　　　　　　　　　　　　　　　　)
V.　　　　　　　　　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　　　)
JAY GACCIONE,　　　　　　　　　　　　　)
　　　　　Defendant　　　　　　　　　　　)

## NOTICE OF APPEAL

Now comes the Defendant, Jay Gaccione, and hereby files this Notice of Appeal. The Defendant will appeal the sentence and judgment that was decided in this case on June 28, 2019 in the U.S. District Court, District of Rhode Island.

Respectfully Submitted,

Jay Gaccione
Donald W. Wyatt Detention Facility
950 High Street
Central Falls, RI 02863

## CERTIFICATION

I, Jay Gaccione, hereby certify that I mailed a copy of this document to the U.S. Attorney's Office, 50 Kennedy Plaza, Providence, RI 02903 on July 1, 2019.

Jay Gaccione

11

J.Y. Gaccione #11409070
O.W.D.F.
Q.O. High Street
Central Falls, RI 02863

United States District Court
Clerk's Office
1 Exchange Terrace
Providence, RI 02903

02903-177999



PROVIDENCE RI 028
01 JUL 2019 PM 3 L

FOREVER / USA

12

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| UNITED STATES OF AMERICA | Cr. No. ☐☐☐ 17 04 M |
|---|---|
| v. | In violation of 18 U.S.C. § 2251(a); 18 U.S.C. § 2252(a)(4)(B) |
| JAY GACCIONE | |

## INDICTMENT

The Grand Jury charges that:

## COUNT ONE

(Sexual Exploitation of a Minor)

On or about April 16, 2014, in the District of Rhode Island, the defendant,

**JAY GACCIONE,**

did employ, use, persuade, induce, entice, and coerce a minor, to wit: Minor Victim #1, a minor child, to engage in sexually explicit conduct for the purpose of producing any visual depiction of such conduct, knowing and having reason to know that such visual depiction would be transported or transmitted using any means and facility of interstate and foreign commerce, knowing and having reason to know that such visual depiction would be transported or transmitted in and affecting interstate or foreign commerce, and which visual depiction was produced or transmitted using materials that have been mailed, shipped, and transported in and affecting interstate and foreign commerce by any means, including by computer.

All in violation of Title 18 United States Code Section 2251(a).

13

## COUNT TWO

(Sexual Exploitation of a Minor)

On or about May 10, 2014, in the District of Rhode Island, the defendant,

**JAY GACCIONE,**

did employ, use, persuade, induce, entice, and coerce a minor, to wit: Minor Victim #1, a minor child, to engage in sexually explicit conduct for the purpose of producing any visual depiction of such conduct, knowing and having reason to know that such visual depiction would be transported or transmitted using any means and facility of interstate and foreign commerce, knowing and having reason to know that such visual depiction would be transported or transmitted in and affecting interstate or foreign commerce, and which visual depiction was produced or transmitted using materials that have been mailed, shipped, and transported in and affecting interstate and foreign commerce by any means, including by computer.

All in violation of Title 18 United States Code Section 2251(a).

## COUNT THREE

(Sexual Exploitation of a Minor)

On or about July 21, 2014, in the District of Rhode Island, the defendant,

**JAY GACCIONE,**

did employ, use, persuade, induce, entice, and coerce a minor, to wit: Minor Victim #1, a minor child, to engage in sexually explicit conduct for the purpose of producing any

2

visual depiction of such conduct, knowing and having reason to know that such visual depiction would be transported or transmitted using any means and facility of interstate and foreign commerce, knowing and having reason to know that such visual depiction would be transported or transmitted in and affecting interstate or foreign commerce, and which visual depiction was produced or transmitted using materials that have been mailed, shipped, and transported in and affecting interstate and foreign commerce by any means, including by computer.

All in violation of Title 18 United States Code Section 2251(a).

## COUNT FOUR

(Sexual Exploitation of a Minor)

On or about the October 5, 2015, in the District of Rhode Island, the defendant,

**JAY GACCIONE,**

did employ, use, persuade, induce, entice, and coerce a minor, to wit: Minor Victim #2, a minor child, to engage in sexually explicit conduct for the purpose of producing any visual depiction of such conduct, knowing and having reason to know that such visual depiction would be transported or transmitted using any means and facility of interstate and foreign commerce, knowing and having reason to know that such visual depiction would be transported or transmitted in and affecting interstate or foreign commerce, and which visual depiction was produced or transmitted using materials that have been mailed, shipped, and transported in and affecting interstate and foreign commerce by any means, including by computer.

3

All in violation of Title 18 United States Code Section 2251(a).

## COUNT FIVE

(Sexual Exploitation of a Minor)

On or about the October 13, 2015, in the District of Rhode Island, the defendant,

**JAY GACCIONE,**

did employ, use, persuade, induce, entice, and coerce a minor, to wit: Minor Victim #1, a minor child, to engage in sexually explicit conduct for the purpose of producing any visual depiction of such conduct, knowing and having reason to know that such visual depiction would be transported or transmitted using any means and facility of interstate and foreign commerce, knowing and having reason to know that such visual depiction would be transported or transmitted in and affecting interstate or foreign commerce, and which visual depiction was produced or transmitted using materials that have been mailed, shipped, and transported in and affecting interstate and foreign commerce by any means, including by computer.

All in violation of Title 18 United States Code Section 2251(a).

## COUNT SIX

(Sexual Exploitation of a Minor)

On or about April 24, 2016, in the District of Rhode Island, the defendant,

**JAY GACCIONE**,

did employ, use, persuade, induce, entice, and coerce a minor, to wit: Minor Victim #1, a minor child, to engage in sexually explicit conduct for the purpose of producing any visual depiction of such conduct, knowing and having reason to know that such visual depiction would be transported or transmitted using any means and facility of interstate and foreign commerce, knowing and having reason to know that such visual depiction would be transported or transmitted in and affecting interstate or foreign commerce, and which visual depiction was produced or transmitted using materials that have been mailed, shipped, and transported in and affecting interstate and foreign commerce by any means, including by computer.

All in violation of Title 18 United States Code Section 2251(a).

## COUNT SEVEN

(Distribution of Child Pornography)

On or about April 29, 2016, in the District of Rhode Island, the defendant,

**JAY GACCIONE**,

knowingly distributed, one or more visual depictions, to wit digital images of Victim #1, using any means or facility of interstate or foreign commerce, that has been shipped or transported in or affecting interstate or foreign commerce, and which contain

5

materials which have been shipped or transported, by any means including by computer, and the production of such visual depictions involved the use of a minor engaging in sexually explicit conduct and the visual depictions are of such conduct,

All in violation of 18 U.S.C. § 2252(a)(2) and (b).

## COUNT EIGHT

(Possession of Child Pornography)

On or about a date unknown to the Grand Jury but not later than April 16, 2014 and continuing through on or about November 4, 2016, in the District of Rhode Island, the defendant,

## JAY GACCIONE

did knowingly possess, and access with intent to view, one or more matters which contained a visual depiction, to wit an SD Card serial number 0907503420C8BE, that had been shipped and transported using any means and facility of interstate and foreign commerce, had been shipped and transported in and affecting interstate and foreign commerce, and which was produced using materials which had been mailed, shipped, and transported using any means and facility of interstate and foreign commerce, including by computer, the production of which involved the use of a minor, at least one of which was a prepubescent minor, engaging in sexually explicit conduct, and the visual depiction was of such conduct, in violation of Title 18, United States Code, Section 2252(a)(4)(B) and (b)(2).

6

## COUNT NINE

(Possession of Child Pornography)

On or about a date unknown to the Grand Jury but not later than October 5, 2015 and continuing through on or about November 4, 2016 in the District of Rhode Island, the defendant,

### JAY GACCIONE

did knowingly possess, and access with intent to view, one or more matters which contained a visual depiction, to wit an SD Card serial number 4116CMPWXDAP, that had been shipped and transported using any means and facility of interstate and foreign commerce, had been shipped and transported in and affecting interstate and foreign commerce, and which was produced using materials which had been mailed, shipped, and transported using any means and facility of interstate and foreign commerce, including by computer, the production of which involved the use of a minor engaging in sexually explicit conduct, and the visual depiction was of such conduct, in violation of Title 18, United States Code, Section 2252(a)(4)(B) and (b)(2).

## FORFEITURE ALLEGATION

Pursuant to Federal Rule of Criminal Procedure 32.2, notice is hereby given to defendant JAY GACCIONE, that in the event the defendant is convicted of this Indictment, the defendant shall forfeit to the United States, pursuant to Title 18, United States Code, Section 2253(a), all property, real or personal, used or intended to be used to commit or facilitate the commission of the offense of conviction.

A TRUE BILL:

REDACTED

PETER F. NERONHA
United States Attorney


DENISE MARIE BARTON
Assistant U.S. Attorney


SANDRA HEBERT
Assistant U.S. Attorney
Deputy Chief, Criminal Division

Dated: January 17, 2017

PER 18 U.S.C. 3170

| DEFENDANT INFORMATION RELATIVE TO A CRIMINAL ACTION - IN U.S. DISTRICT COURT |
|---|

BY: ☐ INFORMATION   ☒ INDICTMENT   ☐ COMPLAINT   CASE NO. _____

Matter Sealed: ☐ Juvenile   ☐ Other than Juvenile
☐ Pre-Indictment Plea   ☐ Superseding   ☐ Defendant Added
☐ Indictment
☐ Information
☐ Charges/Counts Added

USA vs.

Defendant: Jay Gaccione

Name of District Court, and/or Judge/Magistrate Location (City)

UNITED STATES DISTRICT COURT   RHODE ISLAND
DISTRICT OF RHODE ISLAND   Divisional Office

Name and Office of Person Furnishing Information on THIS FORM

PETER F. NERONHA
☒ U.S. Atty   ☐ Other U.S. Agency
Phone No. (401) 709-5000

Name of Asst. U.S. Attorney (if assigned)   Denise M. Barton

Add

REDACTED

Bi
Da

Alien
(applicable)

S

**PROCEEDING**

Name of Complainant Agency, or Person (& Title, if any)
DHS/HSI

☐ person is awaiting trial in another Federal or State Court (give name of court)

☐ this person/proceeding transferred from another district per (circle one) FRCrP 20, 21 or 40. Show District

☐ this is a reprosecution of charges previously dismissed which were dismissed on motion of:
☐ U.S. Atty   ☐ Defense

☐ this prosecution relates to a pending case involving this same defendant. (Notice of Related Case must still be filed with the Clerk.)

☒ prior proceedings or appearance(s) before U.S. Magistrate Judge regarding this defendant were recorded under

SHOW DOCKET NO.

MAG. JUDGE CASE NO.
16-MJ-276-LDA

Place of offense   RHODE ISLAND   County

Issue:   ☐ Warrant   ☐ Summons

Location Status:
Arrest Date 11/4/2016   or Date Transferred to Federal Custody ___

☒ Currently in Federal Custody
☐ Currently in State Custody
   ☐ Writ Required
☐ Currently on bond
☐ Fugitive

Defense Counsel (if any): Olin Thompson

☒ FPD   ☐ CJA   ☐ RET'D
☐ Appointed on Target Letter

☒ This report amends AO 257 previously submitted

| OFFENSE CHARGED - U.S.C. CITATION - STATUTORY MAXIMUM PENALTIES - ADDITIONAL INFORMATION OR COMMENTS |
|---|

Total # of Counts 9

| Set | Title & Section/Offense Level (Petty = 1 / Misdemeanor = 3 / Felony = 4) | Description of Offense Charged | Felony/Misd. |
|---|---|---|---|
| 1- 9 | See Attached Sheet | See Attached Sheet | ☒ Felony ☐ Misdemeanor |
| | | | ☐ Felony ☐ Misdemeanor |
| | | | ☐ Felony ☐ Misdemeanor |
| | | | ☐ Felony ☐ Misdemeanor |
| | | Estimated Trial Days: 4 to 10 | ☐ Felony ☐ Misdemeanor |

21

<u>United States v. Jay Gaccione</u>
INDICTMENT COVER SHEET ATTACHMENT

Counts 1-6:        (Sexual Exploitation of a Minor, 18 U.S.C. § 2251(a))

                 MAX PENALTY FOR EACH COUNT

                 a. Mandatory minimum 15 years, Maximum 30 years imprisonment;
                 b. $250,000 fine;
                 c. Mandatory minimum 5 years to life supervised release; and
                 d. $100 special assessment plus $5000 if not indigent (18 U.S.C. § 3014).

Count 7:        (Distribution of Child Pornography, 18 U.S.C. §§ 2252(a)(2) and (b))

                 MAX PENALTY FOR EACH COUNT

                 a. Mandatory minimum 5 years, Maximum 20 years imprisonment;
                 b. $250,000 fine;
                 c. Mandatory minimum 5 years to life supervised release; and
                 e. $100 special assessment plus $5000 if not indigent (18 U.S.C. § 3014).

Counts 8-9:        (Possession of Child Pornography, 18 U.S.C. §§ 2252(a)(4)(B))

                 MAX PENALTY FOR EACH COUNT

                 d. Maximum 20 years imprisonment;
                 e. $250,000 fine;
                 f. Mandatory minimum 5 years to life supervised release; and
                 f. $100 special assessment plus $5000 if not indigent (18 U.S.C. § 3014).

1          IN THE UNITED STATES DISTRICT COURT

2          FOR THE DISTRICT OF RHODE ISLAND

3

4
   * * * * * * * * * * * * * * *    C.R. NO. 17-004-JJM
5                                *
   UNITED STATES OF AMERICA      *
6                                *
      VS.                        *    NOVEMBER 13, 2018
7                                *    3:00 P.M.
   JAY GACCIONE                  *
8                                *
   * * * * * * * * * * * * * * *    PROVIDENCE, RI
9

10          BEFORE THE HONORABLE JOHN J. McCONNELL, JR.,

11                    DISTRICT JUDGE

12               (Change of Plea Hearing)

13

14
   APPEARANCES:
15
   FOR THE GOVERNMENT:    DENISE M. BARTON, AUSA
16                         U.S. Attorney's Office
                           50 Kennedy Plaza
17                         Providence, RI  02903

18   FOR THE DEFENDANT:    KEVIN J. FITZGERALD, ESQ.
                           Federal Defender's Office
19                         10 Weybosset Street
                           Providence, RI  02903
20
   Court Reporter:        Karen M. Wischnowsky, RPR-RMR-CRR
21                         One Exchange Terrace
                           Providence, RI  02903
22

23

24

25

1    13 NOVEMBER 2018 -- 3:00 P.M.

2            THE COURT:  Good afternoon, everyone.  We're

3    here this afternoon for a change of plea in the case of

4    the United States versus Jay Gaccione, Criminal Action

5    17-04.

6            Would counsel identify themselves for the

7    record.

8            MS. BARTON:  Good afternoon, your Honor.  Denise

9    Marie Barton on behalf of the United States.

10            THE COURT:  Good morning, Ms. Barton.

11            MR. FITZGERALD:  Kevin Fitzgerald for

12    Mr. Gaccione.

13            THE COURT:  Good afternoon, Mr. Fitzgerald.

14            Good afternoon, Mr. Gaccione.

15            THE DEFENDANT:  Good afternoon.

16            THE COURT:  Would you remain standing, and

17    Ms. McGuire is going to swear you in.

18            (Defendant sworn)

19            THE CLERK:  Please state your name for the

20    record and spell your last name.

21            THE DEFENDANT:  Jay Stephen Gaccione,

22    G-A-C-C-I-O-N-E.

23            THE COURT:  Mr. Gaccione, you're now under oath,

24    and that requires you to give me truthful answers to

25    the questions I ask.  Do you understand that?

1          THE DEFENDANT:  Yes.  Sorry.

2          THE COURT:  That's okay.  Thanks.  And if you

3    fail to give me truthful answers, that further charges

4    could be brought against you, like perjury or giving a

5    false statement or other charges.  Do you understand

6    that as well?

7          THE DEFENDANT:  Yes.

8          THE COURT:  And if I ask you a question that you

9    don't understand, just ask me to explain it further,

10   and I'd be glad to try to.  And if at any time, even

11   before answering a question, you want to discuss any

12   matter with your attorney, you let me know and you'll

13   be given that opportunity.  Okay?

14         THE DEFENDANT:  Thank you.

15         THE COURT:  Now, Mr. Fitzgerald, there is no

16   plea agreement; is that correct?

17         MR. FITZGERALD:  That's correct, your Honor.

18         THE COURT:  Mr. Gaccione, how old are you, sir?

19         THE DEFENDANT:  Forty-one.

20         THE COURT:  And how far did you go in school?

21         THE DEFENDANT:  Maybe ninth.

22         THE COURT:  And have you been treated recently

23   for mental illness or addiction to narcotic drugs?

24         THE DEFENDANT:  Post-traumatic stress disorder,

25   bipolar, depression; and there's one other thing, but

1    I'm not sure what they named it.

2    　　　　THE COURT:  Okay.  We can either talk about

3    these individually or collectively, but when's the last

4    time that you received treatment for any or all of

5    those conditions?

6    　　　　THE DEFENDANT:  I'm still doing it now.

7    　　　　THE COURT:  Okay.  What kind of treatment are

8    you receiving?

9    　　　　THE DEFENDANT:  Medication, therapy, and a

10   psyche doctor or something like that.  I have two

11   doctors that come and I talk to, like one for therapy,

12   one's to give me medication and stuff.

13   　　　　THE COURT:  So you probably see a psychiatrist

14   and a psychologist?

15   　　　　THE DEFENDANT:  Exactly.  Yup.

16   　　　　THE COURT:  As you sit here today, are you under

17   the influence of any drugs, medication or alcoholic

18   beverages of any kind?

19   　　　　THE DEFENDANT:  No alcohol.  I just -- I had

20   medication for, like, diabetes, and I took medication

21   for mental health.  Yeah.

22   　　　　THE COURT:  Do you know what medicines that you

23   take for mental health?

24   　　　　THE DEFENDANT:  No.  I take like 12 pills.  I

25   don't know the names.

1      THE COURT:  How often do you take those pills?

2      THE DEFENDANT:  In the morning I take them, and

3  at nighttime I take them.

4      THE COURT:  And are those for the PTSD and the

5  bipolar and depression and whatnot?

6      THE DEFENDANT:  Yes, sir, and the diabetes.

7      THE COURT:  And the diabetes.  And,

8  Mr. Gaccione, do you take those -- when's the last time

9  you took those, this morning?

10      THE DEFENDANT:  Yes, sir.

11      THE COURT:  Okay.  And do you know whether any

12  of those medications affect your ability to think

13  clearly?

14      THE DEFENDANT:  They actually make me think

15  better.

16      THE COURT:  And so this morning do you feel

17  groggy or cloudy or --

18      THE DEFENDANT:  I'm okay.

19      THE COURT:  And you feel like your brain's

20  working just fine?

21      THE DEFENDANT:  Yes, sir.

22      THE COURT:  And you feel comfortable that you

23  can make decisions that are in your best interest

24  today?

25      THE DEFENDANT:  Yes, sir.

1          THE COURT:  Okay.  Now, have you received a copy

2     of the Indictment?  That's the written charges that the

3     Government has brought against you in this case.

4          THE DEFENDANT:  Right here.

5          THE COURT:  And did you discuss the Indictment

6     and the consequences of the Indictment with your

7     attorney?

8          THE DEFENDANT:  We did, yeah, just a few minutes

9     ago.  Yup.  Oh, before that.  I'm sorry.

10          THE COURT:  So you've met with Mr. Fitzgerald a

11     few times?

12          THE DEFENDANT:  Yes, sir.

13          THE COURT:  And you've talked about all of your

14     options and the consequences of the Indictment and

15     whatnot?

16          THE DEFENDANT:  Yes, sir.

17          THE COURT:  And are you fully satisfied with the

18     representation that you've received from Mr. Fitzgerald

19     in this case?

20          THE DEFENDANT:  Yes, sir.

21          THE COURT:  Now, before I ask you about your

22     change of plea, I need to explain to you that you have

23     certain rights under the laws and Constitution of this

24     country and that you'll give up these rights if you

25     change your plea to guilty.

1          So one right you never give up, and that's the

2    right to counsel; and the Court will appoint counsel

3    for you throughout all of the proceedings.  That would

4    be pretrial like we're in now, any trial that would

5    proceed from that, any post-trial matters and any

6    appeal from that.

7          The Court would appoint counsel for you

8    throughout all of those proceedings.  That's a right

9    you never lose, but the rights you to lose are as

10   follows:  First of all, you have a right to continue to

11   plead not guilty as you have so far in this case, and

12   you can continue in that plea throughout all of the

13   proceedings.

14         If you were to continue to plead not guilty,

15   you'd be entitled to a trial by a jury.  At that trial

16   you'd be presumed to be innocent and the Government

17   would have to prove each and every element of the

18   charges it brings against you beyond a reasonable

19   doubt.

20         You'd have a right to see and hear, have your

21   lawyer cross-examine all of the evidence and the

22   witnesses that the Government would put on in order to

23   prove its case against you.

24         Also at that trial you would have a right to put

25   on a defense.  In fact, you could subpoena people,

1    require them to come to court and testify in your

2    defense.

3         You'd also have a right at that trial to

4    testify; but perhaps more importantly, you would not

5    have to testify at that trial, and no one could make

6    you testify.  And if you chose not to testify, that

7    fact could not be used against you in any way by the

8    jury or the Court.

9         But if you change your plea to guilty today,

10   you're going to give up all of these rights and there

11   will be no trial.

12        Do you understand, Mr. Gaccione, that you have

13   these rights and that if you change your plea to guilty

14   you'll give up these rights?

15        THE DEFENDANT:  Yes, I do.

16        THE COURT:  Has anyone in any way attempted to

17   force you to plead guilty or threatened you in any way

18   to get you to plead guilty?

19        THE DEFENDANT:  No, sir.

20        THE COURT:  Has anyone made any promises or

21   assurances to you in order to get you to plead guilty

22   today?

23        THE DEFENDANT:  No, sir.

24        THE COURT:  So are you knowingly and voluntarily

25   changing your plea now because you've determined it's

1    in your best interest at this time to do so?

2            THE DEFENDANT:  Yes, sir.

3            THE COURT:  Now, there are eight counts, I

4    understand, that you're here to plead guilty to; and I

5    need to explain to you the maximum penalties and the

6    minimum penalties as to each of them.

7            Certain of the counts we can group together

8    because they have the same minimum and maximum

9    sentences.  That's Counts I, II, III, V and VI.  Okay.

10   Those five counts, I, II, III, V and VI, have a

11   mandatory minimum of 15 years and a maximum period of

12   incarceration of 30 years per count.

13           They also each have a maximum fine of $250,000.

14   They each have a minimum of five years of supervised

15   release, up to a lifetime of supervised release.  Each

16   one of them carry a $100 mandatory special assessment

17   and also carry with it the special assessment of $5,000

18   per count.

19           As to Count VII, the maximum period of

20   imprisonment is 20 years with the minimum being five

21   years.  The maximum fine is $250,000.  There's a

22   five-year minimum period of supervised release, up to a

23   lifetime, and again a $100 mandatory special assessment

24   and the $500 special assessment for this count.

25           As to Counts VIII and IX, each of those carry

1     with it a maximum period of imprisonment of 20 years.

2     Each carry with it a $250,000 fine, again five years

3     minimum up to a lifetime of supervised release, and

4     each one of those carry with it a $100 mandatory

5     special assessment and the $5,000 per count special

6     assessment.

7          Now, as to the eight counts, if the Court were

8     to require that you serve the maximum sentence and that

9     they be served consecutively, that means one after the

10    other, then the maximum term of imprisonment is 210

11    years.  The maximum fine is $2 million.  There will be

12    a mandatory -- up to lifetime supervised release with a

13    mandatory of five years, and there will be an $800

14    special assessment and a $40,000 special assessment

15    because of these counts.

16         Do you understand, first of all, that these are

17    the maximum sentences that the Court could impose at

18    the time of sentence?

19         THE DEFENDANT:  Yes, sir.

20         THE COURT:  Do you also understand that the

21    Court will be required to impose at least 15 years as a

22    minimum amount of prison time?  Do you understand that

23    as well?

24         THE DEFENDANT:  Yes, sir.

25         THE COURT:  And do you understand that as part

1    of supervised release, that if you violate any of the

2    conditions of supervised release, further prison time

3    can be brought upon you?  Do you understand that as

4    well?

5            THE DEFENDANT:  Yes, sir.

6            THE COURT:  And, Mr. Gaccione, are you a U.S.

7    citizen?

8            THE DEFENDANT:  Yes.

9            THE COURT:  As a U.S. citizen, you have certain

10   valuable civil rights that you could lose by pleading

11   guilty to these felonies.  You could lose the right to

12   vote, the right to hold public office, the right to

13   serve on a jury and the right to possess any kind of

14   firearm or ammunition.

15           Do you understand you could lose these valuable

16   civil rights if you plead guilty to these felonies?

17           THE DEFENDANT:  Yes.

18           THE COURT:  Ms. Barton, are there any forfeiture

19   allegations?

20           MS. BARTON:  There is a general forfeiture

21   allegation, your Honor.

22           THE COURT:  There are general forfeiture

23   allegations?

24           MS. BARTON:  Yes.

25           THE COURT:  Mr. Gaccione, there are forfeiture

1    allegations contained in the Indictment.  Did you

2    discuss the forfeiture allegations in the Indictment

3    with your attorney?

4              (Defendant confers with counsel)

5              THE DEFENDANT:  Yes.

6              THE COURT:  And do you understand that by

7    pleading guilty today you waive any right to challenge

8    the forfeiture allegations that are contained in the

9    Indictment?  Do you understand that as well?

10             THE DEFENDANT:  Yes, sir.

11             THE COURT:  Now, Mr. Gaccione, I want to make

12   sure you understand how the Court would go about

13   determining what an appropriate -- what the sentence

14   will be in your case.

15             At some point after this hearing, probation will

16   come out to the Wyatt and meet with you and conduct an

17   interview.  You have a right to have your attorney

18   present with you for that interview, and I encourage

19   you to make sure Mr. Fitzgerald or someone from his

20   office is with you for that interview.

21             After they conduct the interview, they'll do a

22   further investigation in order to prepare the

23   presentence report.  That's a report that will give me

24   a lot of information about your background, the crime,

25   any criminal history and other material that will be

1      relevant at the time of sentencing.

2              It will also calculate the advisory guideline

3      range.  Those are guidelines that help the Court

4      determine an appropriate sentence.

5              Now, I don't know what the guideline range will

6      be in your case.  Your lawyer might have calculated

7      what he believes it will be or the Government may have

8      calculated what she believes it will be and told your

9      lawyer and he told you or you may have calculated it on

10     your own.

11             None of that's binding on the Court.  I won't

12     determine the guideline range until after the

13     presentence report is issued, both lawyers have a

14     chance to object to it and I rule on those objections,

15     and at the time of sentencing I'll determine the

16     guideline range.

17             Do you understand as we sit here today the Court

18     has not determined what the guideline range will be in

19     your case?

20             THE DEFENDANT:  Yes, sir.

21             THE COURT:  And the Court can impose a sentence

22     that's above the guideline range, as high as the

23     maximum sentence.  Do you understand that as well?

24             THE DEFENDANT:  Yes, sir.

25             THE COURT:  Or the Court can impose a sentence

1    that's below the guideline range but never below the

2    mandatory 15 years.  Do you understand that as well?

3              THE DEFENDANT:  Yes, sir.

4              THE COURT:  Do you also understand,

5    Mr. Gaccione, that in the federal system parole has

6    been abolished; that is, in the federal system, there's

7    no right as we sit here today to apply for parole?  Do

8    you understand that as well?

9              THE DEFENDANT:  Yes, sir.

10             THE COURT:  Okay.  I'm going to ask Ms. Barton

11   now to tell us what the elements of the eight counts

12   are that the Government has brought against you and

13   then to tell us what facts the Government would prove

14   if this case were to go to trial.

15             I want you to pay particular attention to the

16   facts because at the end of it, I'm going to ask if you

17   admit the facts as stated by the Government as true.

18   Okay?

19             THE DEFENDANT:  Yes, sir.

20             THE COURT:  Ms. Barton.

21             MS. BARTON:  Your Honor, as to Counts I, II,

22   III, V and VI, the charges of 18 U.S.C. 2251(a), sexual

23   exploitation of a minor, the four elements of that

24   offense are, first, that the Defendant employed, used,

25   persuaded, induced, enticed or coerced a minor victim

1   to engage in sexually explicit conduct; second, at the

2   time the minor victim or the victim was under the age

3   of 18; third, the Defendant acted with a purpose of

4   producing a visual depiction of such conduct; and

5   fourth, the visual depiction was produced or

6   transmitted using materials that have been mailed,

7   shipped or transported in or affecting interstate or

8   foreign commerce by any means, including computer.

9        The term "sexually explicit conduct" includes

10  the following actual or simulated acts:  Sexual

11  intercourse, including oral-genital, masturbation or

12  lascivious exhibition of the genitals or pubic area of

13  any person.

14       As to Counts I through III and V, which are four

15  of the five sexual exploitation of a minor counts to

16  which the Defendant is pleading, the United States

17  would present evidence that the Defendant, Jay

18  Gaccione, caused Minor Victim Number 1, who is his

19  daughter, to engage in sexually explicit conduct,

20  specifically the lascivious exhibition of her genitals

21  or pubic area, and that he photographed it on four

22  different dates:  April 16th, 2014; May 10th, 2014;

23  July 21, 2014; and October 13th, 2015.

24       The evidence would also show that Minor Victim

25  Number 1 was between the ages of 12 and 14 years old on

1    these dates.

2         Specifically, and in summary, your Honor, as to

3    Count I, on or about April 16th, 2014, the Defendant

4    took photographs of Minor Victim 1 in various stages of

5    undress.  One of those images depicts a close-up image

6    of her vagina, and the other depicts a close-up image

7    of her anus and vagina.

8         As to Count II, on or about May 10th, 2014, the

9    Defendant took three sexually explicit images of Minor

10   Victim Number 1.  One image shows her pulling her pants

11   down and showing her vaginal area, and two images show

12   her touching and inserting her fingers in her vagina.

13        As to Count III, on or about July 21, 2014, the

14   Defendant took a photograph of Minor Victim Number 1 in

15   which she is pulling her underpants aside and exposing

16   her vagina.

17        As to Count V, on or about October 13th, 2015,

18   the Defendant took photographs of Minor Victim Number 1

19   again in various stages of undress.  In one of those

20   images, she is standing up, pulling her pants down and

21   exposing her vagina.

22        As to Count VI, the last sexual exploitation of

23   a minor count to which the Defendant is pleading, the

24   United States would present evidence that on or about

25   April 24th, 2016, when his daughter was 14 years old,

1    the Defendant, Jay Gaccione, caused her to engage in

2    sexually explicit conduct and photographed and videoed

3    it.

4         Specifically, on that date he photographed her

5    orally copulating him, and he videoed the lascivious

6    exhibition of her anus and vagina; and during the

7    filming, he directed her to masturbate.

8         The images and video described previously were

9    produced on materials that had been mailed, shipped or

10   transported in or affecting interstate or foreign

11   commerce.  Specifically, the micro SD card containing

12   the images alleged in Counts I through III and the

13   other micro SD card containing the images alleged in

14   Count V -- the images and video alleged in Counts V and

15   VI were both produced in China.

16        Would your Honor like me to continue with the

17   other count?

18        As to Count VII, your Honor, charging

19   distribution of child pornography in violation of

20   18 U.S.C. 2252(a)(2), the first element of that offense

21   is that the Defendant knowingly distributed a visual

22   depiction; second, the Defendant knew the visual

23   depiction was of or showed a minor engaging in sexually

24   explicit conduct; and three, the visual depiction was

25   shipped or transported using any means or facility of

1    interstate or foreign commerce or was shipped or

2    transported in or affecting interstate or foreign

3    commerce or contains materials which have been so

4    shipped, including by computer.

5         As to Count VII, the United States would produce

6    evidence that on or about April 29th, 2016, the

7    Defendant was communicating via Gmail and Sprint

8    messaging service with an individual who was in South

9    Africa.

10        On that date, that individual in South Africa

11   told the Defendant that he had images of his three- and

12   five-year-old children and would trade for like value;

13   and after sending those images to the Defendant, they

14   discussed sexual aspects of the images sent to the

15   Defendant.

16        Thereafter, the Defendant told that individual

17   that he had images of his 15-year-old daughter, who was

18   actually 14, and he sent six images to that individual

19   in South Africa.

20        Counts XIII and IX allege violation of Title 18

21   United States Code 2252(a)(4)(B), possession of child

22   pornography.  The first of four elements of that

23   offense are that the Defendant knowingly possessed any

24   computer, computer storage medium or matter which the

25   Defendant knew contained a visual depiction of a minor

1  engaged in sexually explicit conduct; second, the

2  Defendant knew the visual depiction contained in the

3  storage medium was of or showed a minor engaged in

4  sexually explicit conduct; third, the Defendant knew

5  that the production of the visual depiction involved

6  the use of a minor engaged in sexually explicit

7  conduct; and fourth, the child pornography had been

8  mailed, shipped or transported using any means or

9  facility of interstate or foreign commerce or in or

10  affecting interstate or foreign commerce, including by

11  computer, or was produced using materials which had

12  been so mailed or so shipped.

13       As to Counts XIII and IX, the United States

14  would present evidence that the Defendant knowingly

15  possessed visual depictions of images and a video of a

16  person he knew to be a minor, his daughter, engaged in

17  sexually explicit conduct, including the images

18  described previously, and that those images were

19  produced using materials that had been mailed or

20  shipped or transported in interstate or foreign

21  commerce, specifically SD cards that had been

22  manufactured in and shipped from China.

23       Count VIII involves possession from a date not

24  later than April 16th, 2014, through November 4th,

25  2016, on an SD card, serial number ending XDAP.

1          Count IX involves possession from a date not

2     later than October 25th, 2015, and continuing through

3     November 4th, 2016, on an SD card with a serial

4     number -- sorry.  I apologize, your Honor.

5          As to Count VIII, the serial number actually

6     ended CABE.  The serial card, SD card for Count IX ends

7     in XDAP.  And that's it, your Honor.

8          THE COURT:  Thanks, Ms. Barton.

9          Mr. Gaccione, you heard the elements of the

10     eight counts that the Government has brought against

11     you.  I'd again remind you they'd have to prove each

12     and every one of those elements beyond a reasonable

13     doubt for you to be found guilty of any or all of those

14     counts.

15          You also heard the facts the Government would

16     prove if this case were to go to trial.  Do you admit

17     the facts as stated by the Government as true?

18          THE DEFENDANT:  Yes.

19          THE COURT:  Before I ask you about your change

20     of plea, Mr. Gaccione, do you have any questions for

21     the Court or do you want to confer with your attorney

22     about any matter?

23          THE DEFENDANT:  Just one thing.

24          THE COURT:  Sure.

25          (Defendant confers with counsel)

1    THE DEFENDANT:  I just wanted to say one thing.

2    She said that I sent pictures of my daughter to someone

3    in Africa or something like that.  I never sent any

4    pictures of her.  It was pictures of, you know, other

5    kids off the internet.

6    THE COURT:  I don't think, Ms. Barton, that that

7    change in facts would affect the elements of Count VII,

8    which is what Mr. Gaccione's referring to.  Is that

9    correct?

10    MS. BARTON:  Could I have a moment, your Honor?

11    THE COURT:  Sure.

12    (Pause)

13    MS. BARTON:  Your Honor, I think the charge

14    alleges that it was sent I believe on or about

15    April 29th.  What the evidence showed, in part

16    because of Mr. Gaccione's Mirandized interview, was

17    that Mr. Gaccione was communicating with members of

18    a -- I'm giving you the explanation because I think the

19    answer to your question is yes, I think it does matter,

20    and this is why.

21    Mr. Gaccione was communicating with members of

22    an online bulletin board, for lack of a better

23    description, of child pornographers who would upload

24    images and exchange images.

25    Mr. Gaccione admitted when he was interviewed by

1    agents that he had uploaded some images or shared

2    images.  I don't know if it was an upload or share; but

3    in any event, he shared images and represented to the

4    community that these were images of his children.

5         And the members of the community effectively

6    called him out and called him on his BS; and they said

7    no, these are known images.  Like, we know these aren't

8    your kids.

9         So what Mr. Gaccione admitted when he was

10   interviewed by agents on the day of his arrest was that

11   he began taking pictures of his daughter to share with

12   members of the bulletin board, that he took pictures of

13   her chest and vagina, and he said that he sent them to

14   another individual.

15        We have the communications going back and forth

16   between him and this South African individual, Mr. Kahn

17   Burn, who was picked up as part of a Homeland Security

18   investigation in Pretoria, where we have six images

19   that were sent by Mr. Gaccione to Mr. Burn on that

20   date, and it was after he had represented that he was

21   sending images of his daughter.

22        So those are the images that we are charging.

23   There were other images that Mr. Gaccione, and I

24   believe those are the images that he's referring to,

25   did, in fact, send to other members of the community

1    that were random, for lack of a better word, images of

2    child pornography not involving his child.

3         So as charged, we're referring to six -- was it

4    six or three?  Six images that were sent on April 29th.

5         THE COURT:  Right, but --

6         MS. BARTON:  I don't know the date of the other

7    upload.  It could have been April 29th.  It could have

8    been April 30th.  I suppose, your Honor, the "on or

9    about" might give some flexibility --

10         THE COURT:  But also if Mr. Gaccione is willing

11    to admit that on April 29th he distributed via the

12    internet photographs of a minor that meet the elements

13    of child pornography, I don't have them handy here, but

14    meet those elements, for purposes of change of plea,

15    the identity of the minor is irrelevant, isn't it?

16         MS. BARTON:  I think it could be for this, your

17    Honor.  I do, however, just want to relay to

18    Mr. Gaccione and to the Court that I do think this

19    calls into question whether or not there would be

20    acceptance of responsibility when the guidelines are

21    calculated because this goes directly opposite to

22    something that Mr. Gaccione said in a recorded

23    interview.

24         THE COURT:  Let me hear from Mr. Fitzgerald.

25         MS. BARTON:  So I do think that is an issue.

1          MR. FITZGERALD:  Well, the identity of the

2     person in the picture is not an element of the charge,

3     your Honor.  That's something we can handle.  I think

4     you can take the plea based on what he's admitted to

5     today.

6          As far as whether or not the Government thinks

7     he's accepting responsibility, that's up to the Court

8     at sentencing.  And, unfortunately, the guideline range

9     is going to be so high that I'm not sure that makes

10    much of a difference, but if the Government -- I

11    certainly could talk to Ms. Barrett after today and --

12         THE COURT:  Barton.

13         MR. FITZGERALD:  Excuse me?

14         THE COURT:  Barton.

15         MR. FITZGERALD:  Barton.  I'm sorry.  After

16    today and perhaps clear this up.

17         THE COURT:  I actually think that this issue can

18    be postponed until the time of sentencing because, as I

19    did my little checklist as you were reading the facts

20    and from what I understand Mr. Gaccione is willing to

21    admit to, that he is willing to admit to all of the

22    facts sufficient to meet each and every one of the

23    elements of the charge even though he's now disputing

24    the identity of the child in the photographs on

25    April 29th.  So I think we can leave that part for

1    another date.

2              MS. BARTON:  Okay.

3              THE COURT:  So why don't you both have a seat.

4              Mr. Gaccione, let me ask you this if you can

5    follow it.  As you have amended the facts that

6    Ms. Barton stated, as you have amended the facts as she

7    stated, do you admit to those facts as Ms. Barton

8    stated as you've amended?

9              THE DEFENDANT:  Yes.

10             THE COURT:  And let me ask you one more time, do

11   you -- are there any other matters that you want to

12   discuss with your attorney?

13             THE DEFENDANT:  No.  I'm okay.

14             THE COURT:  Or have any questions for the Court?

15             THE DEFENDANT:  All set.

16             THE COURT:  Okay.  How do you now plead to the

17   eight counts, Counts I, II, III, V, VI, VII, VIII and

18   IX, contained in the Indictment, guilty or not guilty?

19             THE DEFENDANT:  Guilty.

20             THE COURT:  This Court has heard from the

21   Government the evidence it would present if this matter

22   were to go to trial.  The Court has questioned the

23   Defendant regarding his understanding of the nature of

24   these proceedings and the consequences of entering a

25   plea of guilty to the charge.

1      It is, therefore, the finding of this Court in

2    the case of the United States versus Jay Gaccione that

3    the Defendant is capable -- fully capable and competent

4    to enter an informed plea, that the Defendant is aware

5    of the nature of the proceedings and the consequences

6    of the plea and that the plea of guilty is a knowing

7    and voluntary plea supported by an independent basis in

8    fact containing each of the essential elements of each

9    of the charges; and, therefore, the plea is accepted,

10   and the Defendant is now adjudged guilty of those

11   offenses.

12      Sentencing will be set down for February 20th,

13   2019, at 11 a.m.

14      Ms. Barton, anything further for the Government?

15      MS. BARTON:  Nothing, your Honor.

16      THE COURT:  Mr. Fitzgerald, anything further for

17   Mr. Gaccione?

18      MR. FITZGERALD:  Nothing today, your Honor.

19   Thank you.

20      THE COURT:  Great.  Thanks.  We'll stand

21   adjourned, folks.

22      THE DEFENDANT:  Thank you.

23      (Adjourned)

24

25                      * * * * * * * *

1                 C E R T I F I C A T I O N

2

3

4         I, Karen M. Wischnowsky, RPR-RMR-CRR, do

5 hereby certify that the foregoing pages are a true and

6 accurate transcription of my stenographic notes in the

7 above-entitled case.

8

9          October 18, 2019

10 Date

11

12

13 /s/ Karen M. Wischnowsky_____

14 Karen M. Wischnowsky, RPR-RMR-CRR
Federal Official Court Reporter

15

16

17

18

19

20

21

22

23

24

25

1

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

```
- - - - - - - - - - - - - - -X
 UNITED STATES OF AMERICA,   :  17-CR-0004(JJM)
                             :
                             :
                             :
                             :
    vs.                      :  United States Courthouse
                             :  Providence, Rhode Island
                             :
                             :
                             :
 JAY GACCIONE,               :  Friday, June 28, 2019
         Defendant.          :
                             :

- - - - - - - - - - - - - - -X
```

TRANSCRIPT OF CRIMINAL CAUSE FOR SENTENCING
BEFORE THE HONORABLE JOHN J. MCCONNELL, JR.
UNITED STATES DISTRICT COURT JUDGE

A P P E A R A N C E S :

For the Government:   DENISE M. BARTON, AUSA
                      U.S. Attorney's Office
                      50 Kennedy Plaza, 8th Floor
                      Providence, RI  02903

For the Defendant:    KEVIN J. FITZGERALD, AFPD
                      FEDERAL DEFENDER'S OFFICE
                      10 Weybosset Street, Suite 300
                      Providence, Rhode Island  02903


Court Reporter:  Lisa Schwam, CSR, CRR, RPR, RMR
                 One Exchange Terrace
                 Providence, RI  02903


Proceedings recorded by computerized stenography.  Transcript
produced by Computer-Aided Transcription.

1          (In open court; 10:16 a.m.)

2          THE COURT:  Good afternoon, everyone.  We're

3     here this morning -- I'm sorry.  Good morning,

4     everyone.  We're here this morning for sentencing in

5     the case of the United States vs. Jay Gaccione, 17-4.

6          Would counsel identify themselves for the

7     record.

8          MS. BARTON:  Good morning, your Honor.  Denise

9     Marie Barton for the United States.

10          THE COURT:  Good morning, Ms. Barton.

11          MR. FITZGERALD:  Kevin Fitzgerald for Mr.

12     Gaccione.

13          THE COURT:  Good morning, Mr. Fitzgerald.  Mr.

14     Gaccione.

15          THE DEFENDANT:  Good morning.

16          THE COURT:  Mr. Gaccione, did you receive a copy

17     of the presentence report that the probation department

18     issued?

19          THE DEFENDANT:  Yes, I did.

20          THE COURT:  Did you review that with your

21     lawyer?

22          THE DEFENDANT:  Yes.

23          THE COURT:  Did he answer any questions that you

24     had about that?

25          THE DEFENDANT:  Yes.

1          THE COURT:  How we're going to proceed this

2     morning, I'm going to review the calculation of the

3     guideline range.  We'll go through that.  I'll see if

4     there's any objections to that or the presentence

5     report.  If there are, I will rule on them.

6          The government will then make its sentencing

7     recommendation.  I understand from my clerk that there

8     may be a victim statement?

9          MS. BARTON:  Yes, your Honor.

10          THE COURT:  Okay.  Your lawyer will then be able

11     to make his sentencing recommendation.  You'll be

12     allowed to speak if you choose to.  You don't have to.

13     It's purely up to you.

14          And then I'll get on with the sentence, okay?

15          THE DEFENDANT:  Thank you.

16          MR. FITZGERALD:  Thank you.

17          THE COURT:  The guidelines are complicated, and

18     I rely on those as presented in the presentence report,

19     but let me summarize them as best I can.

20          Counts Seven, Eight and Nine, which have to do

21     with distribution and possession of child pornography

22     carries with it a base offense level of 22.  There's a

23     five-point increase because the distribution involved

24     consideration; that is, there was payment or other

25     consideration for the distribution.  There's five

4

1    points added because the pattern of activity involved

2    sexual abuse or exploitation of a minor.  There's two

3    points added for the use of a computer.  There's two

4    points added because of the number of images involved,

5    for an adjusted offense level of 36.

6         Count One, which is the sexual exploitation of a

7    minor, carries with it a base offense level of 32.

8    There are two points added because the age of the minor

9    was between 12 and 16.  There are two points added

10   because the defendant admitted to engaging in sexual

11   intercourse with Minor Victim #1.  There are two points

12   added because the distribution was raised to the level

13   of knowing distribution.  There are two points added

14   because the defendant is the father of the Minor Victim

15   #1, for an adjusted offense level of 40.

16        That's the same guideline calculation for Count

17   Two, Count Three, Count Five, Count Six.  Because there

18   are multiple counts, the multiple-count adjustment has

19   six units for the counts which adds five points for a

20   combined offense level of 45.  And a Chapter 4

21   enhancement because the defendant is a repeat and

22   dangerous sex offender against minors, five points are

23   added for a total offense level of 50.  There are three

24   points -- I assume the government wishes to make a

25   motion on the third point?

1          MS. BARTON:  Yes, your Honor.

2          THE COURT:  Three points reduction for

3    acceptance of responsibility.  And because the

4    guidelines don't allow an offense level to be greater

5    than 43, the offense level is 43.

6          Mr. Gaccione has no criminal history points and

7    therefore is a category I.  Total offense level of 43,

8    Criminal History Category I, carries with it a

9    recommended period of incarceration of 2,280 months,

10   which I believe is approximately 190 years.

11         Ms. Barton, any objection to the calculation of

12   the guidelines or to the presentence report?

13         MS. BARTON:  No objection, your Honor.

14         THE COURT:  You hesitated.

15         MS. BARTON:  Oh, the only objection -- it's not

16   objection, your Honor -- is your Honor set forth a

17   number of months of 2,280 months.  I believe that was

18   the statutory maximum period, whereas the guideline

19   chart sets forth life as the guideline range.  And that

20   was my hesitation, your Honor.

21         THE COURT:  I appreciate that.  The guideline

22   chart says life, but let me -- I'll accept that.

23         MS. BARTON:  Thank you.

24         THE COURT:  Mr. Fitzgerald, any objection to the

25   PSR or to the guideline range?

6

1        MR. FITZGERALD:  No, your Honor.

2        THE COURT:  Great.  Thank you.

3        Ms. Barton, I'll hear from the government.

4        While you're preparing, Ms. Barton, the Court in

5   addition received a sentencing memorandum from the

6   government, received one from Mr. Fitzgerald on behalf

7   of Mr. Gaccione and also received a victim's letter as

8   well.  I've considered all those, and thank you all for

9   that input.

10        Ms. Barton.

11        MS. BARTON:  Thank you, your Honor.  Your Honor,

12   let me begin by addressing the government's sentencing

13   recommendation.

14        As your Honor has seen in our memorandum, the

15   government has recommended a term of 60 years

16   imprisonment for this defendant.  It did not arrive

17   lightly at that decision, but the recommendation just

18   as easily could have been 75 years, a hundred years or

19   150 years.  The point of the government's

20   recommendation is that Mr. Gaccione serve a lifetime

21   sentence and that he never set forth out of prison.

22   This crime warrants it.

23        The information that was set forth in the

24   government's sentencing memorandum and that will be

25   discussed here in summary is difficult to hear.  What

1    the defendant did and how the victim has suffered is

2    revolting.  It was revolting to write, it was revolting

3    to learn of, and it will be revolting to discuss it

4    here.  And while I will try and discuss it as the

5    decorum of this courtroom requires, we are here because

6    the defendant raped, molested and abused his daughter

7    so I do need to speak frankly about what did happen.

8         The sentence that the government has requested

9    and that we believe is the right sentence in this case

10   must address, of course, all the 3553(a) factors, but

11   what I do not want to be lost among all of those

12   technical factors in the statute is the harm that this

13   victim has suffered.  The victim, the defendant's

14   eldest daughter, who was between 12 and 14 years at the

15   time that he repeatedly molested her, is not here

16   today.  She didn't want to come.  She didn't want to

17   see her father.

18        I've met with the victim a few times throughout

19   this investigation and during the pendency of this

20   case, and I've spoken with her mother a number of

21   times.  This victim at the time that her father

22   molested her was a young girl who was struggling

23   socially, emotionally and academically, all of which

24   was certainly known to her father.  She was a child who

25   did not have a lot of friends.  She was, for lack of a

1    better term, a bit of a social outcast.  She had at the

2    time that we met her during this investigation what she

3    called one friend.  That friend was also a bit of an

4    outcast.  She was a child who had I believe muscular

5    dystrophy and she was in a wheelchair, and she has

6    actually since passed away.

7         This child was basically an isolated child.  She

8    also was one that had some responsibilities for caring

9    for her younger brothers and sisters because her mother

10   was working full-time trying to support the family.

11   Her father took advantage of her social isolation, the

12   fact that she was somebody who struggled and the fact

13   that she had some emotional difficulties.  She also was

14   at the time on an IEP at school for several challenges

15   she had academically and emotionally.  She lived in,

16   essentially, a house of horrors for the time that her

17   father was abusing her and was taking pictures of that

18   abuse, further compounding the harm that she suffered

19   at his hands.

20        She struggled all through that time, as one

21   could clearly imagine, with just this series of

22   conflicting emotions, fear, shame, embarrassment,

23   trying to reconcile that this was her father, somebody

24   she was supposed to be able to trust and love, learn

25   from and look up to and yet he took away her childhood

1    and he abused her in simply unspeakable ways.

2          When I met with her the week after the case was

3    brought to us, this child was essentially a shell.  She

4    had an incredibly hard time talking about what was done

5    to her, what her father did, and as was provided in

6    discovery to defense counsel as well as to the

7    probation officer, you can see in the videotaped

8    interview of her, she's almost robotic and has this

9    lack of affect in the way she talks of the sex acts

10   that her father had her do and his directing her to

11   masturbate or show her genitals and breasts and the

12   other acts.

13          I met with her again on Tuesday with her mother.

14   This child only took advantage of the counseling

15   services that were offered by Day One as well as a

16   private counselor down near her home for a short period

17   of months.  It wasn't something she's ready to do.

18   Like many victims of sexual trauma, especially a child,

19   she simply hasn't come to terms with what has happened

20   to her, and she probably will not come to terms with it

21   for some period of time.  And I don't think that it is

22   disingenuous for me to say that she will never fully

23   recover.

24          I think all of us in this courtroom are

25   particularly aware over the past year from hearing of

1    sexual abuse survivor stories, some of these people

2    never recover from it.  I think it is reasonable to say

3    to this Court that this child is going to suffer the

4    scars of her father's abuse for the rest of her life.

5         In addition to stopping counseling, she

6    struggled in school in her hometown after her arrest,

7    partly because of the publicity, partly because she was

8    just struggling with what had happened to her and her

9    father was out of the house and the change in her

10   family.  She missed a lot of school.  There was truancy

11   court, and she was unable to complete coursework.

12        She changed schools and moved to go live with a

13   relative.  She was doing better for a period of time

14   but then continued to struggle, and she's dropped out

15   of school.  She is now trying to get her GED, but she's

16   struggling because this child, who is 17 years old now,

17   she can't fully read.  This defendant basically took

18   away years of her academic learning because he abused

19   her for this time, and because she was struggling

20   during this period of abuse and has been, she's not

21   been able to go to school and complete her coursework

22   which will follow her through the rest of her life.

23   She's trying, but it's exceptionally hard for her.  Her

24   mother can speak more to this.

25        What I'm trying to convey to the Court is that

1    the defendant's molestation of her and the defendant's

2    photographing of her has caused such a spiral of

3    problems for this victim, and it is something that will

4    take her years to recover from, if she ever does.  The

5    nature of this crime warrants the sentence that the

6    government has requested and warrants a life sentence,

7    whatever the Court thinks that that sentence should be.

8    The defendant's actions, although they would be equally

9    heinous or they would be heinous if they occurred on

10   one event, if there was one incident of molestation,

11   that's not what we have in this case.

12        This is a man -- so we look to his history and

13   characteristics of the defendant -- who for a period of

14   years, for approximately one time, two times per week,

15   would molest his daughter forcing her to have

16   intercourse, orally copulate him, he would do the same

17   to her, he would direct her to masturbate, he would

18   cause her to pose and show herself; acts that no child

19   should have to go through and certainly not at the

20   hands of her father.

21        There was no sign of this stopping.  What

22   stopped it was the arrival of the authorities in the

23   execution of that search warrant at that house of

24   horrors.  This defendant is a danger to society.  We

25   know that he abused his daughter.  We saw the pictures.

1    We heard her statement, and we have his admission.

2        We also know that this defendant is a danger to

3    society and is a risk to children.  Although it is

4    secondary to the harm that he caused to his daughter,

5    what cannot be forgotten by this Court in sentencing is

6    that we came to this case because he was tied up in an

7    investigation involving another target in South Africa.

8        In the PSR, there is transcription or statements

9    of the chats that transpired between this defendant and

10   the man in South Africa.  And in those chats, the

11   defendant is talking -- and I'm obviously paraphrasing

12   here because the Court has the material -- but the

13   defendant is speaking with this man, Mr. K'An Burne, in

14   South Africa, about Mr. Burne's 3- and 5-year-old

15   children.

16       When Mr. Burne is explaining that he does engage

17   in sex acts with his toddler and preschool age

18   children, Mr. Gaccione asked him for pictures and then

19   asked him specifically if he has any with cum on it.

20   He then talks about how he is getting hot thinking

21   about how you can just do anything to any of them.

22   They then have a back and forth about these young

23   children of Mr. Burne.

24       We also have Mr. Burne sharing what he refers to

25   as the motherhood of child pornography with Mr.

1    Gaccione.  And we have Mr. Gaccione admitting in his

2    interview with law enforcement agents that he sent

3    pictures of his daughter to someone on the internet.

4         Now, I know the Court will recall that at the

5    change of plea there was some consternation by Mr.

6    Gaccione about the fact that he never sent pictures of

7    his daughter.  Whether that did or didn't happen is not

8    what's driving the government's recommendation;

9    obviously, the production charges are.

10        What we do know, however, is that Mr. Gaccione

11   admitted that he sent the pictures when he spoke to law

12   enforcement that day.  We also know that while he was

13   midterm molesting his child every week, he told her

14   that he needed to take pictures of her so that he could

15   send them to people on the internet.  We also know from

16   the chats we have with Mr. Burne and Mr. Gaccione that

17   after Mr. Gaccione refers to his 15-year-old daughter,

18   who was actually 14, that he sent six images.  And that

19   we know from the metadata on the images and from the

20   production count at Count Six, that Mr. Gaccione took

21   pictures of his daughter a mere few days before he sent

22   images to Mr. Burne.

23        I raise this to show the nature of the crime and

24   to paint a picture of who Mr. Gaccione was.  In his

25   memorandum, the defendant has taken -- made an effort,

1   and I expect he will here today, to speak to how he's

2   grown as a person and how he has shown true remorse.

3   Although I take issue with that as a matter of

4   principle, I think looking to positive steps he may

5   have taken in the last two-and-a-half years is really

6   not what should be driving the sentence. We need to

7   look at him as a person as a whole over his lifetime.

8        What we know from Mr. Gaccione's own words that

9   are in paragraph 138 of the PSR is that Mr. Gaccione

10  was violent with his family. He said that when he

11  learned of his wife's extramarital affair, he smacked

12  her. He reported that another time he assaulted her

13  until she choked up blood. The victim, when I met with

14  her on Tuesday, talked about her father having these

15  rages and hiding in a bedroom with her younger brothers

16  and sisters and talking about the monster outside.

17       In paragraph 140 during this time of apparent

18  remorse and growth, Mr. Gaccione spoke in July 2018 and

19  expressed having, quote, "vivid dreams about revenge of

20  his family," close quote. Clearly this shows a lack of

21  remorse at least as of July 2018 when he is blaming

22  somebody else for what has caused him to be in prison

23  such that he is causing -- such that he is seeking

24  revenge on his family.

25       Mr. Gaccione has reported having a challenging

1    upbringing as a child.  That still does not explain how

2    he can molest his daughter and then reach out to others

3    to seek images of children being molested and to share

4    images whether of his daughter or somebody else.  As a

5    survivor of abuse, he should have been acutely aware of

6    the harm that it inflicts and carries.

7         The defendant has also not been a model prisoner

8    as we know from the PSR in paragraph 111.  He's had

9    three disciplinary matters during his time at the

10   Wyatt.  He appears to be insolent and not responsive or

11   not engaging in the behavior he should be.  I'd like to

12   briefly respond to some of the points raised in the

13   defendant's memo.

14        The defendant makes a challenge as to the

15   double-counting in application and the driving up of

16   the numbers of the guideline calculations.  If there

17   was a legal challenge to the guidelines for the

18   defendant to make, the time to have made them was at

19   the draft PSR stage or even now.  None was made.

20        The defendant has attacked the guidelines as

21   lacking credibility.  That argument has been raised

22   time and time again over the 12 years that I've been

23   prosecuting these cases and yet the Sentencing

24   Commission has not changed the guidelines.  The Court

25   is obviously free to consider the guidelines and vary

1    upward or downward as it sees fit, but the guidelines

2    have remained the same to Count Four, the harm that is

3    occasioned by the various ways in which a crime can be

4    committed.  But all that said, this attack on the

5    guidelines is essentially a red herring.  And let me

6    explain why.

7            The defendant neglects, first at the outset,

8    that he effectively received a seven-point decrease

9    because of Chapter 5, Part A requires that when his

10   adjusted offense level reached 50, it would get dropped

11   down to 43.  So to the extent there were seven points

12   that he challenges or is upset about, there was no

13   effect to them.  As far as the challenge to the

14   specific enhancements, the defendant challenges the

15   enhancements as to computer use and the number of

16   images which would be four points.  Then he also claims

17   that the pictures are grouped separately and that

18   drives up the guidelines.

19           Well, under the grouping rules that the Court

20   went through earlier today, the distribution of child

21   pornography and the possession of child pornography

22   counts, Counts Seven, Eight and Nine, resulted in one

23   point because they were grouped as one unit, and they

24   were added to a 40-point offense level.  So all of this

25   smoke is smoke about all those challenges.

1        With respect to the challenge to grouping, the

2   grouping rules are an intentional design of the

3   guidelines and of the Sentencing Commission to address

4   the distinct harms occasioned by certain types of

5   crimes.  Production of child pornography, sex

6   exploitation of a minor is one of the crimes that the

7   Commission has specifically excluded from grouping

8   rules and provides that it will be accounted for

9   separately.  And that was done correctly in the

10   guidelines.

11        Clearly, anyone in their right mind would not

12   think that just because somebody has been molested

13   once, if they are molested two, three, four, five and

14   six times thereafter, the second through six times are

15   not a distinct harm.  So what the defendant is asking

16   you to consider is basically let's group all five times

17   where the defendant molested and photographed that

18   molestation of his daughter because whether it was one

19   time or whether it was six times, it's the same harm.

20   Not true and just completely counter to any sense of

21   decency.  And again, as a practical matter, those

22   grouping rules had very little effect on the increase

23   in the guidelines because everything was brought down

24   seven points.

25        The defendant also claims that the guidelines

1  are created in a conference room, not among

2  practitioners.  I think the judges that have sat on the

3  Sentencing Commission, including the Honorable Charles

4  Breyer, who I practiced for ten years in front of,

5  Judge Patti Saris, Justice Pryor of the Eleventh

6  Circuit, all of those judges may take issue with

7  basically being called wrong; who don't know anything

8  about the reality of sentencing and the reality of

9  crimes.  We have their input on the Sentencing

10  Commission, and they are learned practitioners who

11  understand the impact of the guidelines and the reasons

12  behind them.

13       The defendant also claims as to the victim when

14  he suggested that a lifetime sentence is not

15  appropriate that, quote, "the damage is not beyond

16  repair," end quote.  Hope and potential abound for the

17  future.  I hope hope and potential abound for this

18  child, but right now she's struggling and she has not

19  been able to move beyond this.  And she is not someone

20  who is going to recover quickly from this.

21       The defendant has also made an Eighth Amendment

22  challenge.  The case law that he cites, frankly,

23  inapposite.  The *Graham* case that he cites does not

24  deal with lifetime sentences as to child pornographers

25  who are adults when they are sentenced.  It deals with

1    a juvenile case as to lifetime sentences.

2         There also are -- it is a conflated argument, I

3    will say, in that the sentence that the government is

4    seeking is not retribution, it is not made for reasons

5    beyond punishment which is what obviously *Furman vs.*

6    *Georgia* and the other cases would obviously prohibit as

7    with the Eighth Amendment.

8         The sentence that is recommended by the

9    government is one that is made based on an interest in

10   punishing this defendant and protecting society from

11   him.  In deterring him, should he ever get out and

12   others who are like him, from committing this sort of

13   heinous atrocity on any child, but particularly their

14   own children.  And it also is so that we can seek some

15   sort of consistency in these cases.

16        In our memorandum, we set forth a number of

17   these cases that this Court, as well as Judge Smith,

18   has considered and has sentenced defendants.  It's a

19   very, very difficult task as I write up the memorandum

20   and as I consider an appropriate sentence.  I can only

21   imagine how it is to sit in your Honor's chair when

22   you're trying to decide what's worse, molesting three

23   children four times or molesting one child hundreds of

24   times?  I don't know the answer to that.  What I do

25   know is that each of those sentences warrants a life

1    sentence because Mr. Gaccione is a monster.  He is a

2    monster who chose to take away his daughter's childhood

3    and to scar her forever.  And he is a monster who

4    risked -- who presents a risk to others based on what

5    we know about him.  And he is somebody who should never

6    ever walk out of the doors of a prison again.

7              At this point I ask if -- can I check and

8    see --

9              (Brief pause)

10             MS. GACCIONE:  Hi.

11             THE COURT:  Good morning.  How are you?

12             MS. GACCIONE:  Good morning.  How are you?

13             THE COURT:  Good, thank you.

14             MS. GACCIONE:  I'm writing this letter on behalf

15   of myself and my daughter J██████ for what the crimes Jay

16   Gaccione has impacted our life.  For J█████, not only

17   did he take away her childhood, he took away her

18   education.  She can hardly read, write, spell, et

19   cetera.  He took away that special thing she should

20   have shared with someone special, not her dad.

21             She has anxieties from everything that has

22   happened.  Doesn't want pictures or videos taken of

23   her.  I feel Jay deserves to pay for his crimes.  What

24   he has impacted me from his crimes are the looks I get

25   from people in town, the anxieties, the depression, the

1    loss of my job. I was there for 11 years. Couldn't

2    work the hours they needed me for so I got no hours to

3    support the kids he left behind to support on my own.

4         I gave you everything I had to make this work.

5    It's pretty sad that you decided that I wasn't good

6    enough for you, that you had to look at little girls

7    and have sex with our daughter while I worked six days

8    a week at night to provide for the family. You used

9    that time to do the awful things to our daughter,

10    J███. She will struggle for the rest of her life to

11    have a healthy and trusting relationship.

12         There is no excuse for what you did to J███. I

13    am so angry. I will never stop being angry. What you

14    did to me and the kids is unforgivable. I never

15    thought in a million years the man that I loved for

16    many years could ever do something like this.

17         Now the kids have to be without their dad that

18    they knew and loved. The kids are going through some

19    stuff. I have one that is very angry. One that is

20    confused on where his daddy is. One that didn't

21    graduate because school was too much for him with

22    everything that happened. He is very depressed. One

23    that is always going to struggle in life. One that

24    will always love her dad, but will never truly

25    understand what he did until she is so much older.

1    I will be strong for our kids and protect them

2 from everything I can and love them for the both of us.

3 I'm not a hateful person so I don't hate you, but I no

4 longer love you.  The little love I had left went away

5 when I had to listen to our daughter tell the officers

6 what you did to her and watch all four kids go through

7 basically a rape kit.  You have no idea how bad that

8 hurt me to see them go through that.

9    The 10 year old freaks out every time she hears

10 or sees a cop car thinking they are coming back.  This

11 is the hardest thing I have ever done to tell the kids

12 they will never see their daddy again.  I don't think I

13 will ever get that day out of my head because that was

14 the day my whole world crashed around me and I

15 questioned everything.  I don't think I will ever be

16 able to trust a man ever again.  I have you to blame

17 for that.

18    I will take care of the kids like I have always

19 done by myself.  I will make sure I teach them what a

20 healthy, loving relationship is supposed to be and

21 prevent them from being victims again.  Make sure they

22 move forward in a positive way.  The thought of the

23 kids never having a father in their life isn't fair to

24 them at all.  Thanks for showing me the kind of person

25 you really were.  I'm picking up the pieces of the life

1    the kids knew, and we will do it without you.

2         The only good thing that came out of this is

3    that you will never hurt me or the kids ever again, and

4    we'll be fine without you and better off.  Thank you

5    for listening to me.

6         THE COURT:  Thank you so much.

7         Anything further, Ms. Barton?

8         MS. BARTON:  Nothing, your Honor.

9         THE COURT:  Thank you very much.

10         Mr. Fitzgerald.

11         MR. FITZGERALD:  Thank you, your Honor.

12         I think everybody agrees this is kind of a

13   particularly difficult sentencing so I wanted -- the

14   government made some kind of, you know, explanations at

15   the very beginning of their presentation.  I'm going to

16   do the same, your Honor, that, you know, what I have to

17   say here I don't want to be misinterpreted, and I

18   certainly don't want it to be misinterpreted to the

19   detriment of Mr. Gaccione, okay.

20         I'm in no way using what they call "victim

21   blaming" in any of my argument here.  And I'm also not

22   splitting hairs or trying not to split hairs in a sense

23   of trying to avoid culpability.  And I also want to

24   just point out to the Court that Mr. Gaccione is very

25   much interested in the whole hearing here so if you've

1    seen him flat-faced or nonresponsive, that's because I

2    told him to do that.

3         So, your Honor, before I get into why I think

4    you should sentence Mr. Gaccione to a much lower

5    sentence of 25 years in prison, I just want to address

6    a couple of things that the government brought up.

7    First is I recommend or hope that the things that the

8    government mentioned out of my sentencing memo, you

9    remember the context in which I said them, as well as

10   the context in which they're presented in the PSR.

11        First, the comment about Mr. Gaccione having

12   vivid dreams of revenge on his family.  That was in the

13   course of his counseling, and he was having these

14   dreams, not daydreams, when he was asleep having these

15   dreams.  That's the kind of thing we want somebody to

16   disclose in counseling so they can work on that because

17   obviously there's a lot of turmoil going on in his

18   mind.  That's not the way it was presented.  So I would

19   like you to remember the context in which that came up.

20        The other is that I didn't make an Eighth

21   Amendment argument here, I didn't.  This is not an

22   argument about it being an unconstitutional sentence.

23   In fact, the guideline -- not the guideline, but the

24   2200 months is the maximum penalty of all the charges

25   stacked.  That's constitutional because Congress set

1    those limits.  The point about the Eighth Amendment

2    issues is I just want the Court to consider what a life

3    sentence actually means and what it means for Mr.

4    Gaccione.  And you have to go to the case law to show

5    that, what it actually means.

6         The last contextual disagreement I might have is

7    this issue of where I said that permanent damage; that,

8    you know, he shouldn't be treated as he's made

9    permanent damage.  The context of that comment is

10    murder is permanent, and that's the context that was

11    taken from the case law and everything.  When somebody

12    murders somebody, the victim is dead and they are never

13    coming back; that's permanent.

14         Certainly, Mr. Gaccione's daughter has suffered

15    trauma and it's going to take her an awful long time to

16    get over that, if she ever does get over that.  I would

17    say that, you know, the trauma and the damage and the

18    stages she's going through that have been described to

19    you are absolutely normal for somebody who has gone

20    through something like this.  But it's not permanent in

21    the way that being murdered is and that there's no

22    coming back.

23         She still has a life, and we hope certainly that

24    she's able to make something of that life.  That's not

25    to say that Mr. Gaccione didn't damage her, didn't

1    cause her trauma, didn't cause all of this, but it's

2    not permanent in the sense of the end of her life.

3         Now, the government says that sentencing should

4    be about the person, and I agree and I think the Court

5    agrees, it absolutely has to be about the person

6    because we're not here to ratify the guidelines, we're

7    here to sentence Mr. Gaccione.  In making that

8    sentencing determination, you have to look at what he's

9    done since he's been arrested; how he's reacted; how

10    he's lived these past two-and-a-half years because,

11    ultimately, there's an end to the sentence and he's

12    either someone who is going to grow, someone who is

13    going to get better mentally, or he's not.

14         What I'm suggesting in my sentencing argument

15    and in the sentencing memo is that he has shown rather

16    distinct growth in the time that he's been at the Wyatt

17    facility.  He's been there for now two-and-a-half

18    years.  I can tell you that when he first got in

19    probably for more than the first year he was a very

20    angry man.  I can tell you that I was not his favorite

21    person because nobody wants to hear that they might be

22    going away for life.  And, you know, those are the

23    discussions we had about what the maximum penalties are

24    and what he's looking at and what could happen to him.

25         I think it took a long time for him to really

1    grasp -- I mean, he hasn't fully grasped all of this,

2    he hasn't come to grips with it, but he's made

3    significant progress towards that, to the point where

4    now it's not denials or rationalizations that certainly

5    did come up during his interviews with the police when

6    he was initially arrested; that doesn't happen anymore.

7         Certainly, he can't tell you why he did this,

8    but I can tell you that he's not sitting around

9    wondering why he did this as other clients have, other

10   defendants have, instead of I did this and I'm sorry

11   for it and let's move forward.  Some of those

12   defendants -- some of those individuals sit around and

13   just wonder why this happened to me, why did I do this,

14   why did this happen to me?  That's not Mr. Gaccione.

15   He's moved beyond that into really understanding that

16   he did it, owning up to the fact that he did that, and

17   then just trying to move on from there.

18        He has participated in mental health counseling

19   out at the Wyatt.  We talked about that just a few

20   seconds ago.  For the most part, he's about at the

21   highest level that he can get for counseling out there

22   so he sees the counselor every four to six weeks when

23   the counselor comes in.  He sees a psychiatrist on

24   video for, you know, medication purposes.  But he's

25   doing what he can to address his mental health while

1    he's at Wyatt.

2         I don't agree that there's enough there, but

3    what there is, he's taken advantage of it.  He's taken

4    classes.  I listed classes in the sentencing

5    memorandum.  It may be listed in the PSR as well.  But

6    in there, not only mental health and some substance

7    abuse classes, but also sex-offender treatment classes.

8    So he's taken those steps.

9         The other thing he's done, your Honor, and this

10   is definitely unique among certainly defendants with

11   these charges but certain defendants in general, is he

12   has taken to be somewhat of the welcome wagon in the

13   pod where he's housed.  Now, I don't know if the Court

14   knows, but at Wyatt everybody charged with these types

15   of offenses, all sex offenders, are segregated from the

16   rest of the population.

17        So Mr. Gaccione has been in that group of

18   individuals for pretty much the entire time he's been

19   there.  And now when new people come in, when new

20   people are arrested and charged and everything and they

21   come in, he usually takes a minute to try and, you

22   know, either console them because they have been held

23   and they just don't understand why and all that and

24   they're sad.  He's offered them food.  He's offered

25   them a pillow in one instance to another client of

1    ours.  Just basic human decency type of reactions to

2    help them at least get more comfortable in the

3    facility.

4            That kind of unselfishness is not normal out at

5    the Wyatt or any prison, as far as I know, but

6    certainly that makes it distinctly unique.  And that

7    shows growth because he's not thinking about himself;

8    he's thinking outside of himself.

9            The other part of that is not just the other

10   prisoners who feel -- or that he reacts that way to; he

11   treats the staff with respect and he has the respect of

12   the staff out there.  I don't remember particularly the

13   situations of insolence or anything like that, but I'm

14   pretty certain those were early on during his time at

15   Wyatt.  At this point at Wyatt, he is fairly well

16   trusted amongst the staff.

17           And I'd just point out, your Honor, if you

18   didn't see Mr. Gaccione walk in, he's allowed a cane by

19   the medical staff and by the staff at the Wyatt.  I

20   point that out because a cane can very quickly become a

21   weapon, but he is trusted with that and I think that

22   shows a level of respect that the staff has for him

23   knowing that he's not a violent guy and not somebody

24   who is going to act out on other people.

25           Your Honor, the government's asked -- they've

1    said effectively a life sentence, but they've asked for

2    a life sentence; 60 years in prison even with good time

3    is well over I believe 55 years.  I apologize.  54

4    years is I think what it would come out to.  That's a

5    life sentence.  Should Mr. Gaccione actually live that

6    long, he would be 90 some-odd years old by the time

7    that happened.  And he is not going to live that long.

8    Most of us, frankly, are not going to live that long.

9         That's a life sentence so let's -- they could

10   have said 70, they could have said 80, they could have

11   said 50, they could have said 40; it's all a life

12   sentence.  I've asked for 25 years which I think is

13   potentially a life sentence, but there's also a

14   potential that towards the end he might be able to be

15   released.  And that light at the end of the tunnel,

16   however dim, is still a light at the end of the tunnel.

17   And I think that that's something that Mr. Gaccione

18   deserves if for no other reason than the steps he's

19   made since he's been held.

20        Judge, I said before that I don't want to be up

21   here splitting hairs, but the government listed several

22   different cases -- sex-offender cases, sex-offense

23   cases -- and unfortunately I think that brings up the

24   idea of splitting hairs.  Now we're going to say

25   Mr. Smith is worse than Mr. Brown, Mr. Bruce and

1    Mr. Jones.  And I disagree with the government that,

2    you know, one instance of molestation is somehow less

3    serious than two or three or four or five.  And I say

4    that because if I came up here and said to you that,

5    well, they only did it once so it's not that bad, the

6    Court would look at me sideways, okay.  It's all bad,

7    okay.

8         So when we try and take these other cases of

9    molestations and then try to grade who is worse than

10   the other, it's not something I relish.  There are

11   several clients of mine on that list and it kind of

12   forces me to weigh, but Mr. Gaccione is my client today

13   so I'm going to try to make a couple of distinctions

14   there.

15        Mr. Goodman, obviously he was sentenced to,

16   well, effectively a life sentence.  I can tell you

17   Mr. Goodman was very distraught after he was sentenced.

18   I was not here in the courtroom; what I hear from his

19   activities at the ACI -- excuse me, at Wyatt.  And Mr.

20   Gaccione was one of the individuals who tried to,

21   essentially, talk him down once he got back to the

22   Wyatt.

23        But Mr. Goodman's crimes I think are far, far

24   worse than my client's crimes.  And I don't want to get

25   into particulars why, but when we're talking about

1    infants, we all are a little more sensitive to the

2    damage that can be done there I think as opposed to

3    somebody who is much older.  I don't know why the Court

4    gave him the sentence that he did, but that's the

5    distinction I can see here, multiple victims and the

6    ages of those victims, which is distinctly different

7    from Mr. Gaccione.

8         Mr. Crisostomi was my client.  Mr. Crisostomi,

9    the victim there was younger than my client -- excuse

10   me, than my client's daughter.  Mr. Crisostomi wasn't

11   charged with distributing child pornography, for

12   distributing pictures of his daughter, but it came out

13   at the time of sentencing that pictures of his daughter

14   had been found on the internet.  They had been found by

15   I believe it's NCMEC or whatever the government agency

16   is.  So that makes it distinctly different from Mr.

17   Gaccione.

18        Mr. Leal was a completely different kind of

19   situation.  Really a statutory rape.  Very different

20   from this type of situation.  Mr. Jones, I understand

21   he had a life sentence that was overturned and appealed

22   and he ended up with 50 years to serve, but he was a

23   repeat offender so he was somebody who had gone out and

24   molested somebody and got out of prison and then did it

25   again or tried to do it again and that's why he had

1    such a long sentence.

2          But I'd say that Mr. Jones' behavior as a repeat

3    offender is worse than what Mr. Gaccione did if we have

4    to split hairs and kind of weigh, and he only got a

5    50-year sentence.  The government is asking for more

6    for Mr. Gaccione.  I would say that Mr. Jones has

7    demonstrated that he was dangerous because he went out

8    and tried to re-offend.  And Mr. Gaccione has not done

9    that.  He's not been in that situation.  So I would say

10   he's not as dangerous as Mr. Jones.

11         I don't again like this hairsplitting in trying

12   to weigh every little fact to try and come out with who

13   is worse than the other, especially when we're talking

14   about all of these sentences which are all severe.  The

15   25 years I've asked for, again, is already a severe

16   sentence.  I will not be here when Mr. Gaccione leaves

17   prison.  I will be retired and long gone.  The Court

18   won't be here.  Most of the people in here will not be

19   here.  That makes it, I think, a severe sentence, a

20   long sentence when we think about it that way.

21         The other thing that will happen at 25, and I

22   know the government's very concerned about this, but 25

23   years from now Mr. Gaccione is not going to be a danger

24   to his daughter.  She's going to be an adult.  She is

25   going to be on with her life.  But he's also not going

1     to be a danger to anybody else because he'll be over 60

2     years old.  He may be subject to civil commitment and

3     not actually released after that 25 years.  He may

4     still be in prison for some time.

5          But if he's released, he'll be on supervised

6     release for the rest of his life.  I'm assuming that

7     the Court would put him on supervised release for the

8     rest of his life.  But he'll be on supervised release

9     for a long period.  He'll have to register for the rest

10    of his life as a sex offender.  He'll be limited to

11    where he can go and what he can do, what kind of work

12    he could do if he's able to work at that age.

13         But there are programs and systems set up to

14    monitor people after these sentences out in the

15    community.  The government's concerned about his danger

16    to the public.  Well, that's satisfied by supervised

17    release, civil commitment, counseling, sex-offender

18    registration and all the other infrastructure set up to

19    watch people, watch sex offenders afterwards.

20         Your Honor, I said that 25 years is probably or

21    possibly a life sentence.  I say that because Mr.

22    Gaccione is not in great health.  About a year -- a

23    little over a year ago, he was treated for kidney

24    failure and spent, I believe it was, a week or ten days

25    at the hospital.  So he had to be removed from Wyatt

1    and taken to the hospital to be monitored.

2          Now, kidney failure is certainly no joke and he

3    has diabetes.  You can see he's obese.  He's got a lot

4    of factors running against him for a long life or a

5    longer life.  I've asked or suggested that he be placed

6    at FMC Devens to serve his sentence, and my primary

7    reason for that was the kidney disease.  I did have

8    another client that was sent there who was on dialysis,

9    had complete kidney failure, and I believe that is the

10   facility that treats kidney issues primarily within the

11   Bureau of Prisons.  We just happen to be right nearby

12   Devens.

13         The other thing that Devens has is a

14   sex-offender treatment program so it's especially

15   appropriate for Mr. Gaccione to go there for both of

16   those reasons; they can deal with his medical issues

17   and the sex-offender issues.  But even with them

18   dealing with his medical issues, there's no guarantee

19   he's actually going to live that long.  So on a 25-year

20   sentence, it's very possible he will die in prison.

21   But he also has that glimmer of light at the end of the

22   tunnel that I think is important for the Court to give

23   to him.

24         Judge, the only other thing I'd say is, you

25   know, I object to the guidelines when the guidelines

1    are miscalculated and Ms. Picozzi knows that because if

2    I think there's a miscalculation, I would certainly go

3    and tell them and that would be handled typically

4    before we get here to court.  The argument is not that

5    the guidelines were calculated; the argument is the

6    guidelines are just wrong.  They are.  And these

7    particular guidelines were not created by the various

8    judges that the government talked about there.  These

9    guidelines were driven by Congress and a consistent

10   ratcheting up of sex-offender guidelines across the

11   board since the imposition of the guidelines back in

12   1988.

13        I'm fully prepared to debate that all along.

14   They've only gone up; they've never gone down.  They've

15   only gone up by basis of legislative action.  Whether

16   it was the PROTECT Act or the 1996 Sex Offender Act,

17   that's how those guidelines were developed.  They

18   weren't developed by courtroom experience, and that's

19   all I meant by that.

20        So, your Honor, again, I don't want to spend too

21   much time on that.  I'm asking for 25 years.  It's a

22   fair sentence.  I think it's appropriate for Mr.

23   Gaccione.  It gives him that light at the end of the

24   tunnel to possibly make it out, and I think that the

25   Court can give him that light simply because he's made

1  these positive steps since he's been incarcerated so

2  far.  Thank you.

3          THE COURT:  Thank you, Mr. Fitzgerald.

4          Mr. Gaccione, do you want to say anything before

5  I impose the sentence?

6          THE DEFENDANT:  Sorry.

7          THE COURT:  Take your time.

8          THE DEFENDANT:  I don't know if I'm saying the

9  right thing or not, but when I came in, when I got

10  arrested, I was a total jerk, you know.  I only cared

11  about myself, you know.  I was stubborn, selfish, you

12  know.  Whatever I wanted to make myself happy is what

13  it was.  I didn't want to hear nobody else's pain.  I

14  didn't care.

15          For a long time I didn't want to accept what

16  happened because if I accepted what happened then, you

17  know, here I am same type of person that did something

18  to me and I didn't want to be that person.  It took a

19  long time to come to a point where I could talk about

20  things to what I've done and realize how bad it was.

21  There's not a day that goes by that I don't regret what

22  I've done.

23          I mean, my kids are my life.  I mean, I did

24  everything with them.  I'm not going to sit here and

25  say I don't know why I did this or what it could have

1    led to.  I'm not going to make excuses.  The bottom

2    line is I did something horrible, and I gotta live with

3    it for the rest of my life.  My daughter has to live

4    with it for the rest of her life.  My family.  Everyone

5    does.  I ruined a lot of people's lives for a stupid

6    mistake that just because I was selfish and just a

7    total jerk, you know.

8            And that's not me.  It's like I had to put a

9    wall up, I had to be this person just to protect myself

10   and I didn't know how to love people, I didn't know how

11   to treat people, I didn't know anything, you know.  I

12   come here and, you know, I get the counseling, I get

13   the, you know, medication and stuff.  And it took me a

14   long time to even talk about things to them and I did.

15   And that's when I realized, you know, talking about it

16   and realizing what I did is the only thing to do so

17   that you can better yourself and move on in life and do

18   the right thing.

19           So I got nothing in my life, you know, left, you

20   know.  I lost my kids, I've lost friends, family,

21   everything.  What do I do?  Do I stay negative and be a

22   jerk for the rest of my life or do I do something

23   positive?  So that's what I'm trying to do.

24           You know, I can sit here and say I'm sorry to

25   everybody in this room a thousand times.  That's just

1   words in my eyes.  Anyone can say that, you know.  But

2   if I can prove to people that you can change, that you

3   can make a difference, then that's when people realize

4   and they can understand and, okay, this person, he does

5   understand what he did.  He does, you know, regret what

6   he did.  And I do.

7        I'm not going to sit here and say, well, you

8   know, it's never going to happen again.  I don't know.

9   But I can tell you I don't want it to, and I'm going to

10  do whatever it takes not to let it happen again, you

11  know.  That's why I go to the classes, you know.  I

12  even go to parenting classes.  Like, I know I'm never

13  going to be out to see my kids again.  And I'm never

14  going to see them because I'm going to die in prison.

15       That doesn't mean -- even if I get 60 years, 50

16  years or life or whatever, and I know I'm not going to

17  get out, it doesn't mean I'm going to stop trying.  It

18  doesn't mean I'm going to stop, you know, and go back

19  to that person.  I don't like who I was, you know.  I

20  drank a lot, I did a lot of stupid stuff to make me

21  happy, and I found out helping other people when

22  they're down and they're suicidal at, you know, the

23  facility and I can help them, I feel better as a

24  person.

25       So no matter what happens here today, no matter

1    if I get out or not, I'm not stopping helping people.

2    I'm not stopping getting the counseling.  I'm not

3    because it's helping me, you know.  I'm a different

4    person than I was when I went in there, you know.  Like

5    I said, I can sit here and say I'm sorry, it will never

6    happen a billion times, but, your Honor, you know,

7    you've heard it, you know, it happens.  You have people

8    say it and they come back.

9          I'm just saying that I'm not stopping giving up.

10   I'm going to keep trying no matter what happens.

11   Actions speak louder than words, and that's what I've

12   learned, you know.  I'm not going to deny anything.  No

13   matter what I did, as much as I did or whatever happens

14   happened, it's all wrong, it's horrible.  Every day,

15   you know, I think about my kids and what I put them

16   through.

17         You know, watching TV, you know, I see families

18   on TV and, you know, how they're happy and stuff and

19   that's all I've ever wanted.  And to realize, you know,

20   I screwed that up because I was selfish and stupid and

21   I'm never going to have an opportunity to see my kids

22   grow the way I wasn't able to that I want for them

23   because I screwed up, there's not a day that goes by

24   that I don't regret what I did, you know.

25         No disrespect to her; she doesn't really know

41

1    me, you know.  She doesn't see how much I've changed in

2    the facility, you know.  She knows from what I've done.

3    I don't blame anyone for thinking this is how it is,

4    you know.  But again, that's how I was.  I broke the

5    law.  I did what I did.  I have to pay for what I did.

6         But I'm not that same person, and I just want

7    everyone to understand that if they gave me a shot to

8    prove to them that I'm not that same person.  I can't

9    say nothing else.  I'm sorry.

10         THE COURT:  Thank you, Mr. Gaccione.

11         THE DEFENDANT:  Thank you.

12         MR. FITZGERALD:  Stay up.

13         THE DEFENDANT:  Sorry.

14         THE COURT:  Mr. Gaccione, there is no doubt by

15    everything that I've read and everything that I've

16    heard today that you need to be severely punished

17    because of the severity of this heinous crime.  Your

18    lawyer by recommending 25 years agrees with that, as

19    well as obviously the government does by its

20    recommendation.

21         And I don't need to recount, I don't think, for

22    the victims or for the public or anyone else, what my

23    feeling is about the severity.  I don't need to any

24    further demonize you than your actions themselves do

25    alone.  That's not what today is about.  Ms. Barton's

1    allocution of what the crime was is what this Court

2    believes, and I don't need to repeat that, despicable

3    and reprehensible and unfathomable.

4        The question that the Court has grappled with

5    and has to grapple with is there is no punishment

6    that's severe enough for what you did.  The only

7    question becomes whether the Court imposes a sentence

8    that at some point might allow you to be released from

9    prison.  And if one merely looked at the seriousness of

10   the crime, the answer is easy, the answer is very easy;

11   you'd never get out of prison.  But the thing that I

12   have to look at here is the human being that stands

13   before me.

14       And one thing we haven't talked about, and I

15   don't necessarily need to because it's in the

16   presentence report and you now know that I've certainly

17   considered it, is what your background was.  You acted

18   against your child the way you were acted against.  You

19   watched your -- in addition to that, you watched your

20   sister be sexually molested at a very young age by an

21   uncle so you saw it even in the family.  You grew up

22   in, I think it was described by the probation

23   department, as horrible conditions; that no child in

24   this country or anywhere should go through.

25       There is no doubt in my mind or in science that

1    there is a correlation between what you suffered as a

2    child and what you've done here against your own

3    children and against society.  There's just no question

4    about that.  So the question becomes whether that cause

5    requires or mandates a cause for this Court to show

6    some mercy because that's what it would be if the Court

7    let's you out on the end.  Because as I've said, if you

8    look at the severity of the crime, it requires severe

9    punishment.

10          The problem with that analysis for this Court is

11   the victim and victims in this case, Mr. Gaccione.  And

12   we know that this is a lifetime scar because the scar

13   that you suffered has had a lifetime throughout yours.

14   I don't know how your child will deal with this.  I

15   don't know whether she will go out and abuse when she's

16   41, how awful that would be, I just don't know, but

17   anything short of a lifetime of imprisonment will not

18   give her the safety and security that she deserves.

19          Her having the comfort and the security and

20   safety of knowing that she will never see you again

21   unless she chooses to behind bars is the only thing I

22   can offer the victim in this situation.  And it is what

23   keeps me from imposing some element of mercy which is

24   oftentimes deserved for someone who was victimized the

25   way you were.

1      I don't do it out of malice, I don't do it out

2    of some political feeling about the situation.  I do it

3    singularly because the victim deserves that security.

4    She needs and the others in your family and your

5    ex-wife need to know that you're going to be locked up

6    for the rest of your life.

7          For what it's worth, Mr. Gaccione, I hope as a

8    human being that you continue to change.  I hope that

9    you continue your showing of mercy as a way of paying

10    back while you're in prison.  I hope you continue that

11    caring and counseling way that your lawyer effectively

12    described it because that would show your remorse if

13    you were to continue that.

14          The Court's going to therefore impose the

15    following sentence:  As to Counts One, Two, Three, Five

16    and Six, the Court imposes a period of 30 years.  As to

17    Count Seven, the Court imposes a period of 10 years.

18    As to Counts Eight and Nine, the Court imposes a period

19    of 10 years.  All of which shall run consecutively.

20          The Court also will impose a lifetime of

21    supervised release just with the standard conditions.

22    A fine isn't appropriate, neither is the additional

23    $5,000 because of your indigency, but the Court will

24    impose the $800 mandatory assessment.

25          Mr. Gaccione, as part of your plea

1    agreement -- is there a plea agreement?

2              MS. BARTON:  There is none.

3              THE COURT:  Mr. Gaccione, you have a right to

4    appeal the sentence I impose if you choose to appeal

5    it.  If you want to appeal, the important thing for you

6    to know is that you need to do it or have your lawyer

7    do it within 14 days of the entry of this judgment on

8    the record.  If you want help filing an appeal, just

9    ask the Clerk of Court and they will assist you in

10   filing the appeal.

11             You also have a right to appointment of an

12   attorney throughout all of the appeal, and the Court

13   will continue to appoint an attorney for you should you

14   wish to appeal the sentence I impose.  Again, I'd just

15   remind you that needs to be done within 14 days of the

16   entry of the judgement on the record.

17             Do you understand your appellate rights, Mr.

18   Gaccione?

19             THE DEFENDANT:  Yes, I do.  Thank you.

20             THE COURT:  You're welcome.  Thank you.

21             Ms. Picozzi, anything further from probation?

22             PROBATION OFFICER:  No, your Honor.

23             THE COURT:  Anything further from the

24   government?

25             MS. BARTON:  Two things, your Honor.

1          One, the government moves to dismiss the one

2    count that Mr. Gaccione did not plead to.

3          THE COURT:  Any objection?

4          MR. FITZGERALD:  No.

5          MS. BARTON:  And also in our sentencing memo, we

6    reference that we request the restitution be left open.

7    I do not anticipate -- I understand the realities of

8    it, but I just request it due to the victim issues.

9          THE COURT:  So a couple things.  One is Count

10   Four will be dismissed without objection.  Restitution

11   will be kept open for the statutory period of I believe

12   it's 75 days.

13          COURTROOM DEPUTY:  90.

14          MS. BARTON:  90 days.

15          THE COURT:  90 days.  One other housekeeping

16   matter.  The victim's mom mentioned the victim's name

17   which is now in the transcript.  I'm going to order

18   that that name be stricken from the record and sealed

19   or however Ms. Schwam will do it.  I want to make sure

20   that the name doesn't appear in any official record

21   that is public.

22          MS. BARTON:  Thank you, your Honor.

23          THE COURT:  Anything further, Ms. Barton?

24          MS. BARTON:  No.

25          THE COURT:  Mr. Fitzgerald?

1          MR. FITZGERALD:  Your Honor, I'm not clear on

2     the sentence, I'm sorry.

3          THE COURT:  The sentence is 2,280 months.

4          MR. FITZGERALD:  Okay.  Thank you.

5          THE COURT:  Thanks.  Mr. Fitzgerald, anything

6     further?

7          MR. FITZGERALD:  No, your Honor.  Thank you.

8          THE COURT:  Mr. Gaccione, I wish you well.

9     We'll stand adjourned.

10          COURTROOM DEPUTY:  All rise.

11          (Brief pause)

12          THE COURT:  Mr. Gaccione, I apologize.  The

13     attorneys correctly pointed out to me that perhaps the

14     record wasn't as clear as it should be in this kind of

15     case about the sentence.  I believe it was, but let me

16     make sure it is.  You have a right, and you need to be

17     here for that, which is why we brought you back into

18     the courtroom with both sides here.

19          The sentence of incarceration that the Court

20     imposed was as to Counts One, Two, Three, Five and Six,

21     30 years as to each of those counts to be served

22     consecutive to each other.  As to Count Seven, the

23     Court imposed 10 years to be served consecutive to

24     Counts One, Two, Three, Five and Six.  And 10 years as

25     to Counts Eight and Nine to be served consecutively

1    with each other and as to all the other counts.

2         Ms. Barton, did I speak it correctly?

3         MS. BARTON:  I believe you did, your Honor.

4         THE COURT:  Mr. Fitzgerald, did I speak it

5    correctly as you understood what I intended?

6         MR. FITZGERALD:  Yes, thank you.

7         THE COURT:  Mr. Gaccione, again, my apologies

8    for that.  I think the record is clear now.

9         MS. BARTON:  Thank you, your Honor.

10        COURTROOM DEPUTY:  All rise.

11        (Time noted:  11:47 a.m.)

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1

2                              **CERTIFICATION**

3      I certify that the foregoing is a correct transcript from the

4      record of proceedings in the above-entitled matter.

5

6

7      Official Court Reporter                    January 2, 2020

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25